IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA O'DONOVAN and EDUARDO DE LA TORRE, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>CASHCALL, INC., a California corporation and DOES 1 through DOE 50, inclusive,<br><br>Defendant(s). | No. C 08-03174 MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE** |

## I.   INTRODUCTION

Before the Court is Defendant CashCall, Inc.'s Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and a Request for Judicial Notice of certain documents. (Dkt. ## 12, 13.) The Court has jurisdiction under 28 U.S.C. §§ 1331 & 1367. After consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss and GRANTS IN PART and DENIES IN PART the Request for Judicial Notice.

## II.   BACKGROUND

**A.   Factual Background**

The following factual allegations are taken from Plaintiffs' First Amended Class Action Complaint ("FAC"), filed on October 10, 2008. (Dkt. #11.) Defendant CashCall is a California corporation engaged in the business of making consumer loans. (FAC ¶¶ 16-17.) CashCall makes

loans at high interest rates to consumers who are experiencing financial difficulties. (FAC ¶ 77.) The loans are presented on a "take-it-or-leave-it" basis, without any opportunity for negotiation. (FAC ¶ 67.)

Plaintiff Krista O'Donovan borrowed $5,075 from CashCall in October 2005. The loan carried an APR of 59.83%, and the total payment required to pay off the loan with interest was $30,161.86, or approximately six times the original amount borrowed. (FAC ¶ 19.)

Plaintiff Eduardo De La Torre borrowed $2,600 from CashCall in February 2006. The loan carried an APR of 98%, and the total payment required to pay off the loan with interest was over $9,000, or approximately three to four times the original amount borrowed. (FAC ¶ 21.)

The loan applications were filed via the internet, and Plaintiffs allege that the loan terms were presented in a confusing manner. (FAC ¶¶ 69-74.) As part of the loan application process, Plaintiffs provided authorization for CashCall to collect payments via an electronic fund transfer ("EFT") from their bank account. (FAC ¶¶ 39-40.) Plaintiffs allege that CashCall attempted to collect payments in a manner that exceeds the scope of the authorization. (FAC ¶¶ 35-36.) Plaintiffs also allege that CashCall engaged in abusive and illegal debt collection practices, such as calling multiple times a day, making threatening phone calls, and contacting employers and family members. (FAC ¶¶ 59-60). Finally, Plaintiffs allege that CashCall violated the California Unfair Competition Law by making loans that are unconscionable, (FAC ¶¶ 66-88), and engaging in unlawful and fraudulent business practices. (FAC ¶¶ 90, 94-97.)

**B.  Procedural Background**

Plaintiffs filed this action against Defendant on July 1, 2008. (Dkt. #1.) On October 10, 2008, Plaintiffs filed their First Amended Class Action Complaint For Violations of Electronic Funds Transfer Act [15 U.S.C. § 1693 *et seq*.], Consumers Legal Remedies Act [Cal. Civ. Code § 1750 *et seq*. ], Rosenthal Fair Debt Collection Practices Act [Cal. Civ. Code § 1788 *et seq*.], and Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 *et seq*.]. ("FAC") (Dkt. #11.)

On November 7, 2008, Defendant filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss the Plaintiffs' FAC in its entirety, and a Request for Judicial

1  Notice.  (Dkt. #12 & 13.)

2  On November 25, 2008, Plaintiffs filed an Opposition. (Dkt. #22.)

3  On December 4, 2008, Defendants filed a Reply.  (Dkt.# 28.)

4  On December 10, 2008, Plaintiffs filed a Surreply.  (Dkt.#30)

5  On January 8, 2009, the Court held a hearing on the matter.  Whitney Huston and Monique Olivier appeared on behalf of Plaintiffs, and Brad W. Seiling appeared on behalf of Defendant.  (Dkt.# 32.)

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted.  Rule 8, which provides the standard for judging whether such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss, a complaint need not provide detailed factual allegations.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citation omitted).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Thus, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 129 S.Ct. at 1950.

