JAMES C. STURDEVANT (SBN 94551) (jsturdevant@sturdevantlaw.com)
MONIQUE OLIVIER (SBN 190385) (molivier@sturdevantlaw.com)
WHITNEY HUSTON (SBN 234863) (whuston@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, California  94104
Telephone:(415) 477-2410
Facsimile: (415) 477-2420

ARTHUR D. LEVY (SBN 95659) (arthur@yesquire.com)
STRATEGIC LEGAL REPRESENTATION
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 702-4550
Facsimile: (415) 814-4080

Attorneys for Plaintiffs and Counterdefendant
Krista O'Donovan and Eduardo de la Torre

BRAD W. SEILING (Bar No. CA 143515) (bseiling@manatt.com)
NOEL S. COHEN (Bar No. CA 219645) (ncohen@manatt.com)
LYDIA M. MENDOZA (Bar No. 247916) (lmendoza@manatt.com)
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:(310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant and Counterclaimant
CashCall, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA O'DONOVAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., a California corporation, and DOES 1 through DOE 50, inclusive,<br><br>Defendants.<br>———————————————————<br>CASHCALL, INC., a California corporation,<br><br>Counterclaimant,<br><br>v.<br><br>EDUARDO DE LA TORRE, individually and on behalf of all others similarly situated,<br><br>Counterdefendant. | Case No.:  C 08-03174 MEJ<br><br>**STIPULATION AND [proposed] ORDER FOR EXTENSION OF DEADLINES AND FILING OF FOURTH AMENDED COMPLAINT; DECLARATION OF WHITNEY HUSTON**<br><br>Magistrate Judge: Maria-Elena James<br>Complaint filed:  June 1, 2008 |

WHEREAS on September 11, 2008, the parties, through their respective counsel, filed a Stipulation and [proposed] Order for Extension of Deadlines [Dkt. # 6], in which the parties requested extension to the deadlines set forth in the June 1, 2008 Order Setting Initial Case Management Conference and ADR Deadlines ("CMC Order") [Docket # 4].  The Court granted this request on September 9, 2008 [Dkt. # 8] and issued a corrected Order at the parties stipulated request due to an inadvertent error in the original request [Dkt. # 9] on September 26, 2008 [Dkt. 10].

WHEREAS, the Court issued its Case Management Order on September 16, 2009 [Dkt. # 44], which set the Class Certification Motion briefing and hearing schedule as follows:

| | |
|---|---|
| Class Certification Motion to be filed | March 4, 2009 |
| Opposition to Class Certification to be filed | March 25, 2009 |
| Reply in Support of Class Certification to be filed | April 8, 2009 |
| Class Certification Hearing | April 22, 2009 at 10:00 am in Ctrm B |

WHEREAS on December 1, 2009, the parties, through their respective counsel, filed a Stipulation to Extend ADR Compliance for a Period of 120 Days in Light of Class Certification Motion Scheduling requesting that the Court extend the date for completing mediation to a date after the hearing on Class Certification, *i.e.*, April 23, 2010 [Dkt. # 50], which the Court granted on December 2, 2010 [Dkt. # 51].

WHEREAS the parties have diligently and actively engaged in discovery.  Due to scheduling conflicts, however, the parties are unable to complete discovery necessary and related to class certification prior to the date upon which the Class Certification Motion is due to be filed. Additionally, Plaintiffs are concurrently filing herein an amended complaint, which will require additional discovery related to class certification to be conducted prior to the date upon which the Class Certification Motion is due to be filed.

WHEREAS on July 14, 2009, Plaintiffs filed a Second Amended Complaint [Dkt. # 35] and on July 30, 2009 Plaintiffs filed a Third Amended Complaint [Dkt. # 38], both in response to this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss.  The parties met and conferred and agreed that Plaintiffs will file a Fourth Amended Complaint adding a new named

1

Plaintiff and related allegations regarding the additional Plaintiff. The proposed Fourth Amended Complaint will not add or change any allegations related to the causes of action, other than as necessary or related to the addition of the new Plaintiff.

NOW, THEREFORE, Plaintiffs and Defendant, through their respective counsel, hereby stipulate, subject to the approval of this Court, that case deadlines below shall be modified as follows:

| | |
|---|---|
| Class Certification Motion to be filed | June 3, 2010 |
| Opposition to Class Certification to be filed | June 24, 2010 |
| Reply in Support of Class Certification to be filed | July 8, 2010 |
| Class Certification Hearing | July 22, 2010 at 10:00 am in Ctrm B |
| ADR Compliance Deadline | September 24, 2010 |

The Parties also stipulate to the following, subject to the approval of this Court:

Plaintiffs' proposed Fourth Amended Complaint is attached to this stipulation as Exhibit A and is deemed filed as of the date of the signed order. Defendant shall file a responsive pleading by no later than March 19, 2010.

DATED: February 24, 2010         THE STURDEVANT LAW FIRM
A Professional Corporation

STRATEGIC LEGAL REPRESENTATION

By:    /s/ *Whitney Huston*
WHITNEY HUSTON
Attorneys for Plaintiff

DATED: February 24, 2010         MANATT, PHELPS & PHILLIPS, LLP

By:    /s/ *Brad W. Seiling*
BRAD W. SEILING
Attorneys for Defendant

//

//

//

//

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

The Court hereby VACATES the Class Certification hearing date of April 22, 2010 and sets the hearing for June 17, 2010. The case deadlines below shall be modified as follows:

Class Certification Motion to be filed          June 3, 2010

Opposition to Class Certification to be filed          June 24, 2010

Reply in Support of Class Certification to be filed          July 8, 2010

Class Certification Hearing          July 22, 2010 at 10:00 am in Ctrm B

ADR Compliance Deadline          September 24, 2010

IT IS FURTHER ORDERED that Plaintiffs' Fourth Amended Complaint, attached hereto as Exhibit A, is deemed filed as of the date of this Order. Defendant shall file a responsive pleading by no later than March 19, 2010. Plaintiff shall separately file the Fourth Amended Complaint via e-filing.

