1   BRAD W. SEILING (Bar No. CA 143515)
    NOEL S. COHEN (Bar No. CA 219645)
2   LYDIA M. MENDOZA (Bar No. 247916)
    MANATT, PHELPS & PHILLIPS, LLP
3   11355 West Olympic Boulevard
    Los Angeles, CA  90064-1614
4   Telephone:     (310) 312-4000
    Facsimile:     (310) 312-4224
5   E-mail: bseiling@manatt.com; ncohen@manatt.com;
    lmendoza@manatt.com
6
    *Attorneys for Defendant*
7   CashCall, Inc.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  KRISTA O'DONOVAN and EDUARDO          Case No.  C 08-03174 MEJ
    DE LA TORRE, individually and on behalf
12  of all others similarly situated,         DECLARATION OF ETHAN POST IN
                                              SUPPORT OF CASHCALL, INC.'S
13                  Plaintiff,                OPPOSITION TO PLAINTIFFS' MOTION
                                              FOR CLASS CERTIFICATION
14          vs.
                                              [Filed Concurrently with:
15  CASHCALL, INC., a California
    corporation, and DOES 1 through DOE 50,   (1) Opposition to Plaintiffs' Motion for Class
16  inclusive,                                    Certification;
                                              (2) Declaration of Delbert O. Meeks;
17                  Defendants.               (3) Declaration of Myles McCarthy;
                                              (4) Declaration of Thomas Morgan;
18                                            (5) Declaration of Stephen Klopstock;
                                              (6) Declaration of Sean Bennett;
19                                            (7) Declaration of Hilary Holland;
                                              (8) Declaration of Brad W. Seiling; and
20                                            (9) Evidentiary Objections]

21                                            Date:     July 22, 2010
22                                            Time:     10:00 a.m.
                                              Place:    Courtroom B
23
                                              Judge:  Hon. Maria-Elena James
24

25

26

27

28

MANATT, PHELPS &
  PHILLIPS, LLP
 ATTORNEYS AT LAW
  LOS ANGELES

DECLARATION OF ETHAN POST IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION

## DECLARATION OF ETHAN POST

I, Ethan Post, declare and state as follows:

1.     I am currently Principal Architect for CashCall, Inc. ("CashCall") and have been employed by CashCall since October 2003.  In my role as Principal Architect, I am responsible for the design of company software and am one of the individuals responsible for the configuration and content on CashCall's website.  I have personal, first-hand knowledge of the matters stated herein, and, if called upon to do so, I could and would competently testify thereto.

2.     CashCall is a finance company licensed to offer unsecured personal loans to California consumers and has made loans in amounts between $2,575 and $20,000.  In total, through May 31, 2010, CashCall has entered into 388,828 loans nationwide and 233,471 loans in California.  181,751 of these nationwide loans have never been reported as being delinquent (more than 59 days past due).  Unless otherwise noted, all of the statistics below were calculated from June 30, 2004 (the beginning of the class period) through May 31, 2010.

3.     CashCall was in a period of growth from 2003 to approximately August 2007. Beginning in August 2007, CashCall significantly reduced its loan volume and number of employees due to problems associated with the credit crisis that impacted the entire economy. CashCall's loan volume has increased somewhat from its low point, but it still has not returned to the pre-August 2007 production levels.  CashCall also now offers mortgages at competitive rates. These are Fannie Mae-backed mortgages.

4.     CashCall has offered personal loans at 16 different interest rates since its inception.  The number of California loans at each interest rate and dollar amount are as follows:

- 852 loans for $2575 at 79% interest rate;
- 4 loans for $2600 at 24% interest rate;
- 3 loans for $2600 at 59% interest rate;
- 14,665 loans for $2600 at 79% interest rate;
- 20,730 loans for $2600 at 87% interest rate;
- 104, 407 loans for $2600 at 96% interest rate;
- 7,204 loans for $2600 at 135% interest rate;

DECLARATION OF ETHAN POST IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION

1          • 11 loans for $5075 at 24% interest rate;

