BRAD W. SEILING (Bar No. CA 143515)
DONALD R. BROWN (Bar No. CA 156548)
NOEL S. COHEN (Bar No. CA 219645)
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
E-mail: bseiling@manatt.com; dbrown@manatt.com; ncohen@manatt.com

*Attorneys for Defendant*
CashCall, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA O'DONOVAN and EDUARDO DE LA TORRE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CASHCALL, INC., a California corporation, and DOES 1 through DOE 50, inclusive,<br><br>Defendants. | Case No. C 08-03174 MEJ<br><br>**DECLARATION OF JOHN FULLER IN SUPPORT OF CASHCALL, INC.'S MOTION FOR SUMMARY JUDGMENT ON THE UNCONSCIONABILITY CLAIM**<br><br>[Filed Concurrently with:<br>(1) Motion for Summary Judgment;<br>(2) Separate Statement of Facts;<br>(3) Declaration of Daniel H. Baren;<br>(4) Declaration of Hilary Holland;<br>(5) Declaration of Delbert O. Meeks;<br>(6) Declaration of Ethan Post;<br>(7) Declaration of Brad W. Seiling;<br>(8) Request for Judicial Notice;<br>(9) Notice of Lodging]<br><br>Date: November 21, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom B<br>Judge: Hon. Maria-Elena James |

# DECLARATION OF JOHN FULLER

I, John Fuller, declare and state as follows:

1. I founded the Kovel/Fuller advertising agency in 1999 and continue to work there today. I have personal, first-hand knowledge of the matters stated herein, and, if called upon to do so, I could and would competently testify thereto.

2. CashCall has been a client of Kovel/Fuller since CashCall's inception in 2003. I am the senior Account Executive on the CashCall account. As the senior Account Executive on the CashCall account, a part of my responsibility was to oversee CashCall's media buying.

3. There are two main types of clients in the advertising industry: branding clients and direct response clients. For branding clients, there typically is a detailed target audience with various characteristics identified and defined. An example of a branding client would be a high-end tire company. For that type of client, the media buy would target a designated segment of consumers who share defined characteristics such as age, income, type of car owned, miles driven per year, and so on. We would buy ad space in magazines and on networks, stations, and specific television programs that would appeal to that group. For direct response clients, there is usually a very simple "target" audience definition such as "adults 25-54 years of age." Direct response clients purchase advertising time broadly on various stations, networks and programs to generate awareness of, and purchase of, their product or service.

4. CashCall is a direct response client. During the entire time I have worked on the CashCall account, our "target" audience for television and radio was very simple and very broad: adults 25-54 that had a current need for money. Our goal has always been to generate as many calls as possible to CashCall's call center at the lowest possible cost. Our primary metric in measuring the success of our ad buys was the cost per call. We would work with CashCall to determine the number of calls generated from specific ad buys and modify subsequent media buys to generate the maximum number of calls.

5. CashCall's media buy, as with other direct response clients, was driven primarily by cost. The cost of an advertising media buy increases the more parameters you place on a buy

in an effort to reach a more narrowly, specifically defined target audience. As such, for CashCall and other direct response clients, the goal is to purchase as much ad time or space as possible on a daily basis with the funds available. TV networks, day-parts and shows were changed from week to week based on available inventory and pricing. For CashCall, we utilized two simple parameters in purchasing ad time: adults 25-54 and cost.

6. All television shows, radio stations and cable networks have the potential to attract customers for CashCall because all adults were potential customers at any given time if they needed cash. As such, CashCall generally did not concentrate spending on any particular show, particular time of day, or particular network.

7. I was also involved in the creation of many CashCall ads over the years. CashCall extensively and broadly advertised, and continues to advertise, on television and radio. None of its ads promised a low interest rate. To the contrary, when the ads did specifically refer to the cost of the loan, they specifically stated that "the money's expensive" and they either stated the highest interest rate available or noted generally that the loans carried a high interest rate. The general theme of the ads has been that CashCall's application process is easy, convenient and quick, and that CashCall will loan money to people who have had past credit problems.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 16, 2013, at Culver City, California.

_____
John Fuller

310766759.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF JOHN FULLER IN SUPPORT OF SUMMARY JUDGMENT