UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO DE LA TORRE, et al., <br><br>   Plaintiffs, <br><br> v. <br><br> CASHCALL, INC., <br><br>   Defendant. | Case No. 08-cv-03174-MEJ <br><br> **ORDER RE: CLARIFICATION OF THE RECORD** |

The Court recently held a bench trial to determine the relief available to "class members" for Defendant CashCall, Inc.'s ("CashCall") violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693k(1), when it conditioned its extension of credit on borrowers' repayment by means of preauthorized electronic funds transfers ("EFTs") (the "Conditioning Claim").[1]  Dkt. Nos. 295, 297 (trial minutes).  In considering the available relief, a number of significant issues have come to the Court's attention.

**A.   Issues to Be Addressed**

   1.   Evidence of Notice as Required Under Rule 23(c)(3)

Federal Rule of Civil Procedure 23(c)(3) requires that "[w]hether or not favorable to the class, the judgment in a class action must: . . . (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members."  The parties' March 3, 2013 Joint Status Report indicated that "by August 3, 2012, email notice was delivered to 120,870 class

---

[1] *See* Order re: Mots. for Summ. J. ("MSJ Order") at 16-17, Dkt. No. 220.  In violating the EFTA, CashCall also violated California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200, by engaging in an unlawful business practice.  *Id.* at 17.

members and by October 3, 2012 postcard notice was mailed to 49,481 class member [sic]. Of the 170,351 class members, 26 opted-out." Dkt. No. 136 at 1. To the Court's knowledge, the parties provided this information only in their Joint Status Report; they have not provided any declarations or other evidence attesting to whom they sent notice or who among those individuals did not request to be excluded from this action or a particular class. Additionally, on July 10, 2013, the Court ordered supplemental notice be sent to an additional 13,541 Conditioning Class members who were improperly excluded from the original class list. Dkt. No. 144. Again, to the Court's knowledge, neither Plaintiffs nor CashCall has provided evidence that those 13,541 Conditioning Class members received notice of this action.

### 2. Class Certification of the "Conditioning Class"

As noted above, Federal Rule of Civil Procedure 23(c)(3)(B) requires that "the judgment in a class action . . . include and specify . . . whom the court finds to be class members." In doing so, the Court discovered an error in the class definition related to the Conditioning Claim.

Initially, in ruling on Plaintiffs' Motion for Class Certification, the Court issued an Order certifying under Rule 23(a) and 23(b)(3) the following classes:

> National Class
> All individuals who borrowed money from CashCall, Inc., between June 30, 2004 and February 2007, who signed CashCall's promissory note containing an electronic funds authorization indicating that cancellations of such authorization must be received at least seven days prior to the applicable payment due date.
>
> California Class
> All individuals who, while residing in California, borrowed from $2,500 to $2,600 at an interest rate of 90% or higher from CashCall, Inc., for personal, family, or household use at any time from June 30, 2004, to the present.

Dkt. No. 100 at 37-38.

Subsequently, the parties met and conferred in an attempt to devise a proposed notice plan and to address CashCall's objections to the class definitions above. Dkt. No. 127 at 1 (describing post-class certification discussions and disputes); *see also* Dkt. No. 104 at 1-2 (case management statement explaining Plaintiffs' proposal of a conditioning class consisting of "[a]ll individuals who, while residing in California, borrowed money from CashCall, Inc. for personal, family, or

household use at any time from June 30, 2004 to the present" and disagreement over class definition); Dkt. No. 113 at 1 (CashCall's Motion for the Court to define two putative classes: (1) a Conditioning Claim class and (2) an Unconscionability Class). In the process, Plaintiffs proposed new class definitions to the Court, which in relevant part stated:

> The "Conditioning Class": "All individuals who, while residing in California, borrowed money from CashCall, Inc. for personal, family, or household use at any time from June 30, 2004 to the present."

Mot. for Approval of Class Notice Plan at 2, Dkt. No. 111 (also copied in the Court's Class Definition Order, Dkt. No. 127 at 1).

