UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI KEMPLY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CASHCALL, INC.,<br><br>    Defendant. | Case No. 08-cv-03174-MEJ<br><br>**SECOND ORDER RE: CLARIFICATION OF THE RECORD**<br><br>Re: Dkt. Nos. 305, 308 |

    This Order follows up on the issues addressed in the Court's first Order regarding clarification of the record—in particular, issues related to the class definition and how the class was notified following class certification. First Clarification Order, Dkt. No. 305. As noted in the first Order, the Court's original Class Certification Order (Dkt. No. 100), as it relates to CashCall's violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693k(1) (the "Conditioning Claim"), defined the class differently than the class definition presently utilized by the parties. First Clarification Order at 2-4. And even though the Court modified the original class definition in an Order following the original Class Certification Order (*see* Dkt. No. 127), Plaintiffs further altered the class definition in the proposed class notice, adding that the class was limited to those CashCall borrowers who "were charged NSF fees." *Id.* at 3 (citing Revised Class Notice Plan at 1, Dkt. No. 128).[1] CashCall authorized this change as consistent with the Court's orders. *Id.* at 4. The Court, for its part, failed to recognize this change. Notice went out to this limited class, defined as "[a]ll individuals who, while residing in California, borrowed money

---

[1] An NSF Fee stands for a "nonsufficient fund" fee, which a CashCall borrower can incur for payments returned for insufficient funds. Undisputed Fact ("UF") No. 4, Dkt. No. 281.

1  from CashCall, Inc. for personal, family, or household use on or after March 13, 2006 through

2  July 10, 2011 and were charged an NSF Fee." Order Granting Class Notice Plan, Dkt. No. 130.

3       The Court recently held a bench trial to determine the available relief for the Conditioning

4  Claim. *See* Trial Minutes, Dkt. Nos. 295, 297. Following trial and in the process of complying

5  with its duties under Federal Rule of Civil Procedure 23(c)(3)(B)[2], the Court discovered the class

6  definition issue and gave the parties an opportunity to meet and confer and weigh in on this

7  situation. *See* First Clarification Order at 4-5. The Court expressed concerns that it had not

8  conducted the required Rule 23(a) and (b)(3) analyses for a Conditioning Class with an NSF fee

9  limitation. *Id.* at 4.

10       After requesting an extension, the parties' submitted their response. Joint Response ("Jt.

11  Resp."), Dkt. No. 308. Plaintiffs contend it is unnecessary for the Court to further consider the

12  class definition issue and explain their view that the earlier class certification rulings are consistent

13  with the current class definition. *Id.* at 5. CashCall, on the other hand, proposes the Court remove

14  the NSF fee limitation, expanding the class to every CashCall borrower in California as covered

15  by the Court's prior class certification findings. Jt. Resp. at 12-16. It proposes sending out new

16  notice to class members who originally did not receive notice for either the EFTA claim or the

17  unconscionability claim and that Plaintiff should pay for the new notice. *Id.* at 17, 20. Plaintiffs

18  do not want to abandon the NSF fee limitation, seemingly worried that if it is removed, they will

19  have a standing dispute on their hands. *Id.* at 10-11. They state they have strategic reasons for

20  limiting the class as they have, contending the NSF fee limitation ensures CashCall could not

21  argue that they do not have standing because they did not suffer any financial harm. *Id.* CashCall

22  did not respond to the standing argument but asserts the Court need not hold an additional trial,

23  indicating final judgment can be issued on the basis of the evidence already presented. *Id.* at 16-

24  17.

25       Having considered both parties' positions, reviewed the past briefing and orders related to

---

[2] "Whether or not favorable to the class, the judgment in a class action must: . . . (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3).

class certification and the class definition, and weighed the trial evidence, the Court will proceed with the present class definition as sent out in the notice to the class. Although it is tempting to engage in a post-hoc review of the class certification issues in this case based on the evidence presented at trial, it is inappropriate and unnecessary to do so under these circumstances. Indeed, courts generally apply a level of deference to class representatives and class counsel in litigating their case, particularly where neither the defendant nor class members have objected.

