UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO DE LA TORRE, ET AL., <br> Plaintiffs, <br> v. <br> CASHCALL, INC., <br> Defendant. | Case No. 08-cv-03174-MEJ <br><br> **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Re: Dkt. No. 361 |

**INTRODUCTION**

After nearly nine years of litigation, including a bench trial, the parties in this certified class action have reached a settlement as to one of their claims. *See* Settlement, Dkt. No. 362. Plaintiffs Eduardo De La Torre and Lori Kempley (together, "Plaintiffs") ask the Court to (1) preliminarily approve the Settlement, (2) approve the proposed notice and notice plan, (3) appoint a settlement administrator, and (4) schedule a final approval hearing. *See* Mot., Dkt. No. 361. The Court heard oral argument on this matter on June 1, 2017. Having considered the parties' positions, the record in this case, and the relevant legal authority, the Court **GRANTS** Plaintiffs' Motion for the reasons set forth below.

**BACKGROUND**

**A.    Factual Allegations[1]**

In February 2006, De La Torre borrowed $2,600 from Defendant CashCall, Inc. ("CashCall") based on an annual percentage rate of interest ("APR") of approximately 98%.

---

[1] Former Plaintiff Krista O'Donovan dismissed her individual claims against CashCall on August 20, 2012. Dkt. No. 132.

1 Fourth Am. Compl. ("FAC") ¶ 24, Dkt. No. 54. In May 2006, Kempley[2] borrowed $2,525 from CashCall based on an APR of 99.07%. *Id.* ¶ 28. Neither De La Torre nor Kempley could afford their monthly CashCall loan payments, and their monthly expenses exceeded their income. *Id.* ¶¶ 25-26, 29-30.

Plaintiffs allege CashCall made loans to De La Torre and Kempley that were beyond their financial abilities to repay in the time and manner set forth in the CashCall Promissory Note and Disclosure Statement. *Id.* ¶¶ 25, 29. They contend CashCall did not assess De La Torre's or Kempley's earning capacities, monthly expenses, or outstanding debts when it approved them for their loans. *Id.* ¶¶ 27, 31. Plaintiffs further allege CashCall conditioned the extension of credit on the consumer's repayment by means of preauthorized electronic fund transfers ("EFTs"). *Id.* ¶ 48.

**B.     Procedural Background**

On July 1, 2008, Plaintiffs initiated this action on behalf of themselves and similarly situated individuals. *See* Compl., Dkt. No. 1. On February 25, 2010, they filed the operative FAC. *See* FAC. The FAC asserts a total of six claims. It asserts three claims for violations of (1) the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693; (2) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; and (3) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788. *Id.* ¶¶ 41-72. In addition, the FAC asserts three claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, predicated on the aforementioned violations. *Id.* ¶¶ 73-106. As is relevant here, Plaintiffs' EFTA claim is based on CashCall's alleged practice of conditioning the extension of credit on the consumer's repayment by means of preauthorized electronic fund transfers ("EFTs") in violation of 15 U.S.C. § 1693k(1).[3] *Id.* ¶ 48. This violation is also the basis for one of Plaintiff's UCL claims. *Id.* ¶ 96.

    1.     <u>Class Certification, Summary Judgment, and Appeal</u>

On November 15, 2011, the Court certified two classes. Class Cert. Order, Dkt. No. 100.

---

[2] Formerly Lori Saysourivong.

[3] "No person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers[.]" 15 U.S.C. § 1693k(1).

It certified a Conditioning Class, which was later limited to "[a]ll individuals who, while residing in California, borrowed money from CashCall, Inc. for personal, family, or household use on or after March 13, 2006 through July 10, 2011 and were charged an [nonsufficient fund ('NSF')] fee." Order Approving Class Notice Plan, Dkt. No. 130.[4] The Court also certified a Loan Unconscionability Class of "[a]ll individuals who while residing in California borrowed from $2,500 to $2,600 at an interest rate of 90% or higher from CashCall for personal family or household use at any time from June 30, 2004 through July 10, 2011." Class Cert. Order at 38. The Court later appointed James Sturdevant, Arthur Levy, and Whitney Stark as class counsel. Dkt. No. 127 at 6-7; Dkt. No. 130.

Thereafter, the parties filed cross-motions for summary judgment. Dkt. Nos. 159, 166, 175. On July 30, 2014, the Court denied CashCall's Motion for Summary Judgment on Plaintiffs' conditioning and unconscionability claims and granted Plaintiffs' Motion Summary Judgment on the EFTA violation. Order re: Mots. for Summ. J. ("MSJ Order"), Dkt. No. 220. CashCall filed a Motion for Reconsideration as to the Court's denial of summary judgment on the unconscionability claim. Dkt. No. 234. The Court granted the Motion for Reconsideration and granted CashCall's Motion for Summary Judgment as to the unconscionability claim. Dkt. No. 239. The Court entered judgment on this claim pursuant to Federal Rule of Civil Procedure 54(b) (Dkt. No. 247), and Plaintiffs appealed (Dkt. No. 248).[5]

2. Bench Trial

The Court held a bench trial on September 8 and 9, 2015 on the issue of whether Plaintiffs are entitled to statutory and/or actual damages under the EFTA and/or restitution under the UCL. *See* Sept. 8, 2015 Trial Tr., Dkt. No. 296; Sept. 9, 2015 Trial Tr., Dkt. No. 298. On March 16, 2016, the Court issued its Findings of Fact and Conclusions of Law. Findings of Fact &

---

[4] The Court confirmed this definition on March 16, 2016. Dkt. No. 311.

[5] On April 24, 2017, the Ninth Circuit certified the following question to the California Supreme Court: "Can the interest rate on consumer loans of $2500 or more governed by California Finance Code § 22303, render the loans unconscionable under California Finance Code § 22302?" Dkt. No. 357.

Conclusions of Law ("FFCL"), Dkt. No. 312. The Court (1) ordered CashCall to pay a statutory penalty of $500,000 for its EFTA violation, but found Plaintiffs and the Class otherwise failed to show they were entitled to actual damages under the EFTA; and (2) found Plaintiffs had not established they were entitled to restitution, as they failed to prove Kempley had standing to pursue a representative action under the UCL's "lost money or property" requirement. *See id.* The Court further ordered the parties to submit proposed judgments and a notice plan to inform the Class about the trial's outcome and to distribute the statutory award to the Class no later than May 2, 2016. *Id.* The Court also ordered the parties to file a supplemental status report to address some of its concerns about the proposed notice plan. May 12, 2016 Order, Dkt. No. 314.

In the parties' Joint Response to the May 12, 2016 Order, among other things, CashCall stated it intended to file a motion under Rule 59 to amend the judgment or for a new trial. Jt. Resp. at 1, Dkt. No. 315. The basis for CashCall's anticipated motion was the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016) *as revised* (May 24, 2016), which CashCall asserted "compels the finding that . . . Kempl[e]y [also] lacks standing under the EFTA."[6] *Id.* The Court stayed any pending deadlines to allow the parties to file cross-Rule 59 motions. Dkt. Nos. 319, 325.

3. Post-Trial Motions

CashCall moved to amend the FFCL and enter judgment in its favor pursuant to Rule 59(a)(2), on the ground that *Spokeo* made it clear that Kempley lacked standing to pursue damages under the EFTA on both her own behalf and on behalf of the Class. CashCall Rule 59 Mot. at 1, Dkt. No. 326. Plaintiffs opposed CashCall's Rule 59 Motion and affirmatively moved under Rule 59, or alternatively Rule 52, to submit additional evidence, amend the class definition, and amend the FFCL. Pls.' Rule 59 Mot., Dkt. No. 334. The Court denied CashCall's Motion and granted in part Plaintiffs' Motion. *See* Relief Order. The Court found "Kempley's harm, albeit an intangible one, is sufficiently concrete to satisfy Article III's standing requirement. Through § 1693k(1) of

---

[6] As the Court has previously noted, the parties have interchangeably spelled the Class Representative's name as "Kemply" and "Kempley." Order re: Motions for Relief ("Relief Order") at 2 n.4, Dkt. No. 343.

4

the EFTA, Congress defined a specific right, which was based on the risk of real harm, and thereby elevated a violation of that right to legally cognizable, concrete injury." *Id.* at 13. Specifically,

> [t]he EFTA guaranteed Kempley the right to choose her method of repayment when she sought credit from CashCall. When CashCall would not allow her to obtain credit without first agreeing to use EFT payments, it violated that right and caused her to confront the very harms Congress sought to avoid: the lack of choice in using EFT payments and the risks associated with those methods of payments.

*Id.* at 14 (citing *Spokeo*, 136 S. Ct. at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.")).

The Court also noted that "[w]hile standing is an elemental aspect of a UCL claim, . . . this issue was never raised before the post-trial briefs, and the parties' Pretrial Statement limited the issues for trial in accordance with the Court's Pretrial Order." *Id.* (citing Case Management Order at 2, Dkt. No. 280); *see* Jt. Pretrial Conference Statement, Dkt. No. 281. The Court thus granted Plaintiffs a limited opportunity to put on evidence of such standing. Relief Order at 21-24.

The Court also concluded it had erred in applying EFTA's one-year statute of limitations instead of the UCL's four-year statute of limitations to Plaintiffs' conditioning claims. *Id.* at 25-26 (citing *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 113 (2016)); *see also* Order re Class Definitions, Dkt. No. 127. The Court allowed the parties to request an evidentiary hearing to determine whether De La Torre and Kempley had standing to represent a class of borrowers for the four-year UCL statute of limitations period. Relief Order at 27. The parties requested an evidentiary hearing, which the Court scheduled for April 5, 2017. Dkt. No. 345.

4. Settlement Negotiations

In the meantime, the parties returned to settlement negotiations. Dkt. Nos. 347, 350. On March 10, 2017, they reached a settlement as to the Conditioning Claim. Dkt. No. 350. The Court accordingly vacated the evidentiary hearing and set a briefing schedule for Plaintiffs to file

5

the instant motion. Dkt. No. 356.

## SETTLEMENT TERMS

The key provisions of the Settlement are as follows.

**A.     The Settlement Class**

The Settlement provides relief for the Conditioning Class, defined as "all individuals who, while residing in California, borrowed money from CashCall for personal, family, or household use from March 13, 2006 through July 10, 2011 and were charged an NSF fee." Settlement ¶ 1.5.

**B.     Remedies**

Under the terms of the Settlement, CashCall shall pay a maximum of $1.5 million (the "Settlement Fund"). The Settlement allocates $830,000 of the Settlement Fund to Class Members who paid NSF fees prior to the cancellation, if any, of their respective authorizations to collect loan payments via EFT. Settlement ¶ 3.1. Class Members will receive a pro rata share of the $830,000 fund equal to the ratio of the total NSF fees he or she actually paid prior to the EFT cancellation, if any, as compared to the total NSF fees collected from all Class Members prior to EFT cancellations. *Id.*

CashCall further agrees to release all Class Members from liability for all NSF fees CashCall charged prior to the cancellation, if any, of their respective authorizations to collect loan payments via EFT. *Id.* ¶ 3.3; *see id.* ¶ 6.1(b). The release shall apply to all Class Members, whether or not they paid NSF fees. *Id.* ¶ 3.3. If a Class Member has an open loan account that includes unpaid charges for NSF fees, CashCall shall recalculate the loan account to eliminate such charges. *Id.*

**C.     Distribution of Funds**

The Settlement Administrator shall mail Class Members payment in the form of a check. *Id.* ¶ 3.1. Class Members shall have sixty days from the date of mailing to cash their payments. *Id.* ¶ 4.13.

CashCall will provide the Settlement Administrator with, among other things, Class Members' contact information, including their last known mailing and email addresses. *Id.* ¶ 4.3. The Settlement Administrator shall update Class Members' addresses through the National

Change of Address Database. *Id.* ¶ 4.5. If a Class Member cannot be located—i.e., email and mail notices are returned undeliverable—the Settlement Administrator will not attempt to mail that Class Member a check, but shall retain any payment due to that Class Member. *Id.* ¶ 3.2.

Within ninety days of the initial distribution, the Settlement Administrator shall report to the parties the total amount of funds, if any, related to (1) Class Members who could not be located, and (2) checks that were mailed but had not been cashed. *Id.*; *id.* ¶ 4.13. The Settlement requires the parties to meet and confer to discuss whether a second distribution is appropriate or whether the residual funds should be paid to a Court-approved cy pres recipient. *Id.* (both). The Court shall have final approval over whether to make a second distribution or to pay the residual amount to a cy pres recipient. *Id.* ¶ 3.2.

### D. Opt-Outs and Objections

Class Members may opt out of the Settlement by mailing a written request to both CashCall's and Plaintiffs' counsel. *Id.* ¶ 4.7. The opt out request must include (1) the Class Member's name, signature, address, and telephone number; and (2) a statement that the Class Member requests to be excluded or to opt out of the Settlement. *Id.* If more than 100 Class Members—that is, approximately 0.1% of the Class—request exclusion, CashCall shall have the option to rescind and void the Settlement before the Court finally approves the Settlement. *Id.*

Class Members may also object to the Settlement and/or request to be heard at the final approval hearing. *Id.* ¶¶ 4.8-4.9. The Settlement requires Class Members to mail their objections to the Class Action Clerk for the Northern District of California or by filing them with the Court. The objection must (1) state the Class Member's name, address, and telephone number; (2) include all documents or testimony supporting such objection; and (3) provide a detailed statement of any objection asserted, including the grounds therefor and reasons, if any, for requesting the opportunity to appear and be heard at the final approval hearing. *Id.* ¶ 4.9.

### E. Attorneys' Fees and Costs and Service Awards

The Settlement Fund allocates a maximum of $650,000 in Plaintiffs' attorneys' fees and costs. *Id.* ¶ 3.5. If the Court awards less than $650,000 in attorneys' fees and costs, the amount by which $650,000 exceeds the amount awarded by the Court shall be included in the distribution to

Class Members. *Id.*

The Settlement further provides for $10,000 in service awards for each Kempley and De La Torre, subject to Court approval. *Id.* ¶ 3.4. Should the Court approve service awards totaling less than $20,000, the amount by which $20,000 exceeds the approved sum shall be distributed to Class Members. *Id.*

### F. Settlement Administrator and Administration Costs

Under the terms of the Settlement, CashCall shall pay all costs of notice and all other fees, costs, and expenses charged or incurred by the Settlement Administrator. *Id.* ¶ 3.6. CashCall shall pay these expenses in addition to the $1.5 million Settlement Fund. *Id.*

Plaintiffs propose Kurtzman Carson Consultants ("KCC") as the Settlement Administrator. Mot. at 18; Settlement ¶ 2.19. KCC administered the 2012 class notice after the Court granted class certification. *Id.*; Dkt. Nos. 128, 130.

### G. Release of Claims

In exchange for benefits under the Settlement, Class Members

> shall be deemed to release and forever discharge the Released Parties from and shall be forever barred from instituting, maintaining, prosecuting or asserting any and all claims, liens, debts, demands, rights, actions, suits, causes of action, controversies, costs, expenses, attorneys' fees, obligations, damages or liabilities of any nature whatsoever, whether individual, class or representative, whether legal, equitable, administrative, direct, indirect, or otherwise, whether known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that actually were asserted in the Litigation relating to the Conditioning Claim or that could have been asserted based in any manner on an allegation that CashCall conditioned the extension of credit on an agreement by borrowers to use EFTs as the method of repaying their loans.

Settlement ¶ 6.1(a). "Released Parties" include "CashCall and its present and former subsidiaries, parents, affiliates, divisions, officers, directors, members, managers, shareholders, insurers, employees, agents, attorneys, legal representatives, heirs, predecessors, successors, and assigns." *Id.* ¶ 2.18.

In addition, Plaintiffs and the Released Parties agree to

> mutually release and forever discharge each other from and shall be forever barred from instituting, maintaining, prosecuting or asserting any and all claims, liens, debts, demands, rights, actions, suits, causes of action, controversies, costs, expenses, attorneys' fees, obligations, damages or liabilities of any nature whatsoever, whether individual, class, or representative, whether legal, equitable, administrative, direct, indirect, or otherwise, and whether known or unknown, relating to the Conditioning Claim or in any manner relating to CashCall's conditioning the extension of credit on payments by EFTs, and in relation to every other claim that was asserted or could have been asserted in the Litigation other than the Unconscionability Claim.

*Id.* ¶ 6.2(a). Plaintiffs further waive their rights under California Civil Code section 1542. *Id.*

**H. Effect on Unconscionability Claim**

The Settlement does not affect or impair the Unconscionability Claim, including Plaintiff's rights to seek attorneys' fees and costs based on the Unconscionability Claim. *Id.* ¶ 7.1.

## LEGAL STANDARD

The Ninth Circuit maintains "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted). Federal Rule of Civil Procedure 23(e) nonetheless requires courts to approve any class action settlement. "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members."). If the court previously certified the class action "under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

Preliminary approval of a class action settlement requires a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). First, courts must determine if a class exists. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the

class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. Where the parties settle prior to class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.* At the preliminary approval stage, courts must "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

Finally, courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. [ ] The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

The Court previously certified the Class and the parties do not seek to alter the Class definition. As such, the Court need not revisit the Rule 23(b) analysis and instead considers whether the Settlement is fair, adequate, and reasonable.

### A. Preliminary Fairness Determination

The Ninth Circuit has identified eight factors courts should consider in evaluating whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). But where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). As noted, settlements negotiated prior to class certification "must withstand an even higher level of scrutiny

for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. This "more exacting review . . . ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

"Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Subtle signs of collusion include

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). A full analysis of the fairness factors is therefore unnecessary at this time; indeed, "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). At this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016)

(quoting *In re Tableware*, 484 F. Supp. 2d at 1079) (first brackets added). Ultimately, the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

1. Settlement Process

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). A settlement is entitled to "[a]n initial presumption of fairness . . . if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* (internal quotation marks omitted).

The parties engaged in three days of settlement negotiations with the Honorable Laurel Beeler, which culminated in an agreement on March 10, 2017. Sturdevant Decl. ¶ 9, Dkt. No. 361-1. "[T]he mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *In re Bluetooth*, 654 F.3d at 948. Judge Beeler's guidance, coupled with the fact that the parties had engaged in extensive discovery and motion practice prior to the settlement discussions, suggest the parties reached the Settlement after serious, informed, non-collusive negotiations. This factor therefore favors preliminary approval.

2. Presence of Obvious Deficiencies

The Court next considers whether the Settlement contains obvious deficiencies. It finds none at this point.

The first *Bluetooth* red flag is whether counsel receive a disproportionate distribution of the Settlement, or whether the Class receives no monetary distribution but class counsel are amply rewarded. 654 F.3d at 947. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As such, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. The Ninth Circuit has "established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery

12

approach." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

The Settlement provides that CashCall will pay a maximum of $650,000 in Plaintiffs' attorneys' fees and costs. Settlement ¶ 3.5. Counsel for Plaintiffs, James C. Sturdevant, estimates the current "combined costs and expenses of all [Plaintiffs'] firms" to be $45,000. Sturdevant Decl. ¶ 17. Sturdevant further declares the total lodestar on the Conditioning Claim will exceed $1 million. *Id.* "[C]ounsel will provide declarations identifying the number of hours and amount of lodestar incurred in litigating the Conditioning Claim." *Id.* While $650,000 is more than 40% of the Settlement Fund and thus much higher than the 25% benchmark, this sum represents approximately 60% of lodestar. *Id.* At this point, the Court finds the proposed attorneys' fees do not suggest the presence of collusion for purposes of preliminary approval.

The second *Bluetooth* factor asks whether the parties negotiated a "clear sailing" agreement for the payment of attorneys' fees separate and apart from class funds. 654 F.3d 947. A clear sailing agreement "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 232435, at *9 (N.D. Cal. Jan. 20, 2016) (internal quotation marks omitted).

The Settlement contains a clear sailing agreement: it requires CashCall to pay a maximum of $650,000 in attorneys' fees and costs. Settlement ¶ 3.5. The Settlement does not, however, contain a reversionary provision: un-approved attorneys' fees shall not revert to CashCall, but will instead be distributed to Class Members. *Id.* Concerns about collusion are reduced where the agreement lacks a reversionary or "kicker provision." *In re Bluetooth*, 654 F.3d at 947 ("indicia of possible implicit collusion" includes "a 'kicker': all [attorneys'] fees not awarded would revert to defendants rather than be added to the cy pres fund or otherwise benefit the class"). At this point, the Court is satisfied that there is no indication of collusion under the second *Bluetooth* factor.

The final *Bluetooth* factor considers whether the Settlement provides for un-awarded settlement funds to revert to CashCall instead of Class Members. 654 F.3d at 947. It does not. If there are funds remaining after the initial distribution of payment, there will either be a second distribution or those funds will be paid to a cy pres recipient. Settlement ¶ 3.2. The Settlement

13

provides that the Court shall have final approval over whether to make a second distribution or to pay the residual to a cy pres recipient. *Id.* Given the absence of a reversionary provision, the Court finds no indication of collusion under this factor.

In sum, the lack of *Bluetooth* factors and other obvious deficiencies favors preliminary approval.

### 3. Preferential Treatment

The third factor asks whether the Settlement affords preferential treatment to any class members. As noted, the Settlement provides two kinds of benefits. First, it provides monetary compensation for Class Members who paid NSF fees. Settlement ¶ 3.1. Class Members will receive a pro rata share of the Settlement Fund based on the amount of NSF fees each Class Member paid prior to canceling his or her EFT authorization. *Id.* This compensation is proportionate to the harm Class Members allegedly suffered and does not favor certain Class Members over others. *See Bower v. Cycle Gear, Inc.*, 2015 WL 13025767, at *6 (N.D. Cal. Dec. 8, 2015); *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) (noting "[e]very class member will be treated equally, and have an equal opportunity to claim a pro rata share of the settlement fund."). Second, the Settlement relieves Class Members from their obligations to pay any outstanding NSF fees. Settlement ¶ 3.3. This entitles Class Members who did not pay such fees to equitable relief, but does not twice compensate them, i.e., the Class Members do not both receive a monetary benefit for unpaid fees and have those fees waived.

The Settlement also entitles De La Torre and Kempley to a $10,000 service award each. Settlement ¶ 3.4. Service or incentive "awards are discretionary . . . , and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Stanton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958–69)). Nonetheless, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they

14

destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Plaintiffs argue these service awards recognize De La Torre and Kempley's "substantial services [that] each performed on behalf of the entire Class in litigating the Conditioning Claim for more than seven years from its inception through trial and subsequently through multiple, supervised settlement negotiation sessions." Mot. at 15. Sturdevant declares that "[e]ach plaintiff was deposed at length, participated with counsel in responding to written discovery propounded to them, consulted with counsel at critical junctures in the case including class certification, summary judgment, trial and the more than four settlement sessions which have occurred during the lengthy litigation to date." Sturdevant Decl. ¶ 11.

In the Ninth Circuit, a service award of $5,000 is presumed reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000); *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *8 (N.D. Cal. Feb. 24, 2017); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, at *8 (N.D. Cal. Sept. 27, 2016). The service awards are higher than the presumptively reasonable amount; however, for purposes of preliminary approval, the Court finds them to be reasonable. Class Counsel shall establish the reasonableness of the service awards prior to final approval.

Accordingly, the Court finds this factor favors preliminary approval.

4. <u>Range of Possible Approval</u>

Finally, the Court must consider whether the proposed Settlement falls within the range of possible approval. Courts assessing the fairness of a settlement consider eight factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD*, 799 F.3d at 944 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Deatrick v. Securitas Sec.*

15

*Servs. USA, Inc.*, 2016 WL 1394275, at *4 (N.D. Cal. Apr. 7, 2016) (citing *Hanlon*, 150 F.3d at 1027).

The Court finds the Settlement is within the range of possible approval. The last two factors do not apply: no governmental entity participated in this action, and Class Members have not yet received notice of the Settlement to provide a reaction to it.

There are, however, risks in continuing the litigation. The Court previously found CashCall is liable under 15 U.S.C. § 1693k(1) and found Plaintiffs are entitled to a statutory penalty pursuant to 15 U.S.C. § 1693m(a)(2)(B). *See* MSJ Order at 12-17; FFCL at 26-33. But CashCall has consistently contested both liability and damages. *See* CashCall Trial Br. at 14, Dkt. No. 282 ("[T]he violation in question was highly technical and likely would not result in harm to borrowers[.]"); CashCall Post-Trial Br. at 6-7 (arguing CashCall did not knowingly or intentionally violate the EFTA). Plaintiffs argue that if CashCall were to appeal the Court's rulings on the Conditioning Claim, this litigation would be "protracted, costly, and uncertain in result." Mot. at 16.

Plaintiffs also note they believe De La Torre and Kempley have standing under the UCL to represent the class. *Id.* However, if they were unable to so demonstrate, they would incur additional litigation expenses and delay to the Class' detriment. *Id.* Even if the Court found De La Torre and Kempley had UCL standing, Plaintiffs argue CashCall would likely appeal such finding in light of *Spokeo*. *Id.* Again, an appeal would delay proceedings and could jeopardize class certification and the Court's statutory award.

The Settlement eliminates these possibilities and ensures Class Members relief. The parties have litigated this case for nearly nine years through summary judgment, a bench trial, and post-trial motions. Class Counsel are therefore intimately familiar with the facts, strengths, and weaknesses of this case to make an informed decision about settlement.

Accordingly, the Court finds the Settlement falls within the range of possible approval.

5. <u>Summary</u>

In light of the foregoing analysis, the Court finds the Settlement is fair, reasonable, and adequate. Although this does not warrant denying preliminary approval (*see, e.g.*, *In re Biolase,*

16

*Inc. Sec. Litig.*, 2015 WL 12697736, at *8 (C.D. Cal. June 5, 2015)), the Court finds the Settlement is deficient in one aspect: it does not designate a specific cy pres recipient to which undistributed Settlement Funds will be sent. The parties shall meet and confer to identify an appropriate cy pres recipient or recipients. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("[W]e require that there be a driving nexus between the plaintiff class and the cy pres beneficiaries"; namely, "[a] cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members . . . , and must not benefit a group too remote from the plaintiff class[.]" (internal quotation marks omitted)). No later than July 12, 2017, the parties shall submit to the Court their proposed cy pres recipient(s) for approval.

**B.      Notice**

1. <u>Method of Providing Notice</u>

Rule 23 requires "the court [to] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). The "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal quotation marks and citation omitted).

The Settlement requires the Settlement Administrator to email the proposed Long Form

1 Notice (*see* Long Form Notice, Sturdevant Decl., Ex. 1B) to Class Members. Settlement ¶ 4.4. If the emailed Long Form Notice bounces back or is otherwise undeliverable, the Settlement Administrator shall mail the proposed Short Form Notice (*see* Short Form Notice, Sturdevant Decl., Ex. 1A) to the Class Member's address, as updated through the use of the National Change of Address Database. *Id.* In addition, the Settlement Administrator shall establish a Settlement Website that (1) contains the Settlement Agreement, the Motion for Preliminary Approval Application, the Preliminary Approval Order, and the Class Notice in both downloadable PDF format and HTML format; (2) provides answers to frequently asked questions; and (3) provides contact information, including the mailing and email addresses and a toll-free telephone number for the Settlement Administrator and contact information for CashCall's counsel and Plaintiffs' counsel.

The Short Form Notice provides a summary of the action; explains how Class Members may object, opt out, or address the Court; and provides contact information for further questions. *See* Short Form Notice. Moreover, the Long Form Notice explains in question-and-answer format the claim, who is a Class Member, the benefits to which Class Members are entitled, and Class Members' options. *See* Long Form Notice.

At the hearing, the Court expressed its concerns about the parties' ability to provide notice to Class Members, given that some borrowed money as long ago as 2006. The parties emphasized that email notice is appropriate, given that email is CashCall's primary means of contacting consumers. Moreover, the proposed method of notice is the same as that which they used to notify Class Members that the Court had certified the Class. Finally, the parties also indicated they would have Class Members send their objections to the Settlement Administrator, rather than the Court.

At this juncture, the Court finds the proposed Notice Plan satisfies the elements of Rule 23(c)(2)(B). In their motion for final approval, the parties shall provide details as to how many Class Members received notice, including but not limited to, the number of emails and short form notices that were returned undeliverable and whether the Settlement Administrator confirmed the email notice was in fact received.

18

**CONCLUSION**

Based on the foregoing analysis, the Court **GRANTS** the Motion for Preliminary Approval and **ORDERS** the following:

1. This Order incorporates by reference the definitions in the Settlement Agreement and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement.
2. The Settlement Agreement is preliminarily approved as fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e).
3. Lori Kempley and Eduardo De La Torre are approved as class representatives.
4. James Sturdevant, Arthur Levy, Whitney Stark, Steven M. Tindall, Jessica L. Riggin, and Damon M. Connolly are appointed as Class Counsel.
5. KCC is appointed as Settlement Administrator under the Settlement.
6. CashCall shall provide notice data to KCC no later than **July 6, 2017**.
7. By **July 12, 2017**, the parties shall submit to the Court its proposed cy pres recipient(s).
8. Plaintiffs shall file their motion for attorneys' fees and service awards no later than **August 3, 2017**.
9. KCC shall send the Settlement Notice no later than **August 7, 2017**. The Notice shall be amended to instruct Class Members to send their objections to KCC.
10. Class Members shall mail their objections and opt-out requests to KCC no later than **October 6, 2017**.
11. Plaintiffs shall file their motion for final approval no later than **October 26, 2017**.
12. The Court shall hold a final fairness hearing on **November 16, 2017** at 10:00 a.m. in Courtroom B, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

Dated: June 21, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge