STEVEN M. TINDALL (SBN 187862)
smt@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

ARTHUR D. LEVY (SBN 95659)
arthur@yesquire.com
**LAW OFFICE OF ARTHUR D. LEVY**
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Telephone: (415) 702-4551
Facsimile: (415) 814-4080

*Attorneys for Plaintiffs*
Additional Counsel listed on signature page

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA O'DONOVAN, EDUARDO DE LA TORRE, and LORI SAYSOURIVONG,<br><br>Plaintiffs,<br><br>v.<br><br>CASHCALL, INC.,<br><br>Defendant. | Case No. 3:08-cv-03174 MEJ (LB)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  November 16, 2017<br>Time: 10:00 a.m.<br>Judge:  Hon. Maria-Elena James<br>Courtroom: B, 15th Floor (San Francisco) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................2

II.  TERMS OF SETTLEMENT..............................................................................3

    A. The Conditioning Class....................................................................3

    B. Relief to the Settlement Class .........................................................3

    C. Release of Claims.............................................................................4

    D. Funding of the Settlement and Payments.........................................5

    E. Service Payments, Attorneys' Fees, and Claims Administration...................5

III. NOTICE PROCESS AND CLASS MEMBER RESPONSE .................................6

IV.  THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE....................................7

    A. The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.................7

    B. The Amount Offered in Settlement Supports Settlement Approval ..............8

    C. The Extent of Discovery Completed Weighs in Favor of Settlement Approval...................................................................................9

    D. The Settlement Reflects the Informed Views of Experienced Counsel..........9

    E. The Lack of Opposition by the Class supports Approval Settlement.............9

    F. Other Factors Support Approval of the Settlement........................................9

    G. The Notice Provided to Class Members was Reasonable............................11

V.   CONCLUSION ................................................................................................12

i

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Churchill Vill. LLC v. General Electric,*
4      361 F.3d 566 (9th Cir. 2004) ...........................................................................................7

5

*Class Plaintiffs v. Seattle,*
6      955 F.2d 1268 (9th Cir. 1991) ..........................................................................................7

7

*In re Bluetooth Headset Prod. Liab. Litig.,*
8      654 F.3d 935 (9th Cir. 2011) ...................................................................................2, 7, 10

9

*In re Mego Fin. Corp. Sec. Litig.,*
10     213 F.3d 454 (9th Cir. 2000) ............................................................................................8

11

*Nat'l Rural Telecomms. Coop.,*
12     221 F.R.D. 523(C.D. Cal. 2004) .......................................................................................9

13

*Officers for Justice v. Civil Serv. Comm'n,*
14     688 F.2d 615 (9th Cir. 1982) ............................................................................................7

15

*Villegas v. J.P. Morgan Chase & Co.,*
16     2012 WL 5878390, at *6 (N.D. Cal. 2012) ......................................................................8

17

**Federal Statutes**

18     Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................11

19

**California Statutes**

20     Cal Bus. & Prod. Code § 17200........................................................................................4
       Cal Civ. Code § 1670.5.....................................................................................................4
21     Cal Fin. Code § 22302 ......................................................................................................4

22

**Other Authorities**

23     5 Moore's Federal Practice, § 23.85(2)(d) (Matthew Bender 3d. ed.)................................9

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that on November 16, 2017, at 10:00 a.m. before the Honorable Maria-Elena James, United States Magistrate Judge, in Courtroom B, 15th Floor, of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Ave, San Francisco, CA 94102, Plaintiffs Lori Kempley and Eduardo De La Torre will move, and hereby do move, for an Order finally approving the proposed class action Settlement in this case as fair, adequate, and reasonable, granting Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, and entering Judgment in this case as Plaintiffs propose in the accompanying [Proposed] Judgment.

Plaintiffs' motion is based on this Notice of Motion and Motion and the supporting declaration of Andrew Perry; Plaintiffs' prior Motion for Preliminary Approval of Class Action Settlement and supporting evidence [Dkt. 361]; the Court's Order Re: Motion for Preliminary Approval of Settlement [Dkt. 364]; Plaintiffs' pending Motion for Attorneys' Fees, Costs, and Service Awards and supporting evidence [Dkt. 367]; the accompanying [Proposed] Judgment; and all other papers filed and proceedings had in this action.

DATED: October 25, 2017                    Respectfully submitted,

By:      */s/ Arthur D. Levy*

**LAW OFFICE OF ARTHUR D. LEVY**
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Telephone: (415) 702-4551
Facsimile: (415) 814-4080

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      On June 21, 2017, the Court granted Plaintiffs' Motion for Preliminary Approval of the

4 proposed class action Settlement in this case.  (Dkt. 364.)  Applying the Ninth Circuit standard in *In re*

5 *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), the Court found that the Settlement

6 is "fair, adequate and reasonable pursuant to Federal Rule of Civil Procedure 23(e)" for preliminary

7 approval purposes.  (Dkt. 364 at p. 19.)  The Court approved and authorized the notice plan provided in

8 the Settlement Agreement, except that class members should be directed to send objections to KCC

9 instead of the Court.  (*Id*.)

10     The only respect in which the Court found the Settlement deficient is that "it did not designate a

11 specific cy pres recipient to which undistributed settlement funds will be sent." (Dkt. 364 at 17:2-3.)

12 The Court ordered the parties to submit their proposed cy pres recipients to the Court by July 12, 2017.

13 (*Id*. at p. 19.)  The parties did so on July 12.  (Dkt. 366.)

14     After entry of the Preliminary Approval Order, the Settlement Administrator (KCC) performed

15 the notice plan by timely emailing and mailing settlement notices to the class members and posting and

16 maintaining the Settlement website, http://cashcallconditioningclasssettlement.com/, and establishing

17 and maintaining a toll-free interactive voice recognition (IVR) telephone line in compliance with the

18 Article IV of the Settlement Agreement and the Preliminary Approval Order.   (Perry Decl., ¶¶ 3-8.)

19     In response to the class settlement notice, there was not a single objection to the Settlement.

20 (Perry Decl., ¶ 11.)  In addition, out of over 95,000 class settlement notices sent, there are only three

21 secondary opt outs, representing the miniscule settlement opt-out rate of 0.003% (3 out of

22 approximately 100,000).  (*Id*., ¶ 10.)    There are an additional 29 opt-outs from the prior class

23 certification notice process, which occurred in 2012, bringing the total number on the opt-out list to 32.

24 (*Id*., Exh. E.)

25     The sole intervening events since the Court granted preliminary approval—the overwhelming

26 agreement of the Class with the Settlement and the cy pres designations–only serve to lend further

27 support to the Court's *Bluetooth* analysis.

28

2

**PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL**
**CASE NO. 08-CV-03174 MEJ (LB)**

For the reasons detailed by the Court in its Preliminary Approval Order, because the notice plan has been performed in accordance with the Court's Preliminary Approval Order, in light of the overwhelming support of the 95,000-member class, and for the reasons set forth in Plaintiffs' Fee Motion[1], Plaintiffs respectfully request that the Court enter the accompanying [Proposed] Judgment, granting final approval of the Settlement.

## II.   TERMS OF SETTLEMENT

The detailed terms of the Settlement are set forth in Plaintiff's Motion for Preliminary Approval (Dkt. 361) and the Settlement Agreement (Dkt. 361-1, Exh. 1) ("SA").  The key terms of the Agreement are as follows:

### A.   The Conditioning Class

The Settlement Class is the same as the Conditioning Class certified by the Court: all individuals who, while residing in California, borrowed money from CashCall for personal, family, or household use from March 13, 2006 through July 10, 2011 and were charged an NSF fee and who did not previously opt out of the Conditioning Class ("Class Members"). SA, at ¶ 2.5.

### B.   Relief to the Settlement Class

The Settlement provides that Class Members who paid NSF fees will be paid a total of $830,000.  SA, at ¶ 3.1. Each of these Class Members will be mailed a check for a pro rata percentage of the $830,000 fund without any requirement of a claim form.  *Id.*, ¶¶ 3.1, 4.12.  The pro rata share of each Class Member will be determined by comparing the total NSF fees actually paid by the individual Class Member prior to any cancellation to the total NSF fees collected from all Class Members prior to EFT cancellations.  *Id.*, ¶ 3.1.

---

[1] As directed by the Court, on August 4, Plaintiffs' Counsel filed their Motion for Attorneys' Fees, Costs, and Service Awards ("Fee Motion").  (Dkt. No. 367.)  Links to view and download the Motion and all supporting declarations were posted on the Settlement website by the beginning of the notice period, August 7, 2017.  (Perry Decl., ¶ 3.)  In addition to substantiating the fairness of the proposed $650,000 award for fees and costs (which translates to about half of Plaintiffs' Counsel's lodestar on the Conditioning Claims [Dkt. 367 at 2:22-3:6]), the motion also addressed the Court's comments in the Preliminary Approval Order on the service awards requested for the two plaintiffs [Dkt. 364 at pp. 14-15].  (Dkt. 367 at p. 15; Dkt. 367-4 (¶¶ 42, 43; Dkt. 367-9; Dkt. 367-10).)  No class member has filed an objection to Plaintiffs' requests for fees, costs, or service awards.

1    Under the Settlement, CashCall also releases all Class Members from liability for any NSF fee

2    CashCall charged them prior to Class Members' cancellation of their authorization to collect loan

3    payments via EFT.  SA, ¶¶ 3.3, 6.1(b).  This release of liability applies to all Conditioning Class

4    Members, regardless of whether a Class Member has actually paid such fees:  as such, if a Class

5    Member has outstanding NSF fees, CashCall will not engage in any further action to collect them.  *Id.*,

6    ¶ 3.3.  If any Class Member has an open loan account that includes unpaid charges for NSF fees,

7    CashCall will recalculate the loan account to eliminate unpaid NSF fee charges.   *Id.*

8    **C.     Release of Claims**

9    If the Court grants final approval of the Settlement, all Class Members who are not excluded

10   from the Settlement will be deemed to release and forever discharge CashCall and its related entities

11   from all damages and liabilities of any nature that were asserted in this action relating to the

12   Conditioning Claim or that could have been asserted based in any manner on an allegation that

13   CashCall conditioned the extension of credit on an agreement by borrowers to use EFTs as the method

14   of repaying their loans. SA, ¶ 6.1(a).

15   CashCall will release all Class Members who are not excluded from the Class from all liability

16   for NSF fees CashCall charged prior to any cancellation of EFT authorizations, regardless of whether

17   the fee was paid or not.  SA, ¶ 6.1(b), ¶ 3.3.

18   Plaintiffs and CashCall will mutually release and discharge each other, and will be barred from

19   pursuing, damages or liabilities of any nature relating to the Conditioning Claim or in any manner

20   relating to CashCall's conditioning the extension of credit on payments by EFTs.  SA, ¶ 6.2(a).

21   Plaintiffs and CashCall will also mutually release and discharge each other, and will be barred from

22   pursuing, every other claim that was asserted or could have been asserted in this action other than

23   Plaintiffs' Unconscionability Claim under California Business & Professions Code section 17200 et

24   seq. based on California Financial Code § 22302 and California Civil Code § 1670.5, as stated in

25   Plaintiffs' Fourth Amended Complaint (Dkt. 54).  *Id.*, ¶ 6.2(b).  This release is also binding on

26   Plaintiffs' respective predecessors, successors, assigns, personal representatives, attorneys, and family

27   members.

28   The release does not in any way affect the pending Class Unconscionability Claim. SA, ¶ 7.1.

4

### D.     Funding of the Settlement and Payments

The Settlement provides that CashCall will establish a $1.5 million Settlement fund within 10 days after the "Effective Date" (as defined in ¶ 2.7) of the Settlement or by January 20, 2018 (whichever is later).    SA, ¶ 4.12, ¶ 2.7.  This fund will be used to make the payments to Class Members, to pay the service awards to Plaintiffs as approved by the Court, and to pay Plaintiffs' Counsel's fees, expenses, and costs, as approved by the Court.  *Id*.  The Settlement Administrator will distribute payments to Class Members, service awards to Plaintiffs, and fee, expense, and cost awards to Plaintiffs' Counsel within 20 days of the establishment of the Settlement fund.  *Id*.

Class Members will be paid in the form of checks and will have 60 days from the date of their Settlement check's mailing to cash or otherwise redeem their payments. SA, ¶ 4.13.  All checks issued to Class Members will have a void date of 60 days from the date of mailing. The Settlement Administrator will ascertain the total amount of funds relating to Class Members who could not be located or did not redeem their checks after the void date. The parties will meet and confer regarding whether a second distribution to Class Members or payment of such residual funds to a Court-approved cy pres recipient is appropriate.

In addition to funding the $1.5 million Settlement fund, CashCall will separately pay all costs of notice and all other fees, costs, and expenses charged or incurred by the Settlement Administrator.  SA, ¶ 3.6.  These expenses shall not be deducted from the Settlement fund.

### E.     Service Payments, Attorneys' Fees, and Claims Administration

Plaintiffs Lori Kempley and Eduardo De La Torre have applied to the Court for a service award in an amount to be approved by the Court and not to exceed $10,000, to be paid from the Settlement fund.  SA, ¶ 3.4.  Plaintiffs' Counsel have also applied to the Court for an award of attorneys' fees, litigation expenses, and court costs incurred on account of the Conditioning Claim in amounts to be approved by the Court and not to exceed $650,000.  *Id*., ¶ 3.5.  If the Court awards Plaintiffs service awards of less than $20,000 total or Plaintiffs' Counsel fees and costs of less than $650,000, the additional funds will be available for distribution to Class Members under section 3.1 of the Settlement Agreement.  *Id*., ¶¶ 3.4, 3.5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    NOTICE PROCESS AND CLASS MEMBER RESPONSE

Pursuant to the Court's preliminary approval order, Kurtzman Carson Consultants ("KCC") is the Settlement Administrator for this case. In accordance with the terms of the settlement, CashCall provided KCC with an Excel spreadsheet containing the names of 95,688 individuals identified as Class Members on July 6, 2017.  (Perry Decl., ¶ 2.) This list included each Class Member's name, last known address, and email address. (*Id.*) KCC reviewed and scrubbed the data and processed the names and addresses through the United States Postal Service ("USPS") National Change of Address database, through which it identified and removed 1,852 duplicate records and 2 incomplete records. (*Id.*)

On August 7, 2017, after eliminating duplicates in the data, KCC emailed the long-form Notice (attached as Exhibit B to the Perry Declaration) to each Class Member's email address it confirmed was a valid email address—a total of 85,027 emails.  (Perry Decl., ¶¶ 2, 5 & Exh. B.)  The same day, KCC also mailed via first-class mail the Short Form Notice (postcard) to 9,707 Settlement Class Members for whom the Excel file did not provide a valid email address. (Perry Decl., ¶ 6. & Exh. C.) These postcards were mailed to the mailing address provided in the Excel file, as updated by the National Change of Address Database. A true and correct copy of the Short Form Notice is attached as Exhibit C to the Perry Declaration.

On August 7, 2017 KCC also established a settlement website (www.cashcallconditioningclasssettlement.com), on which all of the information and documents required by the Settlement Agreement are available, including the long-form Notice, and it established a toll free interactive voice recognition (IVR) telephone line that provided answers to Frequently Asked Questions. (Perry Decl., ¶¶ 3-4 & Exh. A.)

On August 17, 2017, KCC mailed the Short Form Notice to 10,974 Settlement Class Members whose Email Notice was returned as undeliverable. (Perry Decl., ¶ 7.) These postcards were mailed to the mailing address provided in the Excel file, as updated by the National Change of Address Database. After KCC's re-mailing and updated search address process, a total of 463 mailed Short Form Notices have been returned undeliverable. (Perry Decl., ¶ 9.)

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)

To date, KCC has received three (3) requests for exclusion from the settlement from Class Members (in addition to the 29 received in 2012 during class certification). (Perry Decl., ¶ 10 & Exh. E.) KCC has not received any objections to the settlement from Class Members.  (*Id.* at ¶ 11.)

## IV.   **THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.**

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1991).  To assess whether a proposed settlement should be approved, courts typically assess the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)).  These factors indicate whether a settlement is "fair, adequate, and reasonable."  *Id.; see Churchill Vill.,* 361 F.3d at 576.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  As described below and in Plaintiffs' motion for preliminary approval, these factors confirm that this Settlement fully merits final approval.[2]  Indeed, the Court has already analyzed *Bluetooth* factors (1) though (7) and concluded that "the Settlement falls within the range of possible approval."  (Dkt. 364 at 16:25.)

//

//

---

[2] In this case, there is no governmental participant.

**A.  The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

The interrelated factors of (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; and (3) the risk of maintaining class action status throughout the trial support final approval here.  Further litigation of the Conditioning Claim would be protracted, costly, and uncertain in result.  CashCall has vigorously contested liability for its use of electronic fund transfers (or EFTs), arguing that 15 U.S.C. § 1693k does not apply where the creditor allows the borrower to cancel EFTs after loan inception.  *See, e.g.*, Dkt. No. 159.  While Plaintiffs have confidence in this Court's ruling on the issue, they cannot say that the issue is without appellate litigation risk because there is no appellate decision on this issue.

Further, the Settlement provides $830,000 to allocate to Class Members—that is, $330,000 *more* than the $500,000 the Court awarded in statutory damages for CashCall's EFTA violation.  In achieving this result through the Settlement, Plaintiffs are able to avoid the further significant delay and risk of continued litigation.  The risks inherent in future litigation therefore support final approval of the Settlement.

**B.  The Amount Offered in Settlement Supports Settlement Approval.**

Similarly, the amount offered by CashCall in settlement supports final approval.  The Settlement involves the payment of a fair and reasonable sum—particularly in light of the limits on statutory damages under the EFTA and the risks of further litigation as to liability, damages, and restitution.  Under the Settlement, Class Members who paid NSF fees will share in a total recovery for CashCall's EFTA violation that is over 65 percent *greater* than the amount awarded by the Court after trial.  Under the circumstances of the case, the amount of the Settlement is fair, adequate, and reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. 2012) (preliminarily approving a settlement representing 15% of the potential recovery).

//

//

**C.  The Extent of Discovery Completed Weighs in Favor of Settlement Approval.**

The extent of discovery completed and the stage of the proceedings also support final approval here.  Plaintiffs' Counsel shepherded this case through extensive written discovery and depositions, expert discovery, class certification, a bench trial, and post-trial motions.  As such, Plaintiffs' Counsel have a well-developed sense of the strengths and weaknesses of the Conditioning Claim and are well situated to make an informed decision regarding settlement.

**D.  The Settlement Reflects the Informed Views of Experienced Counsel.**

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation omitted). As noted in the declarations submitted in support of preliminary approval and the request for attorneys' fees, Plaintiff's Counsel are experienced class action attorneys who have spent decades successfully trying and settling consumer class actions.  This Court appointed them in 2012 to represent the interests of both classes.  Dkt. No.130.  Based on their experience in similar cases, and their familiarity with the strengths and weaknesses of this case, Plaintiffs' Counsel fully support the proposed Settlement as being in the best interests of the Conditioning Class.

**E.  The Lack of Opposition by the Class Supports Approval of the Settlement.**

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528, citing 5 Moore's Federal Practice, § 23.85(2)(d) (Matthew Bender 3d. ed.).  As described above, the Claims Administrator mailed and emailed the Settlement Notice on August 7, 2017 to all class members included on the class list provided by CashCall, after eliminating duplicates. (Perry Decl., ¶¶ 2, 5-6.) As the Notice states, the deadline to object to the Settlement was October 6, 2017 (or 60 days after the mailing of the Notice). (Perry Decl., Exhs. B, C.) Out of almost 100,000 Class Members, there is not a single objection and only three settlement opt-outs (representing 0.003% of the Class), indicating a highly positive reaction from the Settlement Class to the Settlement.  This overwhelming Class Member support demonstrates the fairness, reasonableness, and adequacy of the settlement.

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)

**F.  Other Factors Support Approval of the Settlement.**

Moreover, in the context of the preliminary approval motion, the Court closely scrutinized the Settlement for indicators of collusion and conflicts of interest.  (Dkt. 364, at 10-15.)  The Court found none.  Specifically, regarding the fairness of the Settlement negotiation process, the Court observed as follows:  "Judge Beeler's guidance, coupled with the fact that the parties had engaged in extensive discovery and motion practice prior to the settlement discussions, suggest the parties reached the Settlement after serious, informed, non-collusive negotiations."  (Dkt. 364, at 12.)

Regarding the "presence of obvious deficiencies," the Court concluded that "At this point, the Court finds the proposed attorneys' fees do not suggest the presence of collusion for purposes of preliminary approval."  (Dkt. 364, at 13.)  Plaintiffs' Counsel has now provided the Court and the Class with a more complete record of their services, hours, and expenses.  (Dkt. 367.)  Plaintiffs' submission demonstrates that the proposed $650,000 fee and cost award will result in Plaintiffs' Counsel recovering $48,663.26 in expenses invested in the Conditioning Claims, and about half of their collective lodestar fee. *See* Dkt. 367.

In its "obvious deficiencies" analysis, the Court also concluded that the absence of any reversion of unapproved attorneys' fees to CashCall (or to Plaintiffs' Counsel) resulted in "there [being] no indication of collusion under the second *Bluetooth* factor" at the preliminary approval stage. (Dkt. 364, at 13.)  The Settlement Agreement specifically bars any reversion of funds to CashCall or Plaintiffs' Counsel.  (Settlement Agreement § 3.5; Dkt. 361-1, at 17.)  Any unapproved fees and service awards revert to the Class; any unclaimed settlement checks are paid cy pres.  (*Id*.)  Analyzing the final *Bluetooth* "obvious deficiencies" factor, the Court found that the absence of any reversion to CashCall negated any indication of collusion under this factor.  (Dkt. 364, at 14.)

Finally, the Court analyzed the Settlement for indicators of "preferential treatment."  (Dkt. 364, at 14-15.)  The Court found none.  (*Id*.)  The Court found the proposed service awards to be reasonable for purposes of preliminary approval.  (*Id.* at 15.).  The Court asked Class Counsel to establish the reasonableness of the service awards prior to final approval.  *Id.*

Plaintiffs' Counsel has addressed this issue in the fee motion, with supporting declarations from counsel and two Plaintiffs demonstrating the services and degree of participation of the two Class

1   representatives during pivotal phases of the litigation.   (Dkt. 367, at 15; Dkt. 367-4; Dkt. 367-9; Dkt.

2   367-10.)  These declarations show that Plaintiffs have rendered sustained and diligent service to the

3   Class for over nine years of this class litigation. Their service and participation in pivotal stages of this

4   litigation is substantial.  Any unapproved service award reverts to the Class. (Settlement Agreement §

5   3.4; Dkt. 361-1, at 17.)

6          The absence of any objection to the proposed Settlement confirms the soundness of the Court's

7   Preliminary Approval Order.  The Court's prior analysis and findings amply support final approval of

8   the service awards and awards of attorneys' fees and expenses to Class Counsel.

9          **G. The Notice Provided to Class Members was Reasonable.**

10         Before a proposed settlement is approved, Rule 23 requires the Court to ensure that notice is

11  directed "in a reasonable manner to all class members who would be bound" by the proposed

12  settlement. Fed. R. Civ. P. 23(c)(2)(B) and (e)(1). Plaintiffs submitted the Parties' agreed-upon Notice

13  with their Motion for Preliminary Approval (Dkt. 361), which the Court approved. (Dkt. 364.) As

14  detailed in the Perry Declaration and described above, Class Notice was distributed to Class Members

15  in accordance with the Court's Preliminary Approval Order. (*See* Perry Decl., ¶¶ 5, 6; Exh. B & C;

16  Section III, *supra*.) The Notice provided a detailed explanation of the claims being released, how the

17  compensation to each Class Member was calculated, how Class Members could receive payment, Class

18  Members' rights and options, the identities of the Class Representatives and Class Counsel, the date

19  and location of the final fairness hearing, and where Class Members could locate additional information

20  about the settlement. In sum, the content and method of distribution of the Notice provided Class

21  Members with sufficient information and opportunity to decide whether or not to participate in the

22  settlement, and was therefore reasonable.

23  //

24  //

25

26

27

28

**PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)**

1    V.    **CONCLUSION**

2       For the reasons stated in Plaintiffs' Motion for Preliminary Approval, the Court's Preliminary

3 Approval Order, Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, and this motion,

4 Plaintiffs respectfully request that the Court enter the accompanying [Proposed] Judgment, finally

5 approving the Settlement and granting Plaintiffs' Motion for Attorneys' Fees, Costs, and Service

6 Awards.

7                   Respectfully submitted,

8 DATED: October 25, 2017        **LAW OFFICE OF ARTHUR D. LEVY**

9                      By:     */s/ Arthur D. Levy*

10                      ARTHUR D. LEVY (SBN 95659)

11                      arthur@yesquire.com
**LAW OFFICE OF ARTHUR D. LEVY**

12                      1814 Franklin Street, Suite 1040
Oakland, CA 94612

13                      Telephone: (415) 702-4551
Facsimile: (415) 814-4080

14

15 DATED: October 25, 2017        **THE STURDEVANT LAW FIRM**

16                      JAMES C. STURDEVANT (SBN 94551)
jsturdevant@sturdevantlaw.com

17                      **THE STURDEVANT LAW FIRM**
4040 Civic Center Drive, Suite 200

18                      San Rafael, CA  94903
Telephone: (415) 477-2410

19                      Facsimile: (415) 492-2810

20

21 Dated: October 25, 2017         **GIBBS LAW GROUP LLP**
STEVEN M. TINDALL (SBN 187862)

22                      smt@classlawgroup.com
**GIBBS LAW GROUP LLP**

23                      505 14th Street, Suite 1110
Oakland, CA 94612

24                      Telephone: (510) 350-9700
Facsimile: (510) 350-9701

25

26 DATED: October 25, 2017        **RUKIN HYLAND LLP**

27                      JESSICA RIGGIN (SBN 281712)
jriggin@rukinhyland.com

28                      **RUKIN HYLAND LLP**
100 Pine Street, Suite 2150

1    San Francisco, CA  94111
     Telephone: (415) 421-1800
2    Facsimile: (415) 421-1700

3    DATED:  October 25, 2017          **LAW OFFICES OF DAMON M. CONNOLLY**
                                       Damon M. Connolly
4                                      LAW OFFICES OF DAMON M. CONNOLLY
                                       1000 4th St #600,
5                                      San Rafael, CA 94901
                                       Telephone: (415) 256-1200
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 08-CV-03174 MEJ (LB)