James C. Sturdevant, SBN #94551
THE STURDEVANT LAW FIRM
A Professional Corporation
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
Telephone: (415) 477-2410
Facsimile: (415) 492-2810
Email: jsturdevant@sturdevantlaw.com

Arthur D. Levy, SB #95659
LAW OFFICE OF ARTHUR D. LEVY
1814 Franklin Street
Suite 1040
Oakland, CA 94612
Telephone: (415) 702-4551
Email: arthur@yesquire.com

*Additional Attorneys for Plaintiffs listed on Signature Page*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO DE LA TORRE, et al., | Case No. C 08-03174 TSH |
| Plaintiffs, | **JOINT STATUS CONFERENCE STATEMENT** |
| v. | |
| CASHCALL, INC, | |
| Defendant. | Date: December 20, 2018<br>Time: 10:00 a.m.<br>Courtroom: A – 15th Floor<br>Judge: Hon. Thomas S. Hixon |

The parties submit this Case Management Conference Statement pursuant to the Standing Order for All Judges of the Northern District of California dated November 1, 2018.

1. **Jurisdiction and Service**

a. Plaintiffs' Position:

Federal question jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that one of the claims originally alleged herein arose under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution. In the more than ten years that this case has been pending in this Court—which included orders by this Court on class certification and summary judgment as well as an appeal to the Ninth Circuit Court of Appeals—no party and no court has disputed jurisdiction. All parties have been served and have appeared.

b. CashCall's Position:

The so-called "Unconscionability Claim," which asserts that the interest rates charged by CashCall for its consumer loans were too high, is the only remaining claim in this case—the Court declined to certify most of the claims asserted during this ten-year-old case, and the remaining claims were dismissed or settled. The Unconscionability Claim is asserted on behalf of a class of California consumers against a company that is incorporated in and located in California, and the claim is based entirely on California law. Thus, there is no independent basis for federal jurisdiction over the Unconscionability Claim. CashCall suggests that the issue of subject matter jurisdiction be addressed at the Case Management Conference.

2. **Brief Statement of Principal Factual Issues**

a. Plaintiffs' Position:

Plaintiffs have brought their complaint against Defendant CashCall, Inc. ("CashCall") to challenge its policy and practice of making loans with unconscionable terms and conditions which are beyond the ability of consumers' financial ability to repay in the time and manner

provided for by CashCall. CashCall targets consumers in distress who have limited credit alternatives and are financially unable to repay CashCall's loans under the terms of the loans. Additionally, CashCall fails to adequately disclose the loans' risks and consequences, which are not fully or realistically portrayed to borrowers. CashCall's high interest rates, oppressive loan terms, and protracted repayment time make it impossible for most consumers to pay off their loans within any reasonable time period or to pay their loans according to CashCall's schedule without defaulting. CashCall's collection practices, part of its loan model, are also an unconscionability factor.

CashCall's Position (below) artificially—and disingenuously—attempts to restrict Plaintiff's Unconscionability Claim to an interest-rate challenge. This is refuted by the record throughout the course of this litigation. Plaintiffs' unconscionability challenge is not simply to CashCall's interest rates, but to the terms of CashCall's 96% and 135% $2,600 loan products *in their entirety and under the circumstances in which they were made*. The proper question for resolution is whether CashCall's *loan product* of $2,500 or more, at interest rates of 90% or more, payable for three and one-half years, between June 30, 2004 and July 10, 2011 is unconscionable.

Plaintiffs' operative Fourth Amended Complaint alleges that the entire loan product is unconscionable. (Dkt. 54, ¶¶ 85-88).) Plaintiffs' briefing on summary judgment accordingly framed the question as the unconscionability of the loan product, not merely the interest rate. (Dkt. 193, pp. 8-18.) Judge James's Order denying summary judgment framed the issues in keeping with Plaintiffs' motion, and the Court did not restrict its analysis to interest rates. (Dkt. 220, pp. 6-9; 30-35.)

Moreover, in its discussion below, CashCall mischaracterizes the Court's certification Order. The Court, in fact, considered—and found to be common—the issue of whether CashCall used procedures "to determine if Class Members who executed loan agreements qualified for such loans . . . . [T]he question of whether the lack of such procedure was unfair or unlawful is common to all class members." Dkt. #100, p. 13. Similarly, the issue of whether the uniform

terms of CashCall's loans "*including the length of repayment*, the interest only structure, and the high interest rate" "violate some provision of law or are otherwise unenforceable . . . is an issue that is common to all class members who executed a loan agreement." *Id.* (emphasis added).

Moreover, the Court agreed that Plaintiffs could demonstrate procedural unconscionability by showing that CashCall's promissory notes are adhesion contracts offered on a take-it-or-leave-it basis—a common issue that predominates over individual issues. *Id.*, p. 30. The Court noted that the Class Members stood in the same position in relation to CashCall when applying for their loans and "were foreclosed from negotiating any of the terms of the Promissory Notes." The Court at no point specified that the only one "of the *terms* of the Promissory Notes" at issue in the unconscionability analysis was the interest-rate term. *Id.* at 30-31. Although the Court noted that the issue of the interest rate of 90% or higher on these loans was an issue that "could be determined on a class wide basis without raising individual issues" (*id.* at 32), it did not indicate that that was the only issue to be considered in assessing unconscionability.

Plaintiffs contest CashCall's current decertification arguments and are prepared to oppose any decertification motion. The class certification Order does not frame the substantive issues for trial. The triable issues are framed by the Operative Complaint and Judge James's initial Order denying CashCall's summary judgment motion.

The Complaint also challenged CashCall's business practice of requiring borrowers to agree to electronic fund transfers as a condition of receiving the loan as a violation of both the Electronic Funds Transfer Act and the UCL. These claims were tried to the Court in 2016. The Court issued an opinion in favor of Plaintiffs, and the parties subsequently settled these claims. The settlement of these claims was approved by Judge James, and payments have been made to Class Members as a result.

      b.    CashCall's Position:

The only factual issue that legitimately remains in this case relates to whether the interest rates on CashCall's loans to the Unconscionability Class were too high. Plaintiffs allege that the

interest rates on those loans are unconscionable under the California Finance Code and therefore unlawful under Business & Professions Code section 17200 ("UCL"). In certifying the Unconscionability Class, Judge James noted that she was relying on Plaintiffs' own narrow characterization of the Unconscionability Claim as involving the interest rate alone: "Plaintiffs argue that '[t]he unconscionability analysis will turn on the standard interest rate that CashCall charged in each of its transactions with class members who purchased the $2600 product and were charged an interest rate of 90% or higher." *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 500 (N.D. Cal. 2011) (quoting Plaintiffs' Class Certification motion at pp. 19-20 [Dkt. No. 60]). Judge James also explained, based on Plaintiffs' arguments in support of class certification, that whether the interest rates on the loans were unconscionable could be determined simply by reference to interest rates charged on other, similar loans and to CashCall's justification for the rates. *Id.* at 501-02.

Having obtained certification on this narrow theory, Plaintiffs then executed a bait-and-switch, at every turn trying to reintroduce legal theories that that the Court declined to certify precisely because they raised numerous individual issues. Plaintiffs apparently intend to continue with their bait-and-switch tactics, as reflected in their statement of issues described above. For example, Plaintiffs assert that the remaining factual issues include (1) whether consumers had the ability to repay the loans, (2) whether the loan terms were adequately disclosed, (3) the impact of CashCall's collection practices on Class members, and (4) other supposedly objectionable loan terms—issues that Plaintiffs had previously disclaimed when seeking class certification or which Judge James declined to certify after careful consideration.

As to ability to repay, Plaintiffs had, in fact, alleged a separate UCL claim based on a theory that CashCall made loans without regard to the borrowers' ability to repay, claiming that this practice violated Financial Code section 22150 and 10 C.C.R. §1452. But the Court *denied* certification of this claim, finding that individual issues predominated because evaluation of the claim would require a "particularized examination of CashCall's underwriting process vis-à-vis individual borrowers to determine whether CashCall engaged in meaningful consideration of

their ability to repay the loans in the time and manner specified in the loan agreement." *O'Donovan*, 278 F.R.D. at 502. Now, Plaintiffs plan to try to reintroduce issues related to the borrowers' ability to repay into the case.

As to disclosures, Plaintiffs expressly disclaimed in briefing on class certification for the Unconscionability Claim any theory of surprise regarding the loan terms and instead asserted that their procedural unconscionability argument would be based solely on the fact that the loans were contracts of adhesion. *Id.* at 500. That position was central to the Court's finding that common issues predominated with respect to procedural unconscionability. CashCall had argued in opposition to class certification that an evaluation of disclosures provided to Class members would raise individual issues. The Court considered those arguments irrelevant based on Plaintiffs' disclaimer of any claim of surprise: "However, as Plaintiffs point out, they do not based their procedural unconscionability claim on a surprise theory. Thus, the Court agrees with Plaintiffs that CashCall's arguments are inapposite." *Id.* Now, Plaintiffs plan to try to reintroduce the adequacy of CashCall's disclosures into the case.

As to collection practices, Plaintiffs originally alleged a claim for violation of the California Rosenthal Fair Debt Collection Practices Act (and a derivative UCL claim) that challenged several aspects of CashCall 's collection practices, including (1) sending allegedly misleading collection communications, (2) using automated collection calls to coerce consumers to make payments on delinquent loans, and (3) taking unauthorized electronic payments from consumers' accounts. The Court "carefully considered" Plaintiffs arguments on each of these discrete theories and refused to certify any of the claims. *Id.* Undaunted by the Court's denial of certification of these claims, Plaintiffs argued in opposition to CashCall's ensuing summary judgment motion that the loans "harmed the Class because CashCall's collection practices are stressful and may cause harm to the borrowers' credit rating." *De la Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1103 n.17 (N.D. Cal. 2014). The Court rejected these arguments, finding that they raised individual issues, not triable issues of fact: "The Court agrees that these issues, unlike analysis of the Class data regarding repayment, would require individual inquiry and do not raise

a triable issue of fact with regard to harm based on the loan terms themselves." *Id.* Now, Plaintiffs plan to try to reintroduce issues related to CashCall's collection practices into the case.

And as to loan terms other than the interest rates, Plaintiffs sought to certify a broader unfairness claim under the UCL, challenging loan terms other than the interest rate. Plaintiffs argued that "CashCall's business practices in offering loans with grossly one-sided terms (including the charging of excessively high interest rates, requiring payment of 4-6 times the original loan amounts, the extended loan maturities, charging of unfair and excessive fees designed to extend the length of repay) are unfair." *O'Donovan*, 278 F.R.D. at 502-03 (quoting Plaintiffs' Motion at 22-23 [Dkt. No. 60]). The Court found that this claim was "inappropriate for class treatment" because "the circumstances surrounding each loan agreement, including each borrower's financial circumstances, would come into play, requiring individualized examinations." *Id.* at 503. Now, Plaintiffs plan to try to reintroduce issues related to loan terms other than the interest rate into the case.

The Court cannot ignore these prior rulings, and Plaintiffs may not reintroduce legal theories and issues that they previously disclaimed in order to obtain class certification or which Judge James declined to certify. Thus, the only legitimate factual issue remaining in this case pertains to the interest rates charged for the loans.

And as to that, it has become clear that determining whether those interest rates were unconscionable cannot be accomplished on the narrow basis through which Plaintiffs obtained class certification. As addressed in more detail below in CashCall's discussion of its anticipated motion to decertify the Unconscionability Class, in addition to these issues, Plaintiffs also raised other issues in opposition to CashCall's previous motion for summary judgment on the Unconscionability Claim that also are inherently individualized, thus making this claim inappropriate for class-wide litigation. And more recently, the California Supreme Court explained, when answering a question posed to it by the Ninth Circuit relating to Plaintiffs' appeal from the summary judgment order, that determining whether interest rates on consumer loans are unconscionable requires a full examination of the context of the loans—an examination

that presupposes individualized issues. *See De La Torre v. CashCall., Inc.*, 5 Cal. 5th 966, 985-86 (2018).

CashCall had determined ever since the Court initially denied its summary judgment motion on disputed-fact grounds that a motion to decertify the Unconscionability Class would be appropriate. And that is all the more true in light of what the California Supreme Court has held to be relevant to an unconscionability analysis of interest rates.

### 3. Procedural History and Remaining Principal Legal Issues

c. <u>Plaintiffs' Position</u>:

CashCall previously moved for summary judgment on Plaintiffs' Unconscionability UCL claim. After extensive briefing and oral argument, the District Court denied the motion, holding that CashCall was not entitled to summary judgment on the issue of whether its loans were unconscionable. Subsequently, the District Court both granted CashCall's motion for reconsideration and granted summary judgment for CashCall, finding that it lacked the judicial authority to find that CashCall's interest rates were unconscionable. Plaintiffs appealed to the U.S. Court of Appeals for the Ninth Circuit, seeking reversal of the District Court's ruling. CashCall cross-appealed, asking the Ninth Circuit to reverse the District Court's order on class certification if Plaintiffs succeed in their appeal on the merits.

After briefing and oral argument, the Ninth Circuit requested a decision from the California Supreme Court on the question of whether the interest rate on consumer loans of $2,500 or more governed by California Financial Code § 22303 render the loans unconscionable under California Financial Code § 22302. The California Supreme Court issued a unanimous opinion finding that the interest rate on consumer loans of $2,500 or more may render the loans unconscionable under § 22302 of the Financial Code. *De La Torre v. CashCall., Inc.*, 5 Cal. 5th 966 (2018).

Following the opinion of the California Supreme Court, the Ninth Circuit vacated the judgment of the District Court and "remanded to that court for further proceedings consistent with that opinion." 904 F.3d 866 (9th Cir. 2018). The effect of the appeal is to return the case

to this Court in the same posture as when the appeal was taken except that the second summary judgment Order has been reversed.

The principal legal issues that remain to be decided include the following:

    a.    Whether CashCall's uniform lending and collection practices are unlawful business practices in violation of the Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL") and the California Financing Law, California Financial Code § 22000 *et seq.*

    b.    The appropriate determination of restitution, injunctive relief, or other remedy arising out of a liability finding in Plaintiffs' favor.

    d.    <u>CashCall's Position</u>:

As described in CashCall's previous section, CashCall contends that the only remaining legal issue is whether the interest rates on the loans at issue were unconscionably high.

**4.    Motions**

Pending Motions: None.

Anticipated Motions: Plaintiffs do not anticipate filing any motions prior to pre-trial motions in limine.

CashCall anticipates filing two motions. First, CashCall intends to move for decertification of the Unconscionability Class. Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Thus, a court's class certification order is "inherently tentative." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978)). The Court retains a *continuing duty* to ensure compliance with class action requirements, and it may decertify a class at any time. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Indeed, Rule 23 vests district courts with "broad discretion" not only to determine whether a class should be certified, but also "to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001), *cert. denied*, 537

U.S. 812 (2002); *see also United Steel, Paper & Forestry etc. v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) ("[A] district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify."). "[A] district court reevaluating the basis for certification . . . may 'consider the nature and range of proof necessary to establish the [class-wide] allegations.'" *Marlo*, 251 F.R.D. at 479-80 (quoting *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)).

Had the Court not granted reconsideration and entered summary judgment in CashCall's favor, CashCall would have moved to decertify the Unconscionability Class, as CashCall told the Ninth Circuit in its reply brief on its cross-appeal of the certification order. (*See* 9th Cir. Dkt. 44, at pp. 2-3.) The arguments and rulings on summary judgment demonstrated why class certification was improper. For example, Plaintiffs' experts opined about the financial illiteracy of consumers generally and their inability to understand the loan process and loan disclosures— *see* 56 F. Supp. 3d at 1096—notwithstanding their argument on class certification that their procedural unconscionability argument rested solely on the fact that the loans were contracts of adhesion. The Court also found that there was conflicting evidence regarding whether class members had choices other than the CashCall loans, and whether CashCall loans were comparable to other loan products—inherently individual factual issues that would depend on the circumstances of each borrower. *Id.* at 1100, 1101. In addition, the Court found that there were triable issues of fact as to whether the loans had value: "Although there was evidence that the loans provided some value to borrowers by providing access to unsecured credit despite low credit scores, there was also evidence of harm due to the high cost of the loan." *Id.* at 1103. This purported triable issue of fact is actually an inherently individual issue.

The California Supreme Court went even further, explaining that "[a]n evaluation of unconscionability is highly dependent on context … The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, *in view of all relevant circumstances*, that a court should withhold enforcement." *De La Torre*, 5 Cal. 5th at 976 (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911-12 (2015) and adding emphasis). The court also noted that

"[w]hether the price of a bargain is 'unreasonably and unexpectedly harsh' depends on more than just a single printed number, so we examine not only the price term itself but other provisions and circumstances affecting a transaction's benefits and burdens." *Id.* at 975; *see also id.* at 982 ("Nonetheless, at least one thing about the doctrine is clear: it requires more than just looking at one particular price term in a contract, comparing it to a fixed benchmark, and declaring the term unconscionable."); *id.* at 983 (court must consider, *inter alia*, "whether there was … undue oppression arising from 'an inequality of bargaining power,' including the various factors tending to show relative bargaining power such as the parties' sophistication, their cognitive limitations, and the availability of alternatives") (quoting *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). All of these factors that are necessary for a determination of unconscionability implicate substantial individual issues. And when seeking class certification, Plaintiffs argued that most, if not all, of those factors would not need to be litigated on a class-wide basis—an argument that Judge James accepted at the time but is now clearly erroneous.

Second, CashCall intends to file *Daubert* motions challenging the admissibility of opinions by Plaintiffs' four designated experts in the case. Much of their testimony is highly speculative and not based on solid foundations. CashCall intends to file these motions well in advance of trial, albeit after its motion to decertify the class, to narrow the scope of the issues and testimony that would need to be presented at trial.[1]

### 5. Amendment of Pleadings

Plaintiffs do not anticipate amendments to their operative Fourth Amended Complaint at this time, but reserve their right to do so pursuant to leave of Court, including based on the further discovery mentioned below and investigation.

### 6. Evidence Preservation

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and taken steps to preserve any records—hard copy and

---

[1] Although it could be argued that a second motion for summary judgment would be appropriate in light of the California Supreme Court's opinion, CashCall does not intend to file a summary judgment motion.

-10-

electronic—that they have regarding the matters concerning this litigation.

**7.     Disclosures**

The parties previously made Rule 26(a) disclosures.

**8.     Discovery**

Plaintiffs' Position: the Parties have propounded and responded to Requests for Production of Documents and other written discovery. The Parties have completed the depositions of fact witnesses and expert witnesses. Experts for both sides have submitted expert reports and been deposed. Plaintiffs intend to request that Defendant update certain discovery responses to bring them current (to the extent it has not already done so). Plaintiffs also intend to engage in limited discovery regarding the solvency of CashCall and its ability to pay a substantial judgment. Plaintiffs are prompted to do so because, during the pendency of the appeal and certification to the California Supreme Court, CashCall announced that it was discontinuing all unsecured consumer lending, including the products that are at issue in this case. Depending on the outcome of that discovery, Plaintiffs may need to take follow-up steps to protect the class recovery.

CashCall's Position: CashCall does not believe any additional discovery is appropriate or necessary. Fact and expert discovery closed prior to the filing of the first summary judgment motion.

**9.     Class Actions**

Plaintiffs brought this action as a class action. By Order of November 14, 2011, the District Court, the Hon. Maria-Elena James presiding, certified the Loan Unconscionability Claims, defining the Class, after a later amendment to the definition, as follows: "All individuals who, while residing in California, borrowed from $2,500 to $2,600 at an interest rate of 90% or higher from CashCall, Inc., for personal, family, or household use at any time from June 30, 2004 to July 10, 2011."

**10.     Related Cases**

The Parties do not believe there are related cases.

**11. Relief**

Plaintiffs seek restitutionary relief, according to proof; injunctive relief; and an award of attorneys' fees and costs.

**12. Settlement and ADR**

The parties previously participated in an unsuccessful settlement conference with Hon. Joseph Spero on the Conditioning Claim. The parties also participated in multiple settlement conferences with Hon. Laurel Beeler, which ultimately resulted in the settlement of Plaintiffs' Conditioning Claims under the Electronic Funds Transfer Act.

<u>Plaintiffs' Position</u>: Plaintiffs are open to conducting a further Settlement Conference with Judge Beeler.

<u>CashCall's Position</u>: CashCall does not believe settlement discussions would be productive.

**13. Consent to Magistrate Judge for all Purposes**

In accordance with N.D. Local Rule 72-1, the parties previously consented to have a Magistrate Judge preside over all proceedings in this case and previously filed the necessary documents with the Court.

**14. Other References**

The Parties do not believe this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

The Parties do not currently propose ways in which the issues remaining to be tried may be narrowed by agreement or motion. The Parties do not currently have suggestions to expedite the presentation of evidence at trial.

CashCall contends that the remaining issues in this case as confined by the order granting class certification are already narrow. CashCall opposes any broadening of the issues to include those which Plaintiffs disclaimed when seeking class certification or that were already found by Judge James not to be appropriate for class certification. CashCall's planned motions for

decertification and challenges to Plaintiffs' expert witnesses will further narrow the issues.

Plaintiffs contend that CashCall mischaracterizes the Court's class certification Order and adopts an overly narrow view of it. At no point did the Court indicate that the unconscionability analysis was limited to the interest rate alone. *See* Section 2(a) (Plaintiffs' Position), above.

**16.  Expedited Trial Procedure**

Except as otherwise set forth herein, the parties do not believe that this case can be handled on an expedited basis with streamlined procedures.

**17.  Scheduling**

Plaintiffs propose the following schedule:

**Discovery Cut Off**: May 1, 2019 (75 days before trial date)

**Pre-trial filings**: May 31, 2019 (45 days before trial date) , 2019

**Final Pretrial Conference**: June 17, 2019 (30 days before trial date)

**Trial**: July 15, 2019

<u>CashCall's Position</u>:  Due to the trial schedules of CashCall's trial counsel (Brad Seiling and Donald Brown), CashCall proposes trial in October, with normal pretrial deadlines. Fact and expert discovery closed, and the discovery cut-off in the case is long past.

**18.  Trial**

The Parties agree that the trial will be a Court trial. The Parties estimate that the trial can be conducted in 8 to 10 trial days.

Plaintiffs' Position:  As discussed above, Plaintiffs disagree with CashCall's position that they are seeking to "expand the scope of the issues"; they are instead seeking to demonstrate the common issues as described in the Court's class certification Order. They believe the trial can be conducted in 8 to 10 trial days.

<u>CashCall's Position</u>:  In the event the Court denies CashCall's motion for decertification of the class, CashCall believes that the trial could be conducted in 4-5 days if the issues are confined to those as to which the Court granted class certification. If Plaintiffs are permitted to expand the scope of the issues, then the trial would likely require 8-10 days.

**19.     Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs and Defendants are unaware of any persons, associations of persons, firms, partnerships, corporations, or entities other than the parties themselves to have a financial or any other kind of interest in the subject matter in controversy or in a party to the proceeding.

**20.     Professional Conduct**

Attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters that may facilitate the efficient disposition of this matter**

Except as otherwise set forth above, the Parties have no further suggestions or requests at this time.

Respectfully submitted,

DATED:  December 13, 2018          /s/ Steven M. Tindall
                                                    Steven M. Tindall

Steven M. Tindall
Andre M. Mura
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone:  (510) 350-9700

Jessica Riggin
RUKIN HYLAND RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone:  (415) 421-1800

James C. Sturdevant
THE STURDEVANT LAW FIRM
4040 Civic Center Drive, Suite 200
San Rafael, CA  94903
Telephone:     (415) 477-2410

Arthur D. Levy
LAW OFFICE OF ARTHUR D. LEVY
1814 Franklin Street
Suite 1040
Oakland, CA 94612
Telephone:     (415) 702-4551

Damon Connolly
Damon Connolly Law Offices
1000 4th St #600
San Rafael, CA 94901
Telephone: (415) 256-1200


Attorneys for Plaintiffs
EDUARDO DE LA TORRE et al.

Dated: December 13, 2018 _____/s/ Brad W. Seiling_____
Brad W. Seiling

Brad W. Seiling
Donald R. Brown
MANATT, PHELPS & PHILLIPS LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 312-4000

Attorneys for Defendant CashCall, Inc.


## **LOCAL RULE 5-1 ATTESTATION**

I, Steven Tindall, am the ECF user whose ID and password are being used to file this Joint Status Conference Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that Donald Brown has concurred in the filing of this document with his electronic signature.

DATED: December 13, 2018 _____/s/ Steven M. Tindall_____
Steven M. Tindall