UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO DE LA TORRE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CASHCALL, INC.,<br><br>Defendant. | Case No. 08-cv-03174-TSH<br><br>**ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION; ORDER DISMISSING CASE WITHOUT PREJUDICE** |

## I.    INTRODUCTION

After this class action was recently remanded by the Ninth Circuit, Defendant CashCall, Inc. raised the question of subject matter jurisdiction in the parties' Joint Status Conference Statement. ECF No. 398. Specifically, CashCall noted that Plaintiffs' "unconscionability claim," brought under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) ("UCL") is the only remaining claim in this case, yet it "is based entirely on California law" and "there is no independent basis for federal jurisdiction over the Unconscionability Claim." ECF No. 398 at 1. Based on CashCall's statement, the Court gave CashCall the option to file a motion to dismiss or for the parties to file a joint motion requesting that the Court retain supplemental jurisdiction over the unconscionability claim. ECF No. 399. The parties have now filed a Joint Memorandum in Support of Continued Federal Jurisdiction. ECF No. 403. The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 7, 2019 hearing. *See* Civ. L. R. 7-1(b). For the reasons stated below, the Court declines to exercise supplemental jurisdiction and therefore **DISMISSES** Plaintiffs' UCL claim **WITHOUT PREJUDICE** to re-filing in state court.

## II.    BACKGROUND

**A.    Plaintiffs' Claims**

CashCall is a California corporation that provides high interest unsecured personal loans to qualifying consumers.  The operative Fourth Amended Complaint ("FAC") asserts claims on behalf of a putative class of borrowers with loans from CashCall of $2,500 or more with 96% and 135% interest rates.[1]  FAC ¶¶ 1-2, 20, 24, 28, ECF No. 54.  The FAC alleges one federal claim and five state law claims: (1) violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, (3) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, (4) unlawful business practices in violation of the UCL, (5) a derivative unlawful business practices claim based on the above violations, and (6) fraudulent and unfair business practices.  FAC ¶¶ 41-106.

The unsecured consumer loans at issue in this case are governed by the California Finance Lenders Law ("FLL").  Cal. Fin. Code § 22203.  The FLL prescribes maximum interest rates for loans below $2,500, but this interest rate limitation "does not apply to any loan of a bona fide principal amount of two thousand five hundred dollars ($2,500) or more." *Id.* § 22303.  The FLL also incorporates by reference the general Civil Code provision about contract unconscionability, Cal. Civ. Code § 1670.5(a). Cal. Fin. Code § 22302.1.  The FLL does not create a private right of action, *see* Cal. Fin. Code § 22713; *Cal. Grocers Assn. v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994), but a private cause of action lies under the UCL for "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (citations and quotation marks omitted).

**B.    Class Certification and Remaining Claim**

On November 15, 2011, Magistrate Judge Maria-Elena James[2] certified a "National Class"

---

[1] A single named plaintiff, Krista O'Donovan, originally filed this suit on July 1, 2008.  ECF No. 1.  Eduardo De La Torre and Lori Kemply were subsequently named as putative class representatives, after which O'Donovan's claims were dismissed.  ECF No. 131.
[2] This case was originally assigned to Judge James but was reassigned to the undersigned on

consisting of "individuals who borrowed money from CashCall, Inc., between June 30, 2004 and February 2007, who signed CashCall's promissory note containing an electronic funds authorization indicating that cancellations of such authorization must be received at least seven days prior to the applicable payment due date." *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 504 (N.D. Cal. 2011). Judge James also certified a "California Class" of "individuals who, while residing in California, borrowed from $2,500 to $2,600 at an interest rate of 90% or higher from CashCall, Inc., for personal, family, or household use at any time from June 30, 2004 to the present." *Id.* Judge James limited the California Class certification to the claim that making loans at "unconscionable interest rates" gave rise to a cause of action under the UCL. *Id.*

Since granting class certification, the UCL unconscionability claim is now all that remains pending, as the federal and other state law claims were dismissed or settled.

## C. Summary Judgment

After CashCall moved for summary judgment on the unconscionability claim, Judge James originally denied the summary judgment motion, finding material factual issues as to whether the loans "shock the conscience." *De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1099 (N.D. Cal. 2014) (quoting *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007)). But after reconsideration, Judge James granted the summary judgment motion, finding that determining whether the CashCall interest rates were unconscionable would "impermissibly require the Court to regulate economic policy," because it could not fashion a remedy without "deciding the point at which CashCall's interest rates crossed the line into unconscionability." *De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1105, 1107-09 (N.D. Cal. 2014). And, by determining the highest appropriate interest rate, Judge James concluded the court would be improperly substituting its judgment for that of the legislature, which had intentionally removed the interest rate cap. *Id.* at 1109-10.

On December 22, 2014, Judge James directed the entry of judgment in favor of CashCall on the UCL claim pursuant to Federal Rule of Civil Procedure 54(b). ECF No. 247. Plaintiffs timely appealed on December 30, 2014. ECF No. 248.

---

September 4, 2018 after she retired. ECF No. 391.

3

**D.      Certification and Decision from the California Supreme Court**

On appeal, the Ninth Circuit determined that:

> The central issue in this case is whether the interest rates on consumer loans of $2500 or more that are governed by California Finance Code § 22303, which provides no interest rate limitations on such loans, can be deemed unconscionable under California Finance Code § 22302 and thus be the predicate for a private cause of action under the [UCL].

*De La Torre v. CashCall, Inc.*, 854 F.3d 1082, 1084 (9th Cir. 2017). After reviewing the parties' arguments, the court noted the "answer to this question could determine the outcome of this matter and there is no controlling precedent." *Id.* Thus, on April 21, 2017, the Ninth Circuit requested the California Supreme Court exercise its discretion to decide the following question of state law: "Can the interest rate on consumer loans of $2500 or more governed by California Finance Code § 22303, render the loans unconscionable under California Finance Code § 22302?" *Id.* at 1085.

On August 13, 2018, the Supreme Court issued its decision finding that the interest rate on consumer loans of $2,500 or more can render the loans unconscionable because "[a]n interest rate on a loan is the price of that loan, and 'it is clear that the price term, like any other term in a contract, may be unconscionable.'" *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 973 (2018) (quoting *Perdue v. Crocker Nat'l Bank*, 38 Cal.3d 913, 926 (1985)). In reaching this decision, the Court noted that "the doctrine of unconscionability reaches contract terms relating to the price of goods or services exchanged," but "[w]hether the price of a bargain is unreasonably and unexpectedly harsh depends on more than just a single printed number, so we examine not only the price term itself but other provisions and circumstances affecting a transaction's benefits and burdens." *Id.* at 975 (citations and quotation marks omitted). Thus, "[a]s with any other price term in an agreement governed by California law, an interest rate may be deemed unconscionable." *Id.* at 976.

At the same time, the Court noted that unconscionability "is a flexible doctrine" that "requires more than just looking at one particular term in a contract, comparing it to a fixed benchmark, and declaring the term unconscionable." *Id.* at 982. Thus, "[a]n evaluation of unconscionability is highly dependent on context," and "to declare an interest rate unconscionable

4

means only that—under the circumstances of the case, taking into account the bargaining process and prevailing market conditions—a particular rate was overly harsh, unduly oppressive, or so one-sided as to shock the conscience." *Id.* at 976, 984 (citations and quotations marks omitted). The Court further noted that, because of this "inherently nuanced" understanding of unconscionability, "few courts have ever declared contracts unconscionable." *Id.* at 992. In fact, the Court found only one California court that has ever found a challenged interest rate unconscionable. *Id.* (citing *Carboni v. Arrospide*, 2 Cal. App. 4th 76, 81 (1991)).

As to the loans at issue in this case, the Court noted that the Ninth Circuit "did not ask us to decide whether CashCall's loans were unconscionable, and we do not resolve that question. We hold only that California law permits such a finding, as long as the requirements of unconscionability are satisfied." *Id.* at 993.

Based on the California Supreme Court's decision, on October 3, 2018, the Ninth Circuit vacated judgment as to the unconscionability claim and remanded for further proceedings consistent with the Supreme Court's opinion. *De La Torre v. CashCall, Inc.*, 904 F.3d 866, 867 (9th Cir. 2018).

### E.    Proceedings on Remand

After remand, the Court set the matter for a case management conference and directed the parties to file an updated joint case management statement. ECF No. 393. In their subsequent Joint Status Conference Statement, Plaintiffs stated that the Court has supplemental jurisdiction "because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution," and "[i]n the more than ten years that this case has been pending in this Court—which included orders by this Court on class certification and summary judgment as well as an appeal to the Ninth Circuit Court of Appeals—no party and no court has disputed jurisdiction." ECF No. 398 at 1. CashCall, however, noted that the UCL unconscionability claim "is the only remaining claim in this case—the Court declined to certify most of the claims asserted during this ten-year-old case, and the remaining claims were dismissed or settled," and "since the claim is based entirely on California law," "there is no independent basis for federal jurisdiction

over the Unconscionability Claim." *Id.*

On December 20, 2018, the Court held a case management conference, at which time it raised the issue of whether it should decline to exercise supplemental jurisdiction given the California Supreme Court's decision. ECF No. 399. The Court directed CashCall to file a motion to dismiss addressing the issue by January 31, 2019. Alternatively, if both parties agreed that the Court should retain supplemental jurisdiction, the Court directed them to file a joint motion requesting Court retain pendant jurisdiction. *Id.*

The parties filed their joint memorandum on January 30, 2019, requesting that the Court exercise its discretion to retain jurisdiction over the claim. ECF No. 403. The parties note "[t]his is now a 10-year old case with a long history in the federal courts," and that "judicial economy and convenience clearly favor the retention of jurisdiction." *Id.* at 1. The parties argue that dismissing the unconscionability claim "would create confusion and uncertainty and would only prolong this already extremely protracted case and its ultimate resolution." *Id.* Finally, the parties maintain that "the novel issue of state law identified by the Ninth Circuit as to the applicability of the unconscionability doctrine to the loans at issue in this case was resolved by the California Supreme Court on certification from the Ninth Circuit." *Id.* at 2.

### III.   LEGAL STANDARD

A district court has supplemental jurisdiction over all non-federal claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Court's "discretion to decline to exercise supplemental jurisdiction over state law claims . . . is informed by the [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)] values of 'economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

# IV.    DISCUSSION

After considering the statutory and common law factors, the Court finds the balance of factors favors declining supplemental jurisdiction.

## A.    28 U.S.C. § 1367(c)(3)

First, the Court finds dismissal appropriate under 28 U.S.C. § 1367(c)(3). At the outset of this case, the Court had original jurisdiction over Plaintiffs' federal claim, but any claim over which the court had original jurisdiction has now been dismissed or settled. The Ninth Circuit has emphasized that "[i]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Acri,* 114 F.3d at 1001 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The elimination of federal claims does not automatically deprive district courts of subject matter jurisdiction over any supplemental state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). However, "[c]omity and precedent in this circuit strongly disfavors exercising supplemental jurisdiction." *Heatherly v. Malika*, 2013 WL 5754106, at *2 (N.D. Cal. Oct. 23, 2013); *Murphy v. Cty. of Mendocino*, 2016 WL 794458, at *4 (N.D. Cal. Mar. 1, 2016)

The Court first turns to judicial economy. "[I]f a case has been pending in federal court for an extended time, the court is familiar with the issues, and a good deal of time has been invested in the matter, then considerations of judicial economy favor retaining jurisdiction." *Klahn v. Clackamas Cty. Bank*, 2013 WL 6530803, at *2 (D. Or. Dec. 12, 2013) (citing *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1088 n.4 (9th Cir. 2000) (finding it was not an abuse of discretion for district court to decline to dismiss state law claims after granting summary judgment on federal claims "since the district court was fully familiar with the record."). Here, the parties argue the "protracted procedural background" of this case and the Court's "intensive prior involvement" strongly support retaining jurisdiction. ECF No. 403 at 6. However, a court is not required to retain jurisdiction whenever there have been lengthy pretrial proceedings. *Danner v. Himmelfarb*, 858 F.2d 515, 524 (9th Cir. 1988) (recognizing some courts have retained supplemental jurisdiction over state claims "whenever there have been lengthy pretrial

proceedings" but refusing to "hold that the district court must exercise jurisdiction over pending state claims" in that circumstance); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (upholding district court's decision to decline to exercise supplemental jurisdiction over state law claims after granting summary judgment on plaintiff's federal claim); *Bremer v. Cty. of Contra Costa*, 2016 WL 6822011, at *13 (N.D. Cal. Nov. 18, 2016) (granting summary judgment on federal claims and declining to exercise supplemental jurisdiction over state law claims); *Feezor v. Patterson*, 896 F. Supp. 2d 895, 904 (E.D. Cal. 2012) (declining to exercise supplemental jurisdiction after granting summary judgment on federal claims); *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 955 (E.D. Cal. 2011) (dismissing state law claims after summary judgment on plaintiff's federal claims and state claims related to federal constitutional or statutory rights).

Further, declining to exercise supplemental jurisdiction is an efficient use of the Court's resources given that this case has not been active on the Court's docket for over four years, there are no case management deadlines pending, and no trial has been scheduled. *Compare Trs. of Construction Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (concluding that it was abuse of discretion to decline supplemental jurisdiction where court dismissed case seven days before trial: "Dismissing the case after such a long delay and after the parties were essentially done with trial preparation was neither fair to the parties nor an efficient use of judicial resources.").

The parties argue "[i]t is particularly significant that the Court previously granted class certification for the Unconscionability Claim. The parties' research did not uncover a single case in which a court declined to exercise supplemental jurisdiction over a pendent state law claim after certifying a class for that claim and sending notice to the class." ECF No. 403 at 7. However, if the Court were to retain jurisdiction, the issue of class certification itself would likely need to be revisited given CashCall's stated intention to file a motion to decertify the unconscionability class. ECF No. 398 at 8-10. In certifying the UCL unconscionability claim, Judge James found:

> the same issues relating to substantive unconscionability could be determined on a class wide basis without raising individual issues. Evidence regarding the 90% and above interest rates CashCall

> charged on its loans could be compared to those of similar loans in the credit market and any finding would be uniformly applicable to all class members whose loan had an interest rate at or above that amount. Additionally, any justification CashCall has for charging interest rates above 90% would not *502 trigger any individual, borrower-specific questions of fact or law.

*O'Donovan*, 278 F.R.D. at 501-02. However, the California Supreme Court found that unconscionability "is a flexible doctrine" that "requires more than just looking at one particular term in a contract, comparing it to a fixed benchmark, and declaring the term unconscionable." *De La Torre*, 5 Cal. 5th at 982. The Court held that "[a]n evaluation of unconscionability is highly dependent on context," and "to declare an interest rate unconscionable means only that—under the circumstances of the case, taking into account the bargaining process and prevailing market conditions—a particular rate was overly harsh, unduly oppressive, or so one-sided as to shock the conscience." *Id.* at 976, 984 (citations and quotations marks omitted).

CashCall recognized this prior to the parties' January 30, 2019 joint memorandum, as it stated in the parties' earlier December 13, 2018 status report:

> In certifying the Unconscionability Class, Judge James noted that she was relying on Plaintiffs' own narrow characterization of the Unconscionability Claim as involving the interest rate alone: "Plaintiffs argue that [t]he unconscionability analysis will turn on the standard interest rate that CashCall charged in each of its transactions with class members who purchased the $2600 product and were charged an interest rate of 90% or higher."

ECF No. 398 at 4 (quoting *O'Donovan*, 278 F.R.D. at 500). And, as Judge James noted, Plaintiffs themselves argued "the issue whether the interest rate was unfairly one-sided requires a single determination for all class members, without regard to the particular circumstances of each class member who signed the contract." *O'Donovan*, 278 F.R.D. at 501 (citing Class Cert. Mot. at 20, ECF No. 60). Given the California Supreme Court's recent decision and the lack of cases addressing this issue, it is likely that class certification will need to be revisited, whether in federal or state court.

In looking at factors of convenience, fairness, and comity, the Court finds the factors of convenience and fairness cut in neither direction. The parties do not argue that state court would be an inconvenient forum and, as to fairness, "a state forum will provide just as fair a proceeding as a federal one." *Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1120 (N.D. Cal.

2002).  Finally, "principles of comity will be well-served by allowing the state courts to resolve claims solely of state law."  *Danner*, 858 F.2d at 524.

Accordingly, the Court finds dismissal appropriate under 28 U.S.C. § 1367(c)(3).

**B.  28 U.S.C. § 1367(c)(1)**

Declining to exercise supplemental jurisdiction over Plaintiffs' state law claim is also warranted under 28 U.S.C. § 1367(c)(1), which is properly invoked when, in deciding a state law claim, the district court would be required to interpret a state provision without prior guidance from the state courts.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 927 (9th Cir. 2001) (ruling that the district court did not err in refusing to exercise supplemental jurisdiction over a claim that "rais[ed] an issue of first impression as to how that provision is to be applied"); *see also Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1272-73 (N.D. Cal. 2001) ("The papers submitted by the parties reveal, by their numerous references to general principles rather than analogous authority, that the California courts have not had ample opportunity to address the applicability of the California tort law at issue in this case to Internet commerce.").

The parties argue "the case does not appear to involve a novel issue of state law" because the California Supreme Court "issued a lengthy opinion holding that the unconscionability doctrine applies to the loans in question in this case," ECF No. 403 at 7.  However, as noted above, while the Supreme Court held in general that California law permits a finding of unconscionability, it noted the "inherently nuanced" understanding of unconscionability and that "few courts have ever declared contracts unconscionable," with only one court having ever found a challenged rate unconscionable.  *De La Torre*, 5 Cal. 5th at 992.  It is therefore likely that deciding Plaintiffs' unconscionability claim would require resolution of a novel and undecided issue of state law.  Given the absence of guidance from state courts, the Court finds it appropriate to dismiss Plaintiffs' unconscionability claim because of the "strong state interest" in deciding state law issues.  *Nat'l Audubon Soc'y v. Dep't of Water*, 858 F.2d 1409, 1417-18 (9th Cir. 1988) (holding that it was proper to remand state law even though the "federal court had made a substantial commitment of judicial resources to the state claims," because of the "strong state interest in deciding these complex state law issues"); *Johnson v. Barlow*, 2007 WL 1723617, at *2

(E.D. Cal. June 11, 2007) ("When state law is substantially unsettled, a district court may be left without sufficient guidance as to how to resolve a dispute, which weighs against exercising supplemental jurisdiction.") (citing *Moor v. Alameda Cty.*, 411 U.S. 693, 716 (1973)). Thus, determination of Plaintiffs' claim would best be decided by a state court with a "surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided as a matter of comity."); *Nordby v. Wells Fargo Home Mortg.*, 2010 WL 1539829, at *2 (E.D. Cal. Apr. 16, 2010) ("A federal court should avoid making 'needless decisions of state law,' and comity is promoted by recognition that state courts have the primary responsibility for developing and applying state law.") (quoting *Gibbs*, 383 U.S. at 727); *Barker v. Avila*, 2010 WL 3171067, at *3 (E.D. Cal. Aug. 11, 2010) (declining to exercise supplemental jurisdiction over remaining UCL claim, finding "primary responsibility for developing and applying state law rests with the state courts.") (citation and quotation marks omitted).

Further, "[a] district court may properly decline to exercise supplemental jurisdiction under § 1367(c)(1) even if doing so may require the expenditure of greater judicial resources and run counter to the principle of judicial economy." *Dist. Compensatory Educ. Advisory Comm. v. L.A. Unified Sch. Dist.*, 2012 WL 12887394, at *10 (C.D. Cal. May 21, 2012) (citing *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1225 (S.D. Cal. 2007) ("Although it would undoubtedly be more convenient to have this suit adjudicated in one action, the novelty and complexity of state law issues weigh[ ] in favor of dismissing them to allow California state courts to resolve the issue"). Regardless, as discussed above, it is not clear that dismissal will require the expenditure of greater judicial resources as no case management deadlines are pending, there is no trial scheduled, and CashCall intends to file a motion to decertify the unconscionability class, thereby requiring the certification issue to be revisited, whether in federal or state court.

Consequently, given that Plaintiffs' remaining claim under the UCL raises a novel issue of state law, the Court finds the general principles underlying the exercise of supplemental jurisdiction dictate that the wisest course of action is to decline to exercise supplemental jurisdiction in this case.

## V.    CONCLUSION

For the reasons stated above, the Court declines to exercise supplemental jurisdiction and therefore **DISMISSES** this case **WITHOUT PREJUDICE** to re-filing in state court.  The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: February 5, 2019

THOMAS S. HIXSON
United States Magistrate Judge