In reviewing a motion to dismiss, the court may also consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001)

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV.   DISCUSSION

**A.   Violation of the Electronic Fund Transfer Act ("EFTA")**

Plaintiffs' first cause of action asserts that CashCall engaged in several business practices that violate the EFTA and Federal Reserve Regulations. 15 U.S.C. § 1693 *et seq.*; 12 C.F.R. § 205.10(e)(1). Defendant maintains that none of the practices complained of state a claim under the EFTA or applicable regulations.

1. <u>Conditioning Extension of Credit on Repayment by Electronic Fund Transfers</u>

First, Plaintiffs allege that CashCall "condition[ed] the extension of credit on the customer's repayment by means of preauthorized electronic fund transfers. CashCall requires all customers to agree to a provision that permits CashCall to make electronic debits from their bank account." (FAC ¶ 39.) Section 1693k(1) of the EFTA provides that "[n]o person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693(k)(1); s*ee also* 12 C.F.R. § 205.10(e)(1). Defendant argues that because a consumer is permitted to cancel an EFT authorization at any time, including prior to first scheduled payment, the extension of credit is not conditioned on use of EFTs for repayment. (FAC Ex. A.) However, the right to later cancel EFT payments does not allow a lender who conditions the

initial extension of credit on such payments to avoid liability. Accepting the truth of allegations and drawing all reasonable inferences in favor of the Plaintiffs, the Complaint states a claim for relief under § 1693(k).

### 2. Unauthorized Withdrawals

Second, Plaintiffs allege that CashCall attempted to withdraw funds from their accounts in a manner inconsistent with their EFT authorizations and in violation of 15 U.S.C. § 1693(e)(a). Specifically, Plaintiffs claim that CashCall (1) made multiple transfer attempts in a single month if an account had insufficient funds to effectuate the payment, causing Plaintiffs to incur several insufficient funds fees from their bank, and also from CashCall, and (2) attempted to make transfers from their accounts on dates other than those specified in their EFT preauthorizations.

Section 1693(e)(a) provides in relevant part that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of the transfer." Other than requiring that the authorization must be in writing, § 1693(e) does not specify particular language that must be used in the authorization.

Plaintiffs concede that they gave CashCall written permission for the EFTs, and attach a copy of O'Donovan's authorization as Exhibit A to their First Amended Complaint.[1] They contend that CashCall's actions exceed the scope of their authorization.

---

[1] The authorization signed by Plaintiffs states:
"I hereby authorize CashCall to withdraw my scheduled loan payment from my checking account on or about the FIRST day of each month. I further authorize CashCall to adjust this withdrawal to reflect any additional fees, charges or credits to my account. I understand that CashCall will notify me 10 day prior to any given transfer if the amount to be transferred varies by more than $50 from my regular payment amount. I understand that this authorization and the services undertaken by CashCall in no way alters or lessens my obligations under the loan agreement. I understand that I can cancel this authorization at any time (including prior to my first payment due date) by sending written notification to CashCall. Cancellations must be received at least seven days prior to the applicable due date."

*a.     Multiple Withdrawal Attempts*

CashCall maintains that the practice of making multiple withdrawal attempts is permissible. The Plaintiffs' authorizations, however, do not support this assertion. The EFT authorization allows CashCall to "withdraw my scheduled loan payment from my checking account on or about the FIRST day of each month." The language of the authorization contemplates a single withdrawal and does not give permission for CashCall to reinitiate the transfer in the event that an account has insufficient funds to cover the loan payment.

In support of its position, CashCall points to the rules issued by a private financial industry organization that allow for reinitiation of an EFT order that has been declined. *See* National Automated Clearing House Association ACH Rules Subsections 2.14 and 6.1.7. However, CashCall's reliance on industry organization guidelines is unpersuasive. The EFTA does not contain a similar provision, and there are no implementing regulations under the statute that permit this practice without the consent of the consumer.

CashCall also argues that their practice of reinitiating a transfer is allowed because the consumer still has a payment obligation under the promissory note even though their account has insufficient funds. But as the terms of the EFT authorization recognize, a consumer's obligations under the promissory note are distinct from the EFT authorization, and the authorization "in no way alters or lessens [a consumer's] obligations under the loan agreement." (FAC Ex. A.) Continued liability on the underlying obligation does not operate to broaden the scope of authorization for EFTs. Therefore, the allegations in the Complaint regarding CashCall's attempts to make multiple transfers in a single month state a claim under the EFTA.

*b.     Withdrawal Attempts on Unauthorized Dates*

Plaintiffs also allege that CashCall violates their EFT authorizations and § 1693(e)(a) by initiating transfers on dates other than the first of each month. The language of the authorization, however, negates Plaintiffs' claim. The authorization permits withdrawals **"on or about the FIRST day of each month."** (emphasis added). Therefore, CashCall is not limited to making transfers only on the first day of each month, and Plaintiffs fail to state a claim on this theory. *See Durning v.*

*First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987) (a court may disregard allegations in the complaint if contradicted by exhibits attached to the complaint).  The portion of the Plaintiffs' EFTA claim that relates to initiation of transfers on dates other than the first of the month is dismissed.  Leave to amend would be futile.

        3.        <u>Limitation on Cancellation Rights</u>

Third, Plaintiffs allege that CashCall attempted to limit their right to cancel preauthorized transfers in violation of the EFTA and its implementing regulations.  Under the terms of the loan, a consumer could cancel a preauthorized EFT by sending written notice seven days prior to the scheduled payment date.  (FAC Ex. A.)  Section 1693(e)(a) and 12 C.F.R. § 205(c)(1), however, provide more generous cancellation rights.  Under the statute and its implementing regulations, a consumer may cancel a preauthorized EFT, orally or in writing, three days prior to the scheduled transfer.  Nonetheless, CashCall argues that the Complaint fails to state a claim because Plaintiffs failed to allege that they attempted to cancel their EFTs in accordance with the statute and were prevented from doing so, or that they suffered any damages.

Despite their failure to allege damages related to thwarted cancellation attempts, Plaintiffs allegations state a claim under the EFTA.  The loan terms, which impose more onerous cancellation requirements, violate § 1693(e) and 12 C.F.R. §205(c)(1).  The Ninth Circuit has held that violation of a statutory right is an injury-in-fact.  *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000). While Plaintiffs have not alleged any damages flowing from the injury, they are still able to recover damages under the EFTA.  The civil liability provisions of the EFTA allow for both actual and statutory damages.  *See* 15 U.S.C. § 1693(m).  A plaintiff seeking statutory damages need not prove that he suffered actual harm as a result of a defendant's conduct.  *See Bisbey v. D.C. National Bank,* 793 F.2d 315, 318-19 (D.C. Cir. 1986) (holding that the EFTA does not require proof of actual injury for statutory damages).  Although the level of damages may ultimately affect the award, all that is required to state a claim is a violation of the statute.  *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

1 **B.     California Consumer Legal Remedies Act ("CLRA")**

2       CashCall moves to dismiss Plaintiffs' second cause of action, which alleges that Defendant engaged in a number of business practices that violate the CLRA. The CLRA prohibits a long list of "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. CashCall argues that the CLRA is inapplicable because it only pertains to the sale of "goods or services," and credit does not constitute the sale of goods or services.

       Defendant notes that the California Court of Appeals has held that the extension of credit is not covered by the CLRA. In *Berry v. American Express Publishing, Inc.*, plaintiffs brought a putative class action alleging that the defendants had been charging American Express cardholders, who paid annual fees for lines of credit, for travel magazines they had never received. 147 Cal. App. 4th 224, 227 (2007). The court found that the extension of credit did not qualify as goods or services under the CLRA. *Id*. at 229-30. The court then carefully analyzed the legislative history of the statute, noting that the original draft of the statute expressly included the extension of credit. *Id.* at 230-33. The version passed by the legislature, however, omitted this provision. *Id*. at 230-31. Relying on this change, the court held that the extension of credit, apart from providing any other good or service, was not a transaction covered by the CLRA. *Id.* at 233. In view of the relevant legislative history, this Court finds *Berry 's* logic persuasive.

       Other courts in this district have found that the CLRA is applicable to mortgage loans. *See, e.g.*, *Hernandez v. Hilltop Financial Mortgage, Inc.*, No. C06-7401, 2007 WL 3101250, at *6 (N.D. Cal. Oct. 22, 2007); *Jefferson v. Chase Home Finance LLC*, No. C06-6510, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007); *Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927, at *4 (N.D. Cal. Aug.10, 2005). In those cases, however, the defendant provided additional services over and above the extension of credit. *See, e.g.*, *Hernandez*, 2007 WL 3101250, at *6 ("unlike in *Berry*, the situation in the present case involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services

involved in developing, securing, and maintaining plaintiffs' loan"). Here, the Complaint does not allege that CashCall provided any services in addition to the extension of credit. Therefore, Plaintiffs' CLRA claim is dismissed with leave to amend to include additional services that may have been provided in connection with the loan.

**C.     Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")**

CashCall argues that the Complaint fails to state a claim for violation of the Rosenthal Act because Plaintiffs do not plead sufficient facts to support their allegations. Section 1788.11 of the Rosenthal Act prohibits certain debt collection communications, including communicating "with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Civ. Code § 1788.11. Section 1788.12 prohibits some forms of communication with third parties in an effort to collect on a debt. Cal. Civ. Code § 1788.12. Additionally, § 1788.13 proscribes communication of certain types of misrepresentations and § 1788.10 bans the use of certain types of threats. Cal. Civ. Code §§ 1788.10, 1788.13.

Plaintiffs allege that when they were late on a payment "they received phone calls from CashCall employees attempting to collect their debt. The callers contacted both Plaintiffs multiple times each day, aggressively demanded they make payments on their CashCall loan, and made misrepresentations. Plaintiffs were yelled at and threatened by these callers. Additionally, CashCall contacted third parties in an attempt to collect Plaintiffs' debts, including family members, friends and employers." (FAC ¶ 59). Aside from these fairly minimal assertions, the remainder of Plaintiffs' allegations largely state legal conclusions without reference to specific facts.

Although the allegations in the Complaint are skeletal, they satisfy the low pleading threshold established by Rule 8 of the FRCP. While Plaintiffs likely have knowledge of additional information regarding the debt collection communications, they are not required to plead all of the details of their claim. Rather, they are only required to plead facts sufficient to give defendants fair notice of the grounds for the claim. *See Leatherman*, 507 U.S. at 168. Plaintiffs allege that they were called "multiple times each day," which could potentially entitle them to relief under § 1788.11. They also allege that CashCall contacted family members and employers in an attempt to

Page 9 of 19

collect the debts, which states a claim under § 1788.12. Furthermore, the allegations of threats and misrepresentations state a claim for relief under §§ 1788.10 and 1788.13. Therefore, construed in the light most favorable to the Plaintiffs, the Complaint states a claim for relief under the Rosenthal Act.

Defendant cites to *Gorman v. Wolpoff & Abramson*, *LLP*. 370 F. Supp. 2d 1005, 1013 (N.D. Cal 2005). In that case, the court dismissed a claim under the federal Fair Debt Collection Practices Act where plaintiff made only conclusory allegations that he received harassing and abusive calls. *Id*. (complaint alleged that plaintiff received "harassing, threatening, abusive oppressive and annoying telephone calls"). Although Plaintiffs' allegations are fairly sparse, they provide more detail than those in *Gorman*. In contrast to *Gorman's* general allegation of harassing phone calls, Plaintiffs allege that CashCall contacted them multiple times in the same day, shared information with third parties, and made misrepresentations in their collection efforts.

**D.      California Unfair Competition Law**

Defendant seeks to dismiss counts four, five and six of the Plaintiffs' Complaint, which claim violations of the California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiffs' main contentions are that CashCall violates the UCL by (1) making unconscionable loans in violation of the California Financial Code, (2) engaging in a variety of unlawful business practices and (3) making a number of misrepresentations regarding the characteristics of the loans and CashCall's right to recoup payment. The Court evaluates each claim below.

1.      Unconscionable Loans

Plaintiffs allege that CashCall made unconscionable loans in violation of California Financial Code § 22302, California Civil Code § 1670.5 and the UCL. The doctrine of unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005) (internal quotations omitted). In order for a court to find a contract unconscionable, both elements must be present, but "they need not be present in the

same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms." *Armindariz v. Found. Health Psychare Servs.*, 24 Cal. 4th 83, 114 (2000) (internal quotations omitted). As discussed below, Plaintiffs' Complaint adequately alleges both procedural and substantive unconscionability, and thus states a claim for relief under the UCL.

*a.     Procedural Unconscionability*

A contract is procedurally unconscionable if it was the product of either oppression or surprise. Oppression can result from a contract that is offered on a take-it-or-leave-it basis, or if the parties possess disproportionate bargaining power. *Discover Bank*, 36 Cal. 4th at 160. Surprise involves the hiding or obfuscation of supposedly agreed-upon contract terms. *Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519, 1532 (1997).

The California Supreme Court has noted that "[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* Although not all such contracts are unconscionable, courts have found that adhesion contracts satisfy the requirement of procedural unconscionability. *Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007) (contracts of adhesion are "indispensable facts of modern life that are generally enforced…[however, they] contain a degree of procedural unconscionability even without any notable surprises." (internal citations omitted)).

Here, Plaintiffs' Complaint adequately alleges procedural unconscionability. Plaintiffs allege that "CashCall targets consumers experiencing serious, if not altogether desperate financial challenges," and " has grossly disproportionate bargaining power vis-à-vis consumers." (FAC ¶¶ 77, 67.) Furthermore, they allege that the loans are presented on "a take-it-or-leave-it basis" with "no opportunity for negotiation." (FAC ¶ 67.) Defendant counters that the contract is not unconscionable because there were other alternative lenders in the marketplace from which Plaintiffs could have obtained credit. The potential availability of alternatives does not, however, defeat a

Page 11 of 19

claim of unconscionability. *Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976, 985 (9th Cir. 2007) ("a contract may be procedurally unconscionable under California law when the party with substantially greater bargaining power 'presents a 'take-it-or-leave-it' contract to a customer – even if the customer has meaningful choice as to service providers.") (internal quotations omitted).

While Plaintiffs' allegations of oppression are sufficient to state a claim for procedural unconscionability, they also allege that they were unfairly surprised by certain terms because they were not afforded a fair opportunity to review the loan documents. They contend the loan terms were presented in a piecemeal manner in a constricted internet browser window, and that the option to print paper versions of the forms was not conspicuous. (FAC ¶¶ 70, 71.) Because of this, they allege that they could not register or understand material terms of the loan. (FAC ¶ 73.)

Defendant argues that as a matter of law, such allegations cannot form the basis of an unconscionability claim, and to hold otherwise would jeopardize all e-commerce transactions. Defendant's concern is unwarranted. Plaintiffs do not allege that all internet contracts result in unfair surprise, only that the particular circumstances of this transaction were confusing and misleading. Determination of whether the presentation of the contract terms created surprise is an evidentiary issue. After evaluating the evidence, courts have held that in some instances, terms in an internet contract were clearly disclosed and enforceable. *See Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 402 (2d Cir. 2004) (upholding an on-line contract when defendant admitted that he was "fully aware of its terms.") In other instances, however, courts have found that the internet presentation of the terms caused unfair surprise. *See Spect v. Netscape Commc'ns Corp*., 306 F.3d 17, 31-32 (2d Cir. 2002) (holding that terms of a software licensing agreement were unenforceable because the terms were not apparent to consumers downloading the product). Plaintiffs allege that the terms of their loans fall into the latter category.

Alternatively, Defendant argues that Plaintiffs could not have been surprised by the loan terms because the key provisions of the loan, including the APR and other required disclosures, appeared in large, bold font on the promissory notes. Evidence obtained in discovery may support Defendant's argument. For purposes of this motion to dismiss, however, the Court must accept all

well-pled allegations as true, and the Plaintiffs have pled that the option to print the promissory note was not clearly disclosed, and that they were surprised by certain loan terms due to the way they were presented on the computer screen.

### b. *Substantive Unconscionability*

Defendant argues that Plaintiffs' allegations do not establish that the loans are substantively unconscionable. The California Supreme Court explained that "[s]ubstantively unconscionable contract terms may take various forms, but may generally be described as unfairly one-sided." *Discover Bank*, 36 Cal. 4th at 160 (internal quotations omitted).

A loan with a very high interest rate may be substantively unconscionable. In *Carboni v. Arropside*, the California Court of Appeals examined a loan with a 200 percent interest rate. 2 Cal. App. 4th 76, 80 (1991). In that case, the plaintiff originally borrowed $4,000, to be repaid in a single lump sum payment of $6,000 three months later. *Id*. at 79. Plaintiff sought additional cash advances, causing the principal to swell to $99,346. *Id*. At a 200 percent interest rate, plaintiff owed nearly $390,000. *Id*. The court held that "[w]e have little trouble concluding that an interest rate of 200 percent on a secured $99,000 loan is substantively unconscionable; i.e., that it imposes a cost on the borrower which is overly harsh and was not justified by the circumstances in which the contract was made." *Id*. at 83. The court reformed the loan to a 24 percent interest rate. *Id*. at 80.

Plaintiffs allege that they were charged interest rates as high as 98 percent, resulting in consumers repaying four to six times the original loan amount. (FAC ¶¶ 19, 21.) They also note that because of the extended amortization schedule, consumers effectively made interest-only payments for a number of years and none of their payments went toward a reduction of the principal. (FAC ¶ 73.) Viewed in the light most favorable to Plaintiffs, the Complaint sufficiently alleges the element of substantive unconscionability.

CashCall attempts to distinguish *Carboni*. First, it contends that the court based its holding not only on the high interest rate, but also on the relative disparity of bargaining power between the two parties and the lack of alternative sources for the loan. These factors no doubt informed the court's determination that the loan was procedurally unconscionable, but they do not provide a basis

1 to distinguish *Carboni* from this case. In fact, Plaintiffs here make similar allegations. Second,
2 CashCall notes that the interest rate in *Carboni* was higher than the rate Plaintiffs were charged.
3 Although Plaintiffs' loan had a lower rate, under the payment schedule, consumers ended up owing
4 four to six times the original loan amount – similar to the total cost of the loan in *Carboni*.
5 Moreover, *Carboni* does not set a floor of 200 percent for a loan to be considered substantively
6 unconscionable. Instead, the court held that it had "little trouble concluding that an interest rate of
7 200 percent…is substantively unconscionable." *Carboni*, 2 Cal.App.4th at 83.

      2. <u>Unlawful business practices</u>

Plaintiffs allege that CashCall engaged in a number of unlawful business practices that give rise to a claim under the UCL. The UCL defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel.e Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). Therefore, a UCL claim based on unlawful business practices stands or falls based on the underlying statutory violation. *See Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001). Plaintiffs base their UCL claim on alleged violations of the EFTA, CLRA, Rosenthal Act, and the California Financial Lenders Law.

As discussed above, Plaintiffs' Complaint fails to state a claim for relief under the CLRA. The Complaint does, however, sufficiently allege violations of the EFTA and the Rosenthal Act, therefore Plaintiffs state a claim for relief under the UCL on this basis. The alleged violations of the California Financial Lenders Law are reviewed below.

          *a.*    *Violation of California's Financial Lenders Law § 22320*

The Complaint alleges that CashCall violated California's Financial Lenders Law § 22320 by collecting a fee on electronic transfers declined by a customer's bank because their account had insufficient funds to cover the transfer. Cal. Fin. Code § 22320. Section 22320 provides that "[w]ith respect to a loan under this division, a fee not to exceed fifteen dollars ($15) for the return by a

depository institution of a dishonored check, negotiable order of withdrawal, or share draft may be charged and collected by the licensee." *Id.* In their Opposition to CashCall's Motion, Plaintiffs contend that § 22320 only allows fees to be charged on declined "old-fashioned paper checks" and does not cover EFTs, which were uncommon at the time the statute was passed.

In enacting the Financial Lenders Law, the California legislature instructed that "this division shall be liberally construed and applied to promote its underlying purposes and policies… [including] to simplify, clarify, and modernize the law governing loans made by finance lenders." Cal. Fin. Code § 22001(a). In light of the statute's legislative intent, Plaintiffs' argument that § 22320 is limited to traditional paper checks is unpersuasive.

By its own terms, the statute also covers other types of instruments like negotiable orders of withdrawal and share drafts. Moreover, although the statute does not define "check," other statues use the term to encompass a wide variety of financial instruments. For example, the Commercial Code provides that "[a]n instrument may be a check even though it is described on its face by another term." It also lists demand drafts as a type of instrument considered to be a check. Cal. Com. Code § 3104(f). A demand draft is defined as "a writing not signed by a customer that is created by a third party under the purported authority of the customer for the purpose of charging the customer's account with a bank." *Id*. at § 3104(k). An EFT qualifies as a demand draft. Given the stated purpose of the Financial Lenders Law and the legislature's admonition that the statute be "liberally construed," the Court holds that an EFT can be considered a type of check under § 22320. Therefore, insufficient fund fees are permissible on failed EFT transfers, and the Complaint fails to state a claim for violation of § 22320 and by extension for violation of the UCL. As leave to amend would be futile, this claim is dismissed.

       *b.*    *Violation of California's Financial Lenders Law § 22150*

Plaintiffs contend that CashCall also violated another provision of the Financial Lenders Law by making loans to customers beyond their ability to repay. Section 1452 of Title 10 of the California Code of Regulations, which was promulgated pursuant to California Financial Code § 22150, provides that:

> When making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably to repay said loans in the time and manner provided in the loan contracts.

Even under the liberal pleading standards of Rule 8 of the FRCP, Plaintiffs fail to allege sufficient facts to state a claim for violation of § 22150 and its implementing regulations. The Complaint makes only vague, conclusory statements that largely parrot back the language of 10 C.C.R. § 1452. It does not allege specific facts in support of its allegations, such as information about Plaintiffs' income and other debt obligations, although such information is presumably within Plaintiffs' knowledge. The claim for violation of California Financial Code § 22150 and 10 C.C.R. § 1452 is therefore dismissed with leave to amend.

### 3. Fraudulent Business Practices

Plaintiffs also allege CashCall violated the UCL by engaging in fraudulent business activities. A business practice is "fraudulent" within the meaning of the UCL if "members of the general public are likely to be deceived." *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (internal quotations omitted).

Plaintiffs allege a wide variety of deceptive conduct. They contend that CashCall falsely promoted its loans as short term, failed to adequately inform consumers that they will end up repaying several times the principal borrowed, and misrepresented their collection rights. (FAC ¶¶ 95-96.) Plaintiffs also allege that they were confused and misled by the internet presentation of the loan terms. They claim that because the loan terms were presented in a piecemeal manner, and that the option to print paper versions of the forms was not conspicuous, they did not understand the material terms of the loan. (FAC ¶¶ 70-71.)

CashCall argues that Plaintiffs are unable to state a claim under this theory because the material terms of the loans were conspicuously disclosed in large font in the promissory notes. However, not all of Plaintiffs' claims relate to alleged misrepresentations in the promissory notes. Additionally, although evidence obtained in discovery may support CashCall's contention that the loan terms as presented via the internet were clear and that they did not engage in deceptive

1 collection efforts, for purposes of this motion to dismiss, all well-pled allegations must be accepted
2 as true.  Therefore, the Complaint states a claim for relief based on fraudulent business practices in
3 violation of the UCL.

**E.     Request for Judicial Notice**

Defendant requests judicial notice of several documents attached as exhibits to its Motion to Dismiss as well as other documents submitted in a separately filed request.  Federal Rule of Evidence 201(b) provides that a court may take judicial notice of facts that are not reasonably subject to dispute, and that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) are capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

1.     <u>Exhibits Attached to Motion to Dismiss</u>

When ruling on a motion to dismiss, a court may consider documents outside of the complaint if their authenticity is undisputed and the complaint specifically refers to the document or it forms the basis of the plaintiff's claim.  *Inlandboatmens Union of the Pac. v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002).  Exhibit A to CashCall's Motion, Plaintiff De La Torre's promissory note, is specifically discussed in the First Amended Complaint, and the Court GRANTS judicial notice as to this exhibit.  CashCall represents that Exhibits B and C are the Plaintiffs' loan applications, and Exhibits D and E are their payment schedules.  Unlike Exhibit A, however, Exhibits B-E are not discussed in the Complaint and do not form the basis of Plaintiffs' claim. Additionally, Plaintiffs dispute the accuracy of the payment schedules.  (Opp'n Req. Judicial Notice 6.) Therefore, for purposes of this motion to dismiss, Defendant's request as to Exhibits B-E is DENIED.

2.     <u>Separately-Submitted Documents</u>

CashCall separately submitted a Request for Judicial Notice for several other documents. (Dkt. #13.)  Exhibits A and B are copies of a complaint filed in state court and the court's order granting defendant's demurrer in a case where a plaintiff made similar allegations about CashCall. Exhibit C contains excerpts of rules covering EFTs released by the National Automated Clearing

House Association. Exhibits D & E are a website and a bulletin published by the California Department of Corporations.

CashCall's request for judicial notice of Exhibits A and B is GRANTED. A court may take judicial notice of court records in other cases, including records and orders in state court proceedings. *See Miles v. California*, 320 F.3d 986, 987 n.1 (9th Cir. 2003). Although granting the Defendant's request, this Court notes that it must "apply California law as we believe the California Supreme Court would apply it," and is not bound by decisions of lower state courts. *In re K F Dairies, Inc. & Affiliates,* 224 F.3d 922, 924 (9th Cir. 2000).

CashCall's request as to Exhibit C is DENIED. The NACHA rules are released by an industry organization, not by a government agency or other type of official body. They are not generally known within the jurisdiction, and are not subject to verification by resort to resources whose accuracy cannot be reasonably questioned. Therefore, they are not properly subject to judicial notice.

Finally, a court may take judicial notice of records and reports of state administrative bodies, so long as their authenticity is not in dispute. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004). Therefore, CashCall's request is GRANTED as to Exhibits D and E. Plaintiffs argue that judicial notice of the Department of Corporations documents is impermissible because they are not official records or reports, and were not subject to public notice and comment requirements. Plaintiffs are correct that judicial notice is not appropriate for every document generated by a government agency. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (denying a request for judicial notice of handwritten notes on the back of an envelope mailed to the D.E.A.) There is no rule, however, limiting judicial notice to official reports or regulations subject to comment.

///
///
///
///

## IV. CONCLUSION

Based on the foregoing analysis, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, and GRANTS IN PART and DENIES IN PART Defendant's Request for Judicial Notice. Plaintiffs shall file an amended complaint consistent with this Order by July 14, 2009. Defendant shall have twenty days thereafter to file a responsive pleading.

**IT IS SO ORDERED.**

Dated: June 24, 2009

MARIA-ELENA JAMES
United States Magistrate Judge