DATED: _____February 25_____, 2010          _____

                                                            MARIA-ELENA JAMES
                                                            United States Magistrate Judge


**ATTESTATION UNDER GENERAL ORDER 45**

I, Whitney Huston, am the ECF User whose ID and password are being used to file the within document:

**STIPULATION AND [proposed] ORDER FOR EXTENSION OF DEADLINES AND FILING OF FOURTH AMENDED COMPLAINT; DECLARATION OF WHITNEY HUSTON**

Pursuant to General Order 45, I hereby attest that Brad W. Seiling has concurred in this filing and that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.


                              By:     _/s/  Whitney Huston_____
                                          WHITNEY HUSTON

# DECLARATION OF WHITNEY HUSTON

I, Whitney Huston, declare as follows:

1.      I am a member of the State Bar of California and admitted to practice law in all the courts of the State of California and in the United States District Court for the Northern District of California.  I am in good standing with the Bar and with this Court.  I am employed by The Sturdevant Law Firm, counsel for plaintiffs in the above-entitled action.

2.      I make this declaration of my own personal knowledge, and if called as a witness, could and would testify competently to the matters stated herein.

3.      On September 11, 2008, the parties, through their respective counsel, filed a Stipulation and [proposed] Order for Extension of Deadlines [Dkt. # 6], in which the parties requested extension to the deadlines set forth in the June 1, 2008 Order Setting Initial Case Management Conference and ADR Deadlines ("CMC Order") [Docket # 4].  The Court granted this request on September 9, 2008 [Dkt. # 8] and issued a corrected Order at the parties stipulated request due to an inadvertent error in the original request [Dkt. # 9] on September 26, 2008 [Dkt. 10].

4.      On December 1, 2009, the parties, through their respective counsel, filed a Stipulation to Extend ADR Compliance for a Period of 120 Days in Light of Class Certification Motion Scheduling requesting that the Court extend the date for completing mediation to a date after the hearing on Class Certification, *i.e.*, April 23, 2010 [Dkt. # 50], which the Court granted on December 2, 2010 [Dkt. # 51].

5.      The parties have diligently and actively engaged in discovery.  Due to scheduling conflicts, however, the parties are unable to complete discovery necessary and related to class certification prior to the date upon which the Class Certification Motion is due to be filed.  Additionally, Plaintiffs are concurrently filing herein an amended complaint, which will require additional discovery related to class certification to be conducted prior to the date upon which the Class Certification Motion is due to be filed.

6.      On July 14, 2009, Plaintiffs filed a Second Amended Complaint [Dkt. # 35] and on July 30, 2009 Plaintiffs filed a Third Amended Complaint [Dkt. # 38], both in response to this

1    Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss.  The parties met

2    and conferred and agreed that Plaintiffs will file a Fourth Amended Complaint adding a new named

3    Plaintiff and related allegations regarding the additional Plaintiff.  The proposed Fourth Amended

4    Complaint will not add or change any allegations related to the causes of action, other than as

5    necessary or related to the addition of the new Plaintiff.

6        I declare under penalty of perjury that the foregoing is true and correct.

7        Executed this 24th day of February, 2010, at San Francisco, California.

8

9        By:    /s/   *Whitney Huston*
                 WHITNEY HUSTON
10

Z:\434 - O'Donovan v CashCall, Inc\Pleadings\Stip re Extension of class cert deadlines.doc

**EXHIBIT A**

JAMES C. STURDEVANT (SBN 94551)
(jsturdevant@sturdevantlaw.com)
MONIQUE OLIVIER (SBN 190385)
(molivier@sturdevantlaw.com)
WHITNEY HUSTON (SBN 234863)
(whuston@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, California 94104
Telephone:(415) 477-2410
Facsimile: (415) 477-2420

ARTHUR D. LEVY (SBN 95659) (arthur@yesquire.com)
STRATEGIC LEGAL REPRESENTATION
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 702-4550
Facsimile: (415) 814-4080

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA O'DONOVAN, and EDUARDO DE LA TORRE, and LORI SAYSOURIVONG individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CASHCALL, INC., a California corporation, and DOE 1 through DOE 50, inclusive,<br><br>Defendants. | Case No.: C 08-03174 MEJ<br><br>**CLASS ACTION**<br><br>**FOURTH AMENDED COMPLAINT FOR VIOLATIONS OF ELECTRONIC FUND TRANSFER ACT, CONSUMER LEGAL REMEDIES ACT, ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, AND UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      Plaintiffs Krista O'Donovan, Eduardo De La Torre, and Lori Saysourivong bring this case as a class action to challenge the unlawful, unfair, and fraudulent lending practices of CashCall, Inc. ("CashCall").

2.      This is a case of significant impact on thousands of consumers who find themselves caught in the grip of a CashCall loan.  As specified in detail below, CashCall's business practices violate numerous consumer protection and debt collection laws.

3.      CashCall's website advertises its loan interest rates in California as follows:

| Loan amount | APR (Annual Percentage Rate) |
|-------------|------------------------------|
| $2,600 Loan | 99.25% |
| $5,075 Loan | 70.08% |
| $10,000 Loan | 59.46% |

CashCall website, Rates for State of California, http://www.cashcall.com/General/Rates.aspx (as of June 18, 2008).

4.      CashCall makes millions of dollars in unsecured personal loans to consumers every year at exorbitantly high and unconscionable interest rates, the majority of which are in excess of 90% interest per year.  In the year 2005, CashCall reported income of over $68 million.  CashCall's income included $26,588,635 in interest income alone.  In that same year, CashCall reported additional income of $5,508,532 from fees on loans.

5.      CashCall engages in widespread TV broadcast advertising statewide aimed at financially strapped and financially desperate consumers.  CashCall targets consumers in distress who have limited credit alternatives and are financially unable to repay CashCall's loans as the loan terms require.  CashCall structures its loans so that they are effectively interest-only over much of the loan term.  CashCall therefore requires consumers to pay its extremely high interest charges for several years, without any significant reduction in their loan balances.

6.      CashCall's high interest rates, oppressive loan terms, and protracted repayment time make it impossible for most consumers who fall prey to CashCall's advertisements to pay off their loans within any reasonable time period, even to pay their loans according to a schedule without

defaulting. As the loan term drags on, CashCall secures its profit by collecting high interest payments, while the outstanding principal balance is barely reduced. CashCall pumps its customers' loan balances up by adding on late fees and insufficient fund charges. Once a customer falls behind in payments, CashCall turns to coercive collection practices to keep the customer paying and CashCall collecting.

7.      A significant percentage of consumers, which CashCall estimates to be 20%, default on CashCall loans, and the percentage of customers CashCall pursues with collectors is extremely high.

8.      In collecting its loans, CashCall has engaged and continues to engage in the uniform business practice of making frequent and repeated harassing telephone calls to a consumer's residence, place of employment, and/or cellular phone, up to multiple times a day, for days or weeks in a row, demanding payment of outstanding debt. During these phone calls, CashCall uniformly employs aggressive tactics, including abusive tone and language, harassing tone and language, and providing incorrect or misrepresentative information to convince consumers to make payments.

9.      CashCall has also engaged and continues to engage in the uniform business practice of contacting third parties, including employers, co-workers, neighbors, family members, friends, and other individuals, and communicates specific information about the debt owed, including private personal, and financial information.

## JURISDICTION AND VENUE

10.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

11.      This Court has personal jurisdiction over CashCall, as it is a California corporation.

12.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2) in that the Defendant is domiciled in California and the unlawful conduct that gave rise to

2

these claims occurred within the Northern District of California.

## INTRA-DISTRICT ASSIGNMENT

13.     Intra-district assignment in San Francisco/Oakland, California is proper because the unlawful conduct that gives rise to the alleged claims occurred in Alameda County.

## PARTIES

14.     Plaintiff Krista O'Donovan ("O'Donovan") is a natural person and a resident of Pleasanton, California.  She borrowed money from Defendant CashCall, Inc. in Alameda County, California for personal, family, or household purposes.

15.     Plaintiff Eduardo De La Torre ("De La Torre") is a natural person domiciled in Redwood City, California.  He borrowed money from Defendant CashCall, Inc. in Yolo County, California for personal, family or household purposes.

16.     Plaintiff Lori Saysourivong ("Saysourivong") is a natural person and a resident of Sacramento, California.  She borrowed money from Defendant CashCall, Inc. in San Diego County for personal, family or household purposes.

17.     Defendant CashCall, Inc. ("CashCall") is a California corporation and has its principal place of business located in California.  As such, CashCall is legally obligated to all of its customers to comply with the laws of this state, including all California consumer protection laws CashCall violated, as more specifically alleged below.

18.     CashCall is and at all relevant times was engaged in making consumer loans in Alameda County, Yolo County, and throughout California, and either was or should have been licensed by the California Department of Corporations as a California Finance Lender subject to the California Finance Lenders Law, California Financial Code section 22000 *et seq*.

19.     Defendants Does 1 through 50 are persons or entities whose true names and identities are now unknown to Plaintiffs, and who therefore are sued by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of these fictitiously named Defendants when they are ascertained.  Each of the fictitiously named Defendants is responsible for the conduct alleged in this complaint, and Plaintiffs' damages and the damages of the Plaintiff Class were actually and proximately caused by the conduct of the fictitiously named Defendants.

3

# **FACTUAL ALLEGATIONS**

**Plaintiff Krista O'Donovan**

20.     In or about October 2005, Plaintiff Krista O'Donovan borrowed $5,075 from CashCall based on an annual percentage rate of interest ("APR") of 59.83%, according to CashCall's Promissory Note and Disclosure Statement.  The stated total of payments to amortize this debt is $30,161.86, or six times the principal.  The interest carry alone is over $25,000, more than five times the principal.  A true and correct copy of the CashCall Promissory Note and Disclosure Statement applicable to Plaintiff's CashCall transaction is attached as Exhibit "A" to this Complaint.

21.     CashCall made loans to Plaintiff O'Donovan beyond her financial ability to repay in the time and manner provided in the CashCall Promissory Note and Disclosure Statement.  For example, at the time she took out the loan from CashCall, O'Donovan was working on a commission basis and thus her monthly income was not definite.  Additionally, O'Donovan had essential monthly expenses that exceeded her guaranteed income, including student loan payments, a car payment, credit card debt, daycare costs for her three children, rent, and monthly living expenses, such as groceries, for a family of five.

22.     In light of the monthly expenses she was required to pay in order to care for her family and maintain their basic living conditions, O'Donovan could not afford her CashCall loan payment each month.  Paying CashCall back for the loan in the time and manner required by CashCall was especially difficult because repayment demanded several years of regular payments, which was not feasible due to O'Donovan and her husband's inconsistent income.

23.     On information and belief, CashCall did not conduct any assessment of O'Donovan's employment, earnings capacity, her job security, her monthly expenses or her outstanding debt when it approved her for the loan.

**Plaintiff Eduardo De La Torre**

24.     In or about February 2006, Plaintiff Eduardo De La Torre borrowed $2,600 from CashCall based on an APR of approximately 98%.  Upon information and belief, the stated total of payments to amortize this debt is over $9,000.

25.     CashCall made loans to Plaintiff De La Torre beyond his financial ability to repay in

the time and manner provided in the CashCall Promissory Note and Disclosure Statement. For example, at the time he took out the loan from CashCall, De La Torre was working only part-time, approximately 15 hours per week. De La Torre's monthly expenses exceeded his income, as his expenses included rent, utilities, credit card debt and groceries.

26. As De La Torre was a student at University of California at Davis, his income for the near future would consist only of student loans and income from his part-time work. De La Torre thus could not afford his CashCall loan payment each month. Paying CashCall back for the loan in the time and manner required by CashCall was especially difficult because repayment would require several years of regular payments, which was not realistic given De La Torre's status as a student without significant earned income.

27. On information and belief, CashCall did not conduct any assessment of De La Torre's employment, earnings capacity, monthly expenses or outstanding debt when it approved him for the loan.

**Plaintiff Lori Saysourivong**

28. In or about May 2006, Plaintiff Lori Saysourivong borrowed $2,525 from CashCall based on an annual percentage rate of interest ("APR") of 99.07%, according to CashCall's Promissory Note and Disclosure Statement. The stated total of payments to amortize this debt is $9,149.51.

29. CashCall made loans to Plaintiff Saysourivong beyond her financial ability to repay in the time and manner provided in the CashCall Promissory Note and Disclosure Statement. For example, at the time she took out the loan from CashCall, Saysourivong had essential monthly expenses that exceeded her guaranteed income, including credit card debt, commuting expenses, rent, and monthly living expenses.

30. In light of the monthly expenses she was required to pay, Saysourivong could not afford her CashCall loan payment each month. Paying CashCall back for the loan in the time and manner required by CashCall was especially difficult because repayment demanded several years of regular payments, which was not feasible due to Saysourivong's expenses and her husband's inconsistent income.

31. On information and belief, CashCall did not conduct any assessment of Saysourivong's earnings capacity, her job security, her monthly expenses or her outstanding debt when it approved her for the loan.

## CLASS ACTION ALLEGATIONS

32. Pursuant to California Civil Code section 1781 and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of a proposed class. This putative class (hereinafter the "Plaintiff Class") is defined as follows:

> All individuals who borrowed money from CashCall, Inc. for personal, family, or household use at any time from June 30, 2004 to the present.

33. This action may properly be maintained as a class action pursuant to California Civil Code section 1781 and Rule 23.

34. CashCall's loans to Plaintiffs and the members of the Plaintiff Class are all "consumer loans" as defined by California Financial Code section 22203.

35. The Promissory Note and Disclosure Statements that CashCall issued for Plaintiffs and the members of the Plaintiff Class were all prepared on form loan agreements that are the same or substantially similar to the Promissory Note and Disclosure Statements CashCall issued for Plaintiffs.

36. Plaintiffs are informed and believe and on that basis allege that the Plaintiff Class is so numerous that joinder of their individual claims is impracticable. The precise number of the Plaintiff Class, and the identities of the members, are ascertainable from the business records of CashCall.

37. Questions of law and fact common to the Plaintiff Class exist and predominate over questions affecting only individual class members. These common legal and factual questions include, but are not limited to:

a. Whether CashCall's practices violate the Electronic Fund Transfer Act, 15 U.S.C. section 1693 *et seq*. ("EFTA"), including Regulation E, 12 C.F.R. section 205 *et seq.*, promulgated by the Board of Governors of the Federal Reserve System;

6

b.      Whether CashCall's uniform lending and collection practices are unlawful, unfair, and deceptive business practices in violation of the Unfair Competition Law, California Business and Professions Code section 17200 *et seq.* ("UCL") and the California Finance Lenders Law, California Financial Code section 22000 *et seq.*;

c.      Whether CashCall's uniform lending and collection practices have violated the Consumer Legal Remedies Act, Civil Code section 1750 *et seq.* ("CLRA"), by uniformly representing that the service they provide has characteristics and benefits which it does not have;

d.      Whether CashCall's uniform practice of employing abusive and harassing debt collection tactics and relying on misrepresentations to collect debts violates the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 *et seq.* ("Rosenthal Act"); and

e.      The nature and extent of relief to Plaintiffs and the Plaintiff Class, including declaratory judgment, accounting, injunctive relief, restitution, and other remedies to which Plaintiffs and the other members of the Plaintiff Class are entitled.

38.      Plaintiffs' claims are typical of the claims of the Plaintiff Class.  Each of the members of the Plaintiff Class borrowed money from CashCall and was issued a Promissory Note and Disclosure Statement on forms that are the same or substantially similar to the Promissory Note and Disclosure Statement form issued to Plaintiffs.  Each of the members of the Plaintiff Class was subject to the same or substantially similar uniform lending practices followed by CashCall.  Each of the members of the Plaintiff Class has the same or substantially similar claims to Plaintiffs for relief against these practices under the CLRA; the EFTA; the Rosenthal Act; the California Finance Lenders Law; and the UCL.  As described above and below, the claims arise from the same course of conduct by CashCall, and the relief sought is common.

39.      Plaintiffs are adequate representatives of the Plaintiff Class because:  (a) their interests do not conflict with the interests of the individual members of the Plaintiff Class they seek to represent; (b) they have retained counsel who are competent and experienced in complex class action litigation; and (c) they intend to prosecute this action vigorously.  The interests of the members of the Plaintiff Class will be fairly and adequately protected by Plaintiffs and their counsel.

40.      The Plaintiff Class action device is superior to other available means for the fair and

7

efficient adjudication of the claims of Plaintiffs and the Plaintiff Class. Furthermore, because the economic damages suffered by the individual class members may be relatively modest, albeit significant, compared to the expense and burden of individual litigation, it would be impracticable for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. There will be no undue difficulty in the management of this litigation as a class action. Plaintiffs' and the Plaintiff Class members' common claims can be economically adjudicated only in a class action proceeding, thus promoting judicial efficiency and avoiding multiple trials and inconsistent judgments.

### FIRST CLAIM
**For violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*. and Federal Reserve Regulation E, 12 C.F.R. § 205 *et seq*.**

41.     Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every allegation above as if fully set forth in this Claim.

42.     CashCall has initiated and/or effected electronic fund transfers of loan installments from the accounts of Plaintiffs on multiple days during a single month.

43.     The Promissory Note and Disclosure Statements relating to the CashCall loan transactions of Plaintiffs and the members of the Plaintiff Class uniformly specify a particular day of the month when CashCall is allowed to initiate and affect electronic fund transfers from customer accounts to collect installment payments and other amounts from Plaintiffs and the Plaintiff Class.

44.     CashCall has engaged and continues to engage in the business practice of initiating and effecting electronic fund transfers from customer accounts to collect payments on days of the month other than those agreed to and specified in the Promissory Note and Disclosure Statement. When CashCall fails to collect a loan installment payment or other charge through electronic fund transfer on the day agreed to and specified in a Promissory Note and Disclosure Statement, CashCall thereafter attempts to collect the installment payment and other charges on later days during the same installment cycle that were not agreed to or authorized by the customer.

45.     These practices violate the Electronic Fund Transfer Act, 15 U.S.C. section 1693 *et seq*. ("EFTA"), including 15 U.S.C. section 1693e and Regulation E, 12 C.F.R. section 205 *et seq.*, promulgated by the Board of Governors of the Federal Reserve System.

8

46.     Section 1693e(a) provides in relevant part:  "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."  Plaintiffs gave CashCall written preauthorization to initiate and effect electronic transfers on a particular day of the month. CashCall's initiation of electronic fund transfers from Plaintiffs' accounts on days of the month other than those so specified violates section 1693e(a) and Regulation E because transfers on multiple days during a single month are not in compliance with section 1693e(a) when the customer has only authorized a transfer a single date during the month.

47.     These practices violate the EFTA, including 15 U.S.C. section 1693e and Regulation E promulgated by the Board of Governors of the Federal Reserve System, and constitute systematic breaches of the CashCall Promissory Note and Disclosure Statement in violation of 15 U.S.C. section 45(n) and the *Federal Trade Commission Policy Statement on Unfairness*, Letter from Wendell H. Ford & John C. Danforth to Senate members of the Consumer Subcommittee of the U.S. Senate Committee on Commerce, Science, and Transportation (Dec. 17, 1980), appended to *International Harvester Co.*, 104 F.T.C. 949, 1070 (1984).

48.     Further, CashCall has engaged and continues to engage in the business practice of conditioning the extension of credit on the customer's repayment by means of preauthorized electronic fund transfers.  CashCall requires all customers to agree to a provision that permits CashCall to make electronic debits from their bank account.

49.     These practices violate the EFTA, including 15 U.S.C. section 1693k and Regulation E promulgated by the Board of Governors of the Federal Reserve System.  Section 1693k(1) states in pertinent part:  "No person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers; . . ."

50.     Further, CashCall has engaged and continues to engage in the business practice of limiting consumers' rights to cancel or stop payment of a preauthorized electronic fund transfer by requiring all customers to agree to the following provision as a condition of a CashCall loan, "I understand that I can cancel this authorization at any time (including prior to my first payment due date) by sending written notification to CashCall.  Cancellations must be received at least seven days

1 | prior to the applicable due date."

2 |     51.    These practices violate the EFTA, including 15 U.S.C. section 1693e(a) and

3 | Regulation E promulgated by the Board of Governors of the Federal Reserve System, which permit a

4 | consumer to stop payment of a preauthorized electronic fund transfer by notifying either orally or in

5 | writing up to three business days prior to the scheduled date of the transfer.

6 |     52.    As a direct and proximate result of these violations, Plaintiffs and the Plaintiff Class

7 | were and continue to be damaged in an amount according to proof, including, without limitation,

8 | statutory damages and actual damages, such as payments of interest and other charges collected by

9 | CashCall and emotional distress damages.

10 |     53.    Pursuant to 15 U.S.C. section 1693 *et seq.*, Plaintiffs and the Plaintiff Class are

11 | entitled to recover actual damages sustained as a result of CashCall's violations of EFTA, in an

12 | amount to be determined at trial, statutory damages, and attorney fees and costs in accordance with

13 | 15 U.S.C. section 1693m.

### SECOND CLAIM
**Violation of Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.***

16 |     54.    Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every

17 | allegation above as if fully set forth in this Claim.

18 |     55.    The Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.*

19 | ("CLRA"), specifically provides that "[a]ny waiver by a consumer of the provisions of this title is

20 | contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1751.

21 |     56.    CashCall has violated section 1770(a)(5) of the Act by representing that the services

22 | CashCall provides have characteristics and benefits which they do not have, including without

23 | limitation, failing to adequately disclose the terms of loans and promising loans benefits which are

24 | not accurate or realistic based on the terms of the loans.

25 |     57.    CashCall has violated section 1770(a)(14) of the CLRA by representing that they

26 | have rights and remedies that are prohibited by law, specifically that they have the right to collect

27 | debts without providing notices required by law, and that they have the right to collect debts in a

28 | manner prohibited by the EFTA and the Rosenthal Act.

58.     CashCall has violated section 1770(a)(19) of the Act by including unfair and unconscionable loan terms, including unconscionable usury rates and an unconscionable Internet presentation of the loans, in its loan agreements. CashCall possesses bargaining strength and power far superior to that of Plaintiffs and other customers. Without discussion or negotiation, CashCall offers standardized form contracts, drafted by CashCall, which are contracts of adhesion because they are offered on a take-it-or-leave-it basis. The loan agreements are substantially one-sided in favor of CashCall. They are, therefore, unlawful, unfair, fraudulent, and unconscionable.

59.     As a result of the unfair and deceptive acts and practices of CashCall herein above described, Plaintiffs and members of the Plaintiff Class have been harmed.

60.     On August 8, 2008, Plaintiff O'Donovan, through her counsel, sent a notice and demand letter, on behalf of herself and all other similarly situated, by certified mail, return receipt, to CashCall, Inc., pursuant to California Civil Code section 1782. As of October 10, 2008, Plaintiffs had not received a response from CashCall.

61.     As a result of the unfair and deceptive acts and practices of CashCall herein above described, members of the Plaintiff Class who are senior citizens or disabled individuals have suffered substantial economic or emotional harm, and are entitled to special statutory damages in accordance with California Civil Code section 1780(b).

62.     Pursuant to California Civil Code sections 1770 and 1780, Plaintiffs and each member of the Plaintiff Class they seeks to represent are entitled to recover actual damages against CashCall sustained as a result of CashCall's violations of the CLRA. In addition, Plaintiffs are entitled to recover and seek to recover for themselves any other resulting monetary losses and damages and for emotional distress, which damages are in an amount to be proven at trial.

63.     Pursuant to California Civil Code section 1780, Plaintiffs and each member of the Plaintiff Class they seek to represent are entitled to recover punitive damages against CashCall because CashCall acted with malice, oppression, or fraud.

64.     Pursuant to California Civil Code sections 1780 and 1781, Plaintiffs and the Plaintiff Class hereby request certification of the Plaintiff Class, injunctive relief, and attorney's fees, costs and expenses pursuant to California Civil Code section 1780(d) and California Code of Civil

Procedure section 1021.5.

**THIRD CLAIM**

**Violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.***

65.     Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every allegation above as if fully set forth in this Claim.

66.     The Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 *et seq.* ("Rosenthal Act"), prohibits unfair and deceptive acts and practices in the collection of consumer debts.

67.     CashCall, in the regular course of business, engages in debt collection and is a "debt collector" as defined by California Civil Code section 1788.2(c).

68.     When Plaintiff O'Donovan's, De La Torre's or Saysourivong's payment on their CashCall loan was late, even by one day, they received phone calls from CashCall employees attempting to collect their debt.  The callers contacted both Plaintiffs multiple times each day, aggressively demanded they make payments on their CashCall loan, and made misrepresentations. Plaintiffs were yelled at and threatened by these callers.  Additionally, CashCall contacted third parties in an attempt to collect Plaintiffs' debts, including family members, friends, and employers.

69.     By their acts and practices as hereinabove described, CashCall has violated the Rosenthal Act and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), as incorporated by California Civil Code section 1788.17, as follows, without limitation:

a.     Systematically harassing Plaintiffs and the members of the Plaintiff Class by excessive and unnecessary telephone calls in order to coerce and intimidate customers into paying and continuing to pay CashCall, in the absence of any legitimate reason for the continuation of such calls.

b.     Systematically and unlawfully communicating with third parties regarding the loans of Plaintiffs and the members of the Plaintiff Class, including, without limitation, employers, friends, and family members, and communicating information in regards to the debt owed by the consumer to third parties.

c.     Using deceit and misrepresentation in communications in collecting loans from Plaintiffs and the members of the Plaintiff Class.

d.     Claiming and collecting amounts not authorized by agreement with the Plaintiffs and the members of the Plaintiff Class, including but not limited to insufficient fund fees on electronic debit transactions made on unauthorized days of the month.

12

e.    Failing to include certain debt collection notices required by law in collecting loans to Plaintiffs and the members of the Plaintiff Class.

70.    Pursuant to California Civil Code sections 1788.30 and 1788.17 (incorporating 15 U.S.C. section 1692 *et seq.*), Plaintiffs and the Plaintiff Class are entitled to recover actual damages sustained as a result of CashCall's violations of the Rosenthal Act.  Such damages include, without limitation, resulting monetary losses and damages, which damages are in an amount to be proven at trial.  In addition, Plaintiffs are entitled to recover and seeks to recover for themselves any other resulting monetary losses and damages and for their emotional distress, which damages are in an amount to be proven at trial.

71.    In addition, pursuant to California Civil Code sections 1788.30 and 1788.17 (incorporating 15 U.S.C. section 1692 *et seq.*), because CashCall's violations of the Rosenthal Act were committed willingly and knowingly, Plaintiffs and the Plaintiff Class are entitled to recover, in addition to actual damages, penalties of at least $1,000 per violation as provided for in the Act.

72.    Pursuant to California Civil Code sections 1788.30 and 1788.17 (incorporating 15 U.S.C. section 1692 *et seq.*), Plaintiffs and the Plaintiff Class are entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this action.

## FOURTH CLAIM
### For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

73.    Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every allegation above as if fully set forth in this Claim.

74.    The California Unfair Competition Law, California Business and Profession Code section 17200 *et seq.* ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "deceptive" business act or practice.  Cal. Bus. & Prof. Code § 17200.

75.    CashCall has engaged and continues to engage in the illegal and unfair business practice of making loans on terms that are unconscionable under the circumstances at the time they are made and which fail to accurately and fairly represent the characteristics and benefits of the loans.  CashCall violated and continues to violate the UCL, California Financial Code section 22302, and California Civil Code section 1670.5, by making loans at rates of interest and on other terms that

are unconscionable in light of the financial circumstances of the borrowers.

76.    The CashCall Promissory Note and Disclosure Statement relating to Plaintiffs and the Plaintiff Class is a form document prepared exclusively by CashCall and presented to Plaintiffs and the members of the public on a take-it-or-leave-it basis. CashCall has grossly disproportionate bargaining power vis-à-vis consumers and dictates the terms of its loans and loan documents. CashCall allows no opportunity for negotiation. The customer must consent to all terms proposed by CashCall in order to obtain a loan from CashCall.

77.    The CashCall Promissory Note and Disclosure Statement relating to each of the Plaintiffs and each member of the Plaintiff Class is a consumer contract of adhesion.

78.    CashCall lends to consumers over the Internet, with the customer at a personal computer, using electronic signatures, document transmittals, and disclosures. CashCall uniformly requires consumers to apply for and execute loan documents electronically. A customer must have access to a personal computer in order to fill out and transmit the loan application and documentation forms required by CashCall in order to obtain a CashCall loan. CashCall does not lend money based on paper transactions.

79.    CashCall's Internet presentation to consumers of the CashCall loan application and documentation forms required to obtain a CashCall loan, including the CashCall Promissory Note and Disclosure Statement, does not allow the consumer a fair opportunity to review the documents, as a borrower would ordinarily have if presented with a loan application and documentation forms in a paper format. Because the forms are presented in a constricted Internet browser window format, consumers do not have a fair opportunity to review the application forms and loan documentation before completing the loan application process. To the extent that CashCall may allow consumers to print these forms out before completing the application process, CashCall does not conspicuously disclose that option, or require that consumers do so and read the documents before completing the process.

80.    Plaintiffs and the Plaintiff Class were presented with the CashCall Promissory Note and Disclosure Statement in small bits and pieces on a computer screen. This presentation does not clearly and conspicuously present the rate of interest, the APR, the required Truth in Lending

14

Disclosures, or the term of the loan. A reasonable consumer would not see, register, and understand these provisions due to the limitations of presentation on a computer screen. Plaintiffs and the Plaintiff Class did not see, register, and/or understand these features of CashCall loans.

81. As a result of CashCall's Internet presentation, Plaintiffs did not register or understand the loan terms and disclosures.

82. The Internet presentation of the CashCall Promissory Note and Disclosure Statement to Plaintiffs and the Plaintiff Class is markedly one-sided and presents a distorted picture of the loans CashCall offers. CashCall's Internet presentation does not bring home to consumers: (a) the length of time that CashCall loans are effectively interest only, that is, two to four years before there is any appreciable principal reduction, or (b) that the interest the consumer must pay typically costs three to five times the amount that the consumer receives from CashCall.

83. CashCall's business practices are unfair because they deceive and mislead consumers by inducing them to sign a Promissory Note and Disclosure Statement through an Internet presentation which is one sided and does not effectively communicate to a reasonable consumer the critical terms of the loan.

84. Plaintiffs and the members of the Plaintiff Class were unable to understand the ramifications of CashCall's amortization of the loans, and to realize the full cost and unfairness of the financial obligation CashCall's loans purport to impose on Plaintiffs and the members of the Plaintiff Class. As a result of a presentation of loan terms and disclosures in an unconscionable format, CashCall violated California Financial Code section 22302.

85. CashCall's practices are further illegal, unfair, and unconscionable business practices because they involve making and collecting loans at exorbitant interest rates on amortization schedules that require borrowers to repay CashCall at least twice the amount borrowed before reducing substantial principal, requiring borrowers to repay CashCall from three to five times the amount of the loan, and requiring repayment over an inordinate amount of time. These practices offend public policy, are unconscionable, oppressive and unscrupulous, and cause substantial injury to consumers.

86. CashCall targets consumers experiencing serious, if not altogether desperate,

financial challenges. Plaintiffs and the Plaintiff Class have obtained CashCall loans at exorbitantly high interest rates and on such unfavorable loan terms because, in their financial circumstances, credit alternatives on more favorable terms are not practically available to them in the marketplace. A significant percentage of consumers default on CashCall loans, and the percentage of customers CashCall pursues with collectors is extremely high.

87.     The harm suffered by Plaintiffs and the Plaintiff Class as a result of the extraordinarily oppressive nature of CashCall loan terms greatly outweighs what value, if any, they receive as a result of the initial CashCall loan.

88.     CashCall's practices are further illegal, unfair, and unconscionable because CashCall engages in predatory lending practices including, but not limited to, the use of high pressure sales tactics and failing to consider a consumer's ability to repay a loan.

89.     The loans made to Plaintiffs and the Plaintiff Class are void and not enforceable because they are unlawful, unfair, and unconscionable in violation of California Financial Code section 22302 and California Civil Code section 1670.5, as well as the UCL.

90.     In making and administering their loans to Plaintiffs and the Plaintiff Class, CashCall willfully violated California Financial Code section 22302 and California Civil Code section 1670.5.

91.     Further, in making loans to Plaintiffs and the Plaintiff Class, CashCall made loans beyond their financial ability to pay in the time and manner provided in the Promissory Note and Disclosure Statement, in violation of 10 C.C.R. section 1452, a regulation promulgated under the California Finance Lenders Law, pursuant to California Financial Code section 22150, which states, "When making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably to repay said loans in the time and manner provided in the loan contracts." 10 C.C.R. § 1452.

92.     In making and administering their loans to Plaintiffs and the Plaintiff Class, CashCall willfully violated California Financial Code section 22150 and 10 C.C.R. section 1452.

93.     As a result of these violations and unfair business practices, Plaintiffs suffered injury in fact and lost money and property, including but not limited to payments of interest and other

charges collected by CashCall on loans made in violation of these laws.

94.     Pursuant to California Business and Professions Code section 17200 *et seq*., Plaintiffs and the Plaintiff Class are entitled to enjoin the practice of making unconscionable loans and of harassing debt collection, and to obtain restitution of all funds obtained by CashCall by reason of and through the use of these unlawful, unfair, or fraudulent acts and practices.

## FIFTH CLAIM
### For Unlawful and Unfair Business Practices in Violation of
### Cal. Bus. & Prof. Code § 17200 *et seq.*

95.     Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every allegation above as if fully set forth in this Claim.

96.     CashCall's business practices in making and collecting loans are unlawful business practices in violation of the UCL because they violate, without limitation, EFTA, the Rosenthal Act, and the CLRA, as described above.

97.     As a result of these violations and unlawful business practices, Plaintiffs suffered injury in fact and lost money and property, including but not limited to payments of interest and other charges collected by CashCall on loans made in violation of these laws.

98.     Pursuant to California Business and Professions Code section 17203, Plaintiffs, individually, and on behalf of all members of the Plaintiff Class, and the general public who are, have been or may be, subjected to the practices of CashCall in violation of section 17200, hereby request injunctive relief prohibiting these practices in the future, and such other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which may have been acquired by CashCall by means of this unlawful, unfair and fraudulent business practice, or to disgorge profits CashCall have earned thereby.

## SIXTH CLAIM
### For Unlawful Fraudulent and Unfair Business Practices in Violation of
### Cal. Bus. & Prof. Code § 17200 *et seq.*

99.     Plaintiffs individually, and on behalf of the Plaintiff Class, reallege each and every allegation above as if fully set forth in this Claim.

100.     CashCall's marketing, sale, and collection of its loans are fraught with material misrepresentations and omissions that are likely to deceive consumers and violate the UCL.

17

101.    In its dealings with Plaintiffs and members of the Plaintiff Class, CashCall failed and continues to fail to accurately represent the characteristics and benefits of the loans they provide. Among other things, CashCall promotes its loans as short term loans and fails to disclose adequately the fact that consumers will have to pay back more than three times what they borrow.

102.    CashCall's agreements with consumers also misrepresent that CashCall has rights with respect to collection of debts that are in fact prohibited by law. In particular, CashCall misrepresents that it has a right to condition its loans on consumers' authorization to direct debits from their bank accounts to repay the loans. On information and belief, CashCall also routinely makes misrepresentations to consumers in its attempts to make consumers pay the usurious terms of the loans.

103.    These are material misrepresentations and omissions that are likely to deceive consumers, likely to induce consumers to misunderstand the material loan terms, and/or likely to induce a consumer to agree to a loan.

104.    As a result of these unlawful and fraudulent business practices, Plaintiffs suffered injury in fact and lost money and property, including but not limited to payments of interest and other charges collected by CashCall on loans made in violation of these laws.

105.    Pursuant to California Business and Professions Code section 17200 *et seq*., Plaintiffs are entitled to enjoin the practice of making unconscionable loans, of harassing debt collection and to obtain restitution of all funds obtained by CashCall by reason of and through the use of these unlawful, unfair, or fraudulent acts and practices.

106.    Pursuant to Code of Civil Procedure section 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## **RELIEF SOUGHT**

Plaintiffs request the following relief for themselves and on behalf of the Plaintiff Class:

1.    An order certifying the Plaintiff Class under California Code of Civil Procedure section 382 and California Civil Code section 1781, and appointing Plaintiffs and their counsel to represent the Plaintiff Class;

2.    A declaration of the rights of Plaintiffs and of the Plaintiff Class with respect to

CashCall under the California Finance Lenders Law and its regulations, an accounting to bring their loans into compliance with the California Finance Lenders Law and its regulations, restitution of all monies collected and/or charged by CashCall from Plaintiffs and the Plaintiff Class in violation of the California Finance Lenders Law and its regulations with prejudgment interest to date, and injunctive relief against CashCall threatened and ongoing violations of the California Finance Lenders Law and its regulations, as more particularly set forth above;

3.      Restitution of all monies wrongfully charged to and/or collected from Plaintiffs and the Plaintiff Class in violation of the UCL with prejudgment interest to date, and injunctive relief against CashCall for violation of the UCL, as more particularly set forth above;

4.      Actual and statutory damages to Plaintiffs and the Plaintiff Class for violations of EFTA, the Rosenthal Act, and the CLRA.

5.      Punitive damages to Plaintiffs and the Plaintiff Class according to proof at trial;

6.      Attorneys fees and expenses of litigation to the extent provided by law;

7.      Costs of suit; and

8.      Such other and further legal and equitable relief as this Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of each and every cause of action so triable.

DATED:   February 24, 2010

Respectfully submitted,

THE STURDEVANT LAW FIRM
A Professional Corporation

STRATEIC LEGAL REPRESENTATION

By:  /s/  *Whitney Huston*
WHITNEY HUSTON
Attorneys for Plaintiffs

Z:\434 - O'Donovan v CashCall, Inc\Pleadings\Complaints\Fourth AC - Final.doc