2          • 4 loans for $5,075 at 39% interest rate;

3          • 1 loan for $5,075 at 44% interest rate;

4          • 1,967 loans for $5,075 at 47% interest rate;

5          • 56,761 loans for $5,075 at 59% interest rate;

6          • 3,318 loans for $5,075 at 69% interest rate;

7          • 194 loans for $5,075 at 79% interest rate;

8          • 263 loans for $10,000 at 18% interest rate;

9          • 364 loans for $10,000 at 21% interest rate;

10         • 1,474 loans for $10,000 at 24% interest rate;

11         • 661 loans for $10,000 at 29% interest rate;

12         • 2,879 loans for $10,000 at 34% interest rate;

13         • 16,638 loans for $10,000 at 44% interest rate;

14         • 775 loans for $10,000 at 44% interest rate;

15         • 108 loans for $10,000 at 59% interest rate;

16         • 80 loans for $20,000 at 18% interest rate;

17         • 108 loans for $20,000 at 24% interest rate.

18    5.    The maturity of these loans have varied, and CashCall has never included a pre-

19 payment penalty of any of its loans.

20    6.    As a condition of its licensing, the Department of Corporations ("DOC")

21 extensively regulates, investigates and audits CashCall.  As part of that regulation, CashCall is

22 required to file detailed annual reports with the DOC.  The DOC also conducts regular audits of

23 all aspects of CashCall's business.

24    7.    From the time I joined CashCall in October 2003 through May 31, 2010, the

25 interest rates on CashCall's loans has varied from 18% to 135% depending on the borrower's

26 credit qualifications.  The only loan product initially offered was $10,000 at a 24% interest rate.

27 CashCall began offering a $2600 personal loan with a 96% interest rate in August 2005.

28

8.    From June 30, 2004 through May 31, 2010 CashCall has loaned money to 382,144 borrowers nationwide (226,836 in California alone).  31,718 of these borrowers ( 24,522 in California) have taken out more than one loan from CashCall.

9.    From July 1, 2007 through June 30, 2008, CashCall funded 41,495 loans nationwide.  This number represents the number of loans funded for the one year period prior to the filing of this action.

10.    From February 17, 2007 through May 30, 2010, CashCall funded 134,847 loans nationwide.  This number represents the number of loans funded that included the Electronic Funds Authorization and Disclosure addressed in paragraph 21 below that states: "I also authorize you to withdraw funds from my account on additional days throughout the month in the event I am delinquent on my loan payments."

11.    CashCall has modified 51,488 loans from June 30, 2004 through May 31, 2010. There are various reasons for modifications, including, among other reasons, (1) to help a borrower defer payments if unable to pay for a certain finite period of time (which would extend the loan maturity), (2) to lower the interest rate, or (3) to lower the amount of the outstanding principal.  A modification often results in an extension of the maturity of the loan.  CashCall has lowered the interest rate of 12,104 loans that initially had an interest rate of 96 percent.

12.    From June 30, 2004 through May 31, 2010, 128,102 loans have been paid off in full, with only 10,577 of those loans going full term.  As such, this indicates that the majority of those who have paid off their loans in full did so before the maturity of the loan.

13.    As CashCall's Principal Architect, I am familiar with the changes CashCall has made to its web site.  One such change relates to CashCall's disclosure of the interest rates on available loan products.  Initially, CashCall did not show its rates on its website.  At that time, CashCall only offered one loan product.

14.    Beginning in approximately March 8, 2006, the home page of CashCall's website included a link to a designated rates page, which included all of the loan products CashCall offered (different loan amounts) and their corresponding interest rates.  Since March 2006 (with one exception), there has always been a link to the rates page prominently displayed on

3

1    CashCall's website, but its location has varied:  at times it was located in the middle of the home

2    page, at others it appeared at its current location at the top of every web page.  The one exception

3    is that the rates were not displayed anywhere on our website from September 1, 2006 through

4    November 29, 2006.

5         15.     Since November 29, 2006, the rates page link has appeared at the top of every

6    page of CashCall's website, including the secure pages that borrowers would have to access

7    during the loan signing process.

8         16.     Attached hereto as Exhibit A is a true and correct copy of all of the pages from

9    CashCall's website as it existed at the time Krista O'Donovan applied for her loan.

10        17.     Attached hereto as Exhibit B is a true and correct copy of all of the pages from

11   CashCall's website as it existed at the time Eduardo de la Torre applied for his loan.

12        18.     Attached hereto as Exhibit C is a true and correct copy of all of the pages from

13   CashCall's website as it existed at the time Lori Saysourivong applied for her loan.

14        19.     Attached hereto as Exhibit  D is a true and correct copy of an exemplar of

15   CashCall's website from 2005 (prior to the date any of these individuals applied for a loan.)

16        20.     Attached hereto as Exhibit E is a true and correct copy of an exemplar of

17   CashCall's website from 2007 (after each of these individuals applied for her loan).

18        21.     CashCall's loan agreements have changed over time as well.  Between June 2004

19   and July 2009, the loan agreement was altered more than 15 times.  These changes included the

20   following:

21   **July 22, 2004**

22      • The formatting on the Truth in Lending Disclosure on page one was modified.

23      • The second box of the TILA Disclosure previously stated the amount of the

24        origination fee, which was prefaced by the statement "Origination Fee: The Fee

25        charged to obtain your credit."  The second box was modified and now states:

26        "Finance Charge: The dollar amount the credit will cost you."

27      • Under the payment schedule, the new promissory note added statements about late

28        charges, prepayment, as well as additional information regarding nonpayment, default

and repayment in full.  This information did not appear on the previous versions of the promissory note.

- Certain other content was altered, including the text of the box that customers would "click to consent" for electronic funds transfer.

**August 18, 2005**

- An all caps, bolded, large font disclosure about the high interest rate of the loan was added to the middle of the third page of the loan agreement.  The text of this disclosure is as follows:  **"THIS LOAN CARRIES A VERY HIGH INTEREST RATE.  YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE.  EVEN THOUGH THE TERM OF THE LOAN IS 84 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE.  YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY.  YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE."** (emphasis in original).  This change in the promissory note coincided with Cashcall offering loans at 96% interest.  Every loan after this point, including every 96% loan, carried this disclosure.

**February 19, 2007**

- An explanation of the interest rate calculation was added to page 2 of the loan agreement.  Specifically, the following language was added:  "Interest is calculated on a 360/360 simple interest basis.  This means that interest is calculated by dividing up the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding."

- The Electronic Funds Authorization and Disclosure is amended to state that "Cancellation [of the electronic funds authorization] must be received at least three

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF ETHAN POST IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION

business days prior to the applicable due date." Previously, the time-frame for cancellation was seven days.

- The Electronic Funds Authorization and Disclosure is altered to state that "I also authorize you to withdraw funds from my account on *additional days throughout the month* in the event I am delinquent on my loan payments." (emphasis added). This change is reflected in the February 22, 2010 promissory note that is attached hereto as Exhibit F. As set forth above, a total of 132,950 notes include this language.

**July 20, 2007**

- Two paragraphs were added to page 3 of the loan agreement. The first paragraph was altered to read: "I understand that, from time to time, you may monitor telephone calls between you and me for quality assurance purposes."

- The second paragraph was altered to address CashCall's attempts at securing repayment of outstanding loan amounts: "I agree that in the event you need to contact me to discuss my account or the repayment of my loan, you may telephone me and that you may leave a recorded message or use other technology to make that contact or to communicate to me the status of my account."

**January 11, 2008**

- As of this date, the July 2007 change above regarding efforts to collect outstanding loan amounts is amended to expressly authorize CashCall to contact borrowers via cell phone and to expressly authorize an autodialed message : "I agree that in the event you need to contact me to discuss my account or the repayment of my loan, you may telephone me at any number, including any cell phone number provided, and that you may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to me the status of my account."

22.     The first page of the promissory note has always displayed and disclosed items such as the amount of the APR, the loan amount, and the term of the loan, each of which is required by the Truth in Lending Act ("TILA"). Since October 2003, the information disclosed in

1   the TILA Box – which includes the APR, total amount of payments and the amount financed –

2   has been printed in bold and in larger font.

3       23.     I have reviewed Plaintiffs' complaint and the allegation that CashCall's "internet

4   presentation" of promissory notes does not provide a consumer a fair opportunity to review the

5   forms before completing the application.  I also understand that Plaintiffs allege that the

6   promissory note appears "in small bits and pieces on a computer screen" in an effort to disguise

7   loan rates and terms.  Being responsible for development of CashCall's website, I can confirm

8   that these allegations are false for many reasons.  First, in constructing the web layout, CashCall

9   made sure that the promissory note cover the entire area of the web page.  That is why the

10  promissory note does not appear on a pop-up screen.  Of course, the size of the monitors will vary

11  amongst users so it is possible (and likely) that some borrower's view their notes on a larger

12  screen than others.  That said, even on a smaller monitor, the loan rate and term appears on the

13  very first page promissory note in larger (and bolder) font than the other terms on the promissory

14  note.  If a consumer could not read these terms on their computer screen, he or she would not

15  have been able to complete the loan application online or view most anything else on the

16  CashCall website.  Second, federal regulations (not CashCall) dictate the font size of loan terms

17  in the promissory note and CashCall is in compliance with those regulations.  Thus, there is no

18  effort to disguise any loan terms.  Third, a prospective borrower can view each page as long as he

19  or she would like, as well as going back and forth between pages to examine any page as many

20  times as the borrower would like.  Finally, nothing prohibits a prospective borrower from printing

21  his or her promissory note or saving it to their computer to review its terms in paper form prior to

22  signing.  In fact, CashCall advises in the notes themselves (right under the signature block) that

23  the promissory notes can be printed.  I am informed and believed that Ms. O'Donovan testified

24  that she availed herself of this option when she saved her promissory note on her computer and

25  subsequently printed it.

26      24.     In my capacity as Principal Architect, I have access to data to determine the

27  average time between when a borrower began the application process (the first time a prospective

28  borrower accesses the web site or contacts a loan representative to begin filling out the

1  application) until the time of funding.  The average time has changed significantly over time.  The
2  specific numbers are as follows: 2003: 7 days; 2004: 22 days; 2005: 47 days; 2006: 69 days;
3  2007: 99 days; 2008: 16 days; and 2009: 4 days.  As evidenced by this data, it is not uncommon
4  for a prospective borrower to begin the loan application process and continue that process days,
5  weeks or even months later.  CashCall is unable to determine the exact reasons that an individual
6  would start but not finish the application.

7      25.    After a borrower electronically signs a promissory note, CashCall funds the loan
8  by depositing the loan proceeds into the borrower's bank account.  After funding, CashCall sends
9  the borrower an email attaching a settlement statement, which includes the same information
10  about the loan – APR, total payments, amount financed and monthly payments – that is included
11  in the promissory note.

12      26.    As of May 31, 2010, 91,056 California loans have been charged off (meaning
13  payments were delinquent by more than four months).  The total amount of principal charged off
14  on California loans was $321,827,389.  No payment was ever made on 3,143 of the 91,056 loans
15  that have been charged off.

16      27.    As of May 31, 2010, CashCall has charged-off 175,961 loans nationwide.  The
17  total amount of principal charged off on nationwide loans was $566,322,141.  No payment was
18  ever made on 8,103 of these loans that have been charged off.

19      28.    92,052 loans nationwide had sufficient funds when an ACH was run for a second
20  time during a single month.

21      29.    The total number of ACH's run nationwide on the 22nd of the month from June
22  30, 2004 through May 31, 2010 was 23,040.

23      I declare under penalty of perjury under the laws of the United States that the foregoing is
24  true and correct and that this declaration was executed on June 24, 2010, at Anaheim, California.

25
26                                                    _____
27                                                    Ethan Post
28  300111627.4