CashCall objected to the class period defined in Plaintiffs' proposed classes (Dkt. No. 113), and the Court, finding merit in those objections, found the definition for the Conditioning Class should be limited to those borrowers (1) who did not sign CashCall's post-July 11, 2011 promissory note and (2) "who obtained loans after March 13, 2006." Dkt. No. 127 at 2-4 (discussing effect of July 11, 2011 addition of arbitration clause to promissory note); *id.* at 6 (discussing EFTA's one year statute of limitations). The Court thus ordered the parties "to meet and confer and submit, by July 18, 2012, an updated version of Plaintiffs' motion for approval of class notice plan (Dkt. No. 110), including a proposed order, reflecting the Court's decisions in this opinion." Dkt. No. 127 at 7.

Plaintiffs submitted a brief entitled "Plaintiffs' Revised Memorandum in Support of Motion for Approval of Class Notice Plan in Compliance with the Court's Order of July 2, 2012[,]" in which Plaintiffs offered a revised proposed class notice plan, with the following class definition:

> The "Conditioning Class": "All individuals who, while residing in California, borrowed money from CashCall, Inc. for personal, family, or household use on or after March 13, 2006 through July 10, 2011 ***and were charged an NSF Fee***."

Dkt. No. 128 at 1 (emphasis added). This was the first time Plaintiffs included the NSF Fee[2]

---

[2] An NSF Fee stands for a "nonsufficient fund" fee, which a CashCall borrower can incur for payments returned for insufficient funds. Undisputed Fact No. 4, Dkt. No. 281.

3

limitation to their Conditioning Class definition. Plaintiffs did not call attention to this change in their memorandum or otherwise. CashCall did not object and even signed an "Approval as to Form" noting it "approves this Notice Plan as to form as being in compliance with this Court's Order of July 2, 2012." *Id*. at 4. The Court approved Plaintiffs' proposed notice plan on July 20, 2012. Dkt. No. 130.

The parties and the Court have conducted the rest of this case up through trial with the limitation that the Conditioning Class only included those borrowers who incurred NSF Fees. Neither Plaintiffs nor CashCall challenged this limitation. But there is a problem: the Court's Class Certification ruling did not certify the class as defined in Plaintiffs' proposed notice plan with the NSF Fee limitation. In other words, the Court has not conducted the required Rule 23(a) and 23(b)(3) analyses for the Conditioning Class with an NSF Fee limitation. Plaintiffs never raised this issue with the Court, and CashCall never objected to the class definition with the NSF Fee limitation—it even approved it as being in compliance with the Court's Order, as noted above. CashCall only identified this issue in its pretrial brief, noting that Plaintiffs' "counsel [] narrowed the class [] without Court approval, by excluding from the Class definition all borrowers who were not charged an NSF fee—a unilateral concession that eliminated almost 60,000 borrowers from the Class, even though they signed the same EFT authorization, which [the class representative] claims violated the EFTA." Dkt. No. 282 at 3. Plaintiffs never responded to this issue in any of their subsequent briefings or at trial.

**B.     Status and Required Response from Parties**

The abovementioned issues only truly manifested themselves after the Court conducted the bench trial on the issue of what relief "class members" were entitled to as a result of CashCall's EFTA and UCL violations and when the Court recognized the discrepancies between the certified class definitions, its related findings as to the class, and the later modified Conditioning Class definition. Additionally, the Court cannot issue a judgment without complying with Rule 23(c)(3), and the Court lacks sufficient information regarding the notice issued to class members to do so. Although it seems to the Court that both parties were likely aware of the issues addressed here, neither of them came forward with any objections or recommendations of how to

1  rectify these problems.  Without clarification of the record on foregoing issues, the Court cannot
2  enter a judgment.  *See Bd. of Sch. Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 130
3  (1975) ("Because the class action was never properly certified nor the class properly identified by
4  the District Court, . . . the case is remanded to that court with instructions to order the District
5  Court to vacate its judgment . . . .").

6  Given the foregoing, the Court **ORDERS** the parties to meet and confer in person about all
7  of the issues above and submit a joint statement addressing these issues and proposing potential
8  recommendations to the Court **by December 9, 2015**.  The joint statement should also include
9  attestations concerning what notice was already sent to which class members and whether any of
10 those class members sought to be excluded from this action.

11 **IT IS SO ORDERED.**

13 Dated: November 20, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

5