No class members challenged the class definition or the relief Plaintiffs sought, despite the fact that notice went out to 183,730 CashCall borrowers, including those who had their loans conditioned on CashCall's EFT payment requirement but who were not charged an NSF fee by CashCall,[3] and none of those borrowers objected. CashCall, for its part, raised the issue of Plaintiffs' alteration of the class definition on a few occasions, but it never formally objected to the NSF fee limitation in the class definition, whether on grounds of prejudice to CashCall or otherwise. *See* Jt. Resp. at 17-19 (describing occasions when CashCall "pointed out" the discrepancy in the class definitions). CashCall did not object at the time Plaintiffs first changed the class definition in the Revised Class Notice Plan and even signed an "Approval as to Form," noting it "approves this Notice Plan as to form as being in compliance with this Court's Order of July 2, 2012." Revised Class Notice Plan at 4. CashCall now states that "[i]n retrospect, perhaps [it] should have refused to agree to the form of the motion for approval of class notice" but notes it challenged the proposed NSF fee limitation during the briefing on class notice. Jt. Resp. at 19-20. It argues that, in any event, "the parties cannot stipulate to any class definition of their choosing without express court approval of that definition." *Id.* at 20.

The circumstances described above leave two potentially unresolved issues, which the Court now resolves. First, as to CashCall's argument that the class definition as presently defined is prejudicial to it on the basis of potential future litigation, the Court finds that CashCall has waived such arguments. Despite being aware of this issue long ago, CashCall did not raise this

---

[3] Those borrowers were part of the second "Unconscionability Class" defined as "all individuals who, while residing in California, borrowed from $2,500 to $2,600 at an interest rate of 90% or higher from CashCall, Inc. for personal, family or household use on or after June 30, 2004 through July 10, 2011." *See* Gyomber Decl. ¶ 4 (describing to whom notice was sent), Dkt. No. 308-1.

1  concern at any point prior to class certification, class notice, or trial.  As noted, its sole argument
2  concerning the class definition was on predominance grounds.  To allow CashCall to now assert
3  this concern—after trial—would be patently unfair to Plaintiffs and class members.  *See also* Fed.
4  R. Civ. P. 1 (the federal rules "should be constructed . . . and employed by the court and the
5  parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

6  Second, the Court has again reviewed the original Class Certification Order and
7  subsequent Orders relating to the class definition.  While those Orders did not explicitly endorse
8  the class definition with the NSF fee limitation, the Court is satisfied that those Orders adequately
9  support certification of the Conditioning Class as defined in the Class Notice.  With 93,183
10  borrowers, the class is still sufficiently numerous that joinder would be impracticable[4]; there are
11  still questions of law or fact common to the class; the claims of the representative party is typical
12  of the claims of the class; and despite this issue over the class definition, the representative party
13  fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Additionally, as the
14  Court found in it its Original Class Certification Order, "questions of law or fact common to class
15  members predominate over any questions affecting only individual members, and . . . a class
16  action is superior to other available methods for fairly and efficiently adjudicating the
17  controversy."  Fed. R. Civ. P. 23(b)(3); *see* Order re: Class Definitions at 4, Dkt. No. 127
18  (rejecting that any circumstances changed since the initial Class Certification Order that warrant
19  reconsideration of those findings).  Although for all intents and purposes the current class
20  definition has already been certified—and throughout this litigation, the parties have operated
21  under the class definition as currently defined—to the extent it is necessary to do so, the Court
22  now confirms that class definition in this Order.  *See* Rule 23(c)(1)(C) ("An order that grants or
23  denies class certification may be altered or amended before final judgment."); *see also Gen. Tel.*
24  *Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the

---

[4] The original Class Certification Order considered a class definition that included several thousand more people than the current class definition, which in some cases could impact the numerosity requirement under Rule 23(a)(1).  But this is not this case.  The class as currently defined consists of 91,183 borrowers who took out 96,588 loans during the Class Period.  UF Nos. 9-11.

judge remains free to modify it in the light of subsequent developments in the litigation.").

Accordingly, the Conditioning Class will remain defined as follows:

> All individuals who, while residing in California, borrowed money from CashCall, Inc. for personal, family, or household use on or after March 13, 2006 through July 10, 2011 and were charged an NSF Fee.

In light of the findings above, it is unnecessary to hold a new trial in this matter or send out new or different notice to the Conditioning Class.

Finally, the parties adequately addressed the Court's concerns about to whom notice was sent and when, as well as which potential class members opted out of this case.

**IT IS SO ORDERED.**

Dated: March